UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: Target Corporation Customer Data Security Breach Litigation,<br><br>This document relates to the Consumer Cases. | MDL No. 14-2522 (PAM/JJK) |

**DECLARATION OF LARRY PONEMON, PH.D.**

I, Larry Ponemon, Ph.D., declare as follows:

    1.    I am the Chairman and Founder of the Ponemon Institute, a research "think tank" dedicated to advancing privacy and data protection practices. My company, Ponemon Institute, conducts independent research, educates leaders from the private and public sectors, and verifies the privacy and data protection practices of organizations in various industries. In addition to Institute activities, I am a founding board member and Chairman of the Visual Privacy Advisory Counsel (VPAC) sponsored by 3M Corporation.

    2.    I consult with leading multinational organizations on global privacy management programs. I have extensive knowledge of regulatory frameworks for managing privacy and data security including financial services, government, healthcare, pharmaceutical, telecom, energy and Internet. I served on the Advisory Committee for Online Access & Security for the United States Federal Trade Commission. I also served on the Data Privacy and Integrity Advisory Committee for the United States Department

of Homeland Security. I also was appointed to two California State task forces on privacy and data security laws.

3. I presently serve as Co-Chairman of the Government Policy Advisory Committee and Co-Chair of the Internet Task Force for the Council of American Survey and Research Organizations (CASRO).

4. I was a senior partner at PricewaterhouseCoopers, where I founded the firm's global compliance risk management group and its privacy practice. Prior to joining Price Waterhouse as a partner, I served as the National Director of Business Ethics Services for KPMG, and was appointed Executive Director of the KPMG Business Ethics Institute.

5. I have held chaired or tenured faculty positions at Bentley College, Binghamton University (State University of New York), and Babson College. I also served as an adjunct faculty for privacy and information ethics at Carnegie Mellon University's CIO Institute. I have presented keynote speeches and other learned presentations at national or international conferences on privacy, data protection, cybersecurity, corporate governance, and responsible information management. I am a member of the International Association of Privacy Professionals, and served as the founding member of the Certified Information Privacy Professional (CIPP) Advisory Board.

6. I have provided expert testimony to the United States House of Representatives and have presented Ponemon Institute research findings to the White House.

7.     I have been an invited columnist for Computerworld, CSO Magazine, BNA, Dark Reading, Wall Street Journal, Harvard Business Review and other leading publications. I have been quoted or serve as commentator on privacy, cybersecurity and business ethics for CNN, Fox News, MSNBC, The Wall Street Journal, New York Times, Washington Post, LA Times, USA Today, Financial Times, Business 2.0, Newsweek, Business Week, U.S. News & World Report, CIO Magazine, Boston Globe, InfoWorld, InformationWeek, Forbes, Fortune, CFO Magazine, Red Herring, Dow Jones News, Associated Press, Politico and others.

8.     I earned my Ph.D. (administration and engineering systems) from Union College in Schenectady, New York. I have a Master's degree from Harvard University, Cambridge, Massachusetts, and attended the doctoral program in system sciences at Carnegie Mellon University, Pittsburgh, Pennsylvania. I earned my Bachelors with Highest Distinction from the University of Arizona, Tucson, Arizona. I am a Certified Public Accountant (inactive license in Texas).

9.     I am an honorably discharged veteran (Vietnam War era) of the United States Navy. I am married and have two sons.

**Experience in data breach management**

10.    In 2005, Ponemon Institute conducted the first cost of data breach study, which has become one of the most cited research studies in the information security and privacy communities. Over the past 10 years, this body of research has expanded to 12 countries.

11. In addition to the above cost studies, Ponemon Institute has conducted independent research on organizations' data breach readiness, data breach incident response and data breach risk management. Ponemon Institute has also studied the impact of data breach on consumers in the United States and other countries.

12. I presently serve the United States Federal Trade Commission as a retained expert on data breach related issues.

13. Ponemon Institute has conducted benchmark studies on data breach management effectiveness for companies and government entities that had recently experienced data loss or theft (i.e., post mortem analysis).

**Scope of Professional Engagement**

14. Based on my experience and expertise, Consumer Plaintiffs' Counsel sought my advice about the value to the class of the equitable relief included in the proposed Settlement Agreement ("Settlement") between the Class and Target Corporation. The equitable relief of the Settlement includes five (5) requirements related to the: (1) appointment of a high level executive with overall responsibility for Target's information security program entrusted with the protection of consumers' personal identifying information; (2) maintaining a written information security program, requiring Target to identify internal and external risks to the security of consumers' personal identifying information and periodically review the sufficiency of safeguards to control such risks and requiring Target to develop security metrics that measure its security program and ensure that the metrics are periodically reviewed and approved by Target's senior leadership; (3) maintaining a process to monitor for information security

events and to respond to such events presenting a security threat, requiring Target to design and implement reasonable safeguards to control information security risks, including through reasonable and appropriate software security testing; and (5), implementing a program to educate and train relevant employees of the importance of the security of consumers' personal identifying information.

15.　I was engaged on a fee basis to serve Consumer Plaintiffs' Counsel in the capacity of a privacy advisor, and not as a litigation consultant or expert witness. All discussions occurred by telephone over several months.

16.　During the settlement process, I reviewed the Complaint and the Target Data Breach Settlement Term Sheet, including the above non-monetary relief provisions.

**Analysis and Conclusion**

17.　In my opinion, the equitable relief provided by this Settlement is of substantial value to the millions of consumers who are victims of the Target data breach incident and to consumers whose credit or debit card data and/or personal information is maintained or in the future will be maintained by Target, in the following ways:

- Increases accountability and centralizes responsibility for data breach incident management;
- Improves the company's ability to quickly detect and contain security threats through aggressive monitoring and agile response;
- Raises the level of awareness and understanding about data security and privacy issues among the company's employees (who serve as the first line of defense); and

- Reduces the risk of future data breaches for customers, consumers, employees and other stakeholders.

18. While a corporate information security or privacy program can never guarantee the mitigation of all privacy and data protection risks, I believe that implementation of the requirements included in the Settlement will lead to important improvements in Target's protection of customer data to the benefit of all members of the proposed Settlement Class, which I understand includes all persons in the United States whose credit or debit card information and/or whose personal information was compromised in the Target data breach.

19. I, Dr. Larry Ponemon, declare:

- I am more than 18 years old and competent to make this declaration.
- If called as a witness to testify in this case, I would offer the opinions and conclusions set forth in this declaration.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 9th day of March 2015, at Traverse City, Michigan.

*LA.Ponemon*

Larry Ponemon, Ph.D.