UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

IN RE: TARGET CORPORATION
CUSTOMER DATA SECURITY BREACH
LITIGATION,

THIS DOCUMENT RELATES TO
FINANCIAL INSTITUTION ACTIONS

MDL No. 14-2522 (PAM/JJK)

## PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN RESPONSE TO TARGET'S ADDITIONAL EVIDENCE SUBMITTED PURSUANT TO COURT ORDER OF FEBRUARY 25, 2015

## TABLE OF CONTENTS

I.     INTRODUCTION ....................................................................................... 1

II.    BACKGROUND ......................................................................................... 2

III.    ARGUMENT ............................................................................................. 6

    A.    Target's Statements Are Contradictory and Not Credible. ........................ 6

        1.    Target's Changing Story about the Number of Reviews. ................. 6

        2.    Target's Changing Story about the Reasons for Its
             Purported Mistakes. ........................................................................... 7

        3.    Target's Changing Timeline Regarding the Attorney
             List Error. .......................................................................................... 8

        4.    Target's Changing Timeline Regarding Discovery of
             Its Error. ............................................................................................ 8

    B.    Target Has Failed to Address the Court's and Plaintiffs'
        Questions. .................................................................................................. 9

    C.    Target Has Failed to Adequately Respond to Plaintiffs'
        Key Arguments. ....................................................................................... 12

        1.    Target's Changes to Its List of Attorneys and
             Non-Attorneys Working at the Discretion of Attorneys
             Contradicts Its Claim of Inadvertence. ........................................... 12

        2.    Target's Reading Pane Error Offers No Support for Its
             Claim of Inadvertence. .................................................................... 13

        3.    The Governmental Entities' Decisions Regarding
             Target's Clawback Request Are Irrelevant. .................................... 15

        4.    Target's Process Was Wholly Inadequate. ...................................... 17

        a.      Data Breach Task Force ......................................................... 18

        b.      Verizon Investigation ............................................................ 19

    5.     Target Did Not Promptly Remedy Its Error.................................... 21

IV.   CONCLUSION ...................................................................................... 22

## I.      INTRODUCTION

In addition to presenting oral argument on this matter, Target has now filed three separate briefs totaling over 50 pages—including seven declarations and multiple exhibits—in an effort to convince this Court that Target met its burden of proving that its unprecedented disclosure of over 3,000 purportedly privileged documents was truly inadvertent and that there was no waiver.  Despite Target's myriad opportunities to show the Court why it should be allowed to clawback over 9% of its production, it has ultimately failed.

While Target's newest submission does detail some additional background into how it came to produce 13,000 pages of documents that it now claims it never meant to reveal, in some instances, this new evidence actually *contradicts* Target's previous representations to the Court, thus raising more questions than it answers.  Further, Target does nothing to address Plaintiffs' most salient points proving that the disclosure was not inadvertent, including Plaintiffs' arguments that Target concedes that it initially intended to produce the documents (and only later decided to add additional names and withhold documents) and that waiver as to third parties (whether or not they give the documents back to Target) constitutes waiver as to Plaintiffs as well.

1

For all of these reasons, Plaintiffs[1] respectfully request that this Court find that Target's production was not inadvertent, or else that waiver has occurred under the *Starway* factors,[2] and deny Target's clawback request.

## II.    BACKGROUND

The factual background of this dispute is described in detail in Plaintiffs' previous briefing.  *See* Dkt. No. 327, pp. 4-9.  In sum, Target claims that it has "inadvertently" produced 3,095 documents, totaling 13,609 pages of materials that it now claims are privileged.  Dkt. No. 328, Declaration of James J. Pizzirusso ("Pizzirusso Decl.") ¶ 20. This equates to approximately six bankers' boxes of materials or seven and a half linear feet of pages.[3]  Target requested the immediate clawback of documents on January 12, 2015, and amended its list to the current disputed documents on January 20, 2015. Pizzirusso Decl. ¶¶ 7, 20.  Target's request was premised on its argument that its production of these documents was inadvertent and thus subject to the Protective Order entered in this matter.  Dkt. No. 92.

Plaintiffs have objected to Target's clawback efforts primarily on two separate grounds.  First, as the evidence now makes clear, Target's productions were not truly

---

[1] Consumer Plaintiffs and Financial Institution Plaintiffs jointly submitted several previous briefs on this matter.  *See* Dkt. No. 327, Dkt. No. 335.  Consumer Plaintiffs have since entered into a settlement agreement with Target that is currently before the Court. Dkt. No. 364.  Therefore, Financial Institution Plaintiffs submit this brief only on their own behalf.

[2] *Starway v. Indep. Sch. Dist. No. 625*, 187 F.R.D. 595 (D. Minn. 1999); *see also* Dkt. No. 327, pp. 13-19 (analyzing the *Starway* factors to show that Target's production to other third parties, even if inadvertent, constitutes waiver).

[3] http://www.ilmcorp.com/tools-and-resources/estimate-the-number-of-pages-or-images

"inadvertent," but were in fact purposely made in the first instance.  Thus, the Protective

Order does not apply.  Second, even if these disclosures were inadvertent, the Court

should nonetheless conclude that Target has waived any privilege claims as to the

materials provided to the Securities and Exchange Commission ("SEC"), the Federal

Trade Commission ("FTC"), and various state attorneys general ("AGs") (collectively,

"Governmental Entities") to whom Target also made a production.[4]  If Target waived its

privileges in producing documents to the Governmental Entities, any privileges would

also be waived as to Plaintiffs, and thus the clawback request should be denied on those

grounds, as well.

   Over the course of Target's several briefs and numerous declarations, Plaintiffs

can now finally piece together the timeline of events giving rise to the instant dispute.  As

discussed further below, this timeline calls into question several of Target's previous

contentions concerning its allegedly inadvertent production, and provides additional

evidence in support of Plaintiffs' claim of waiver.

| Date | Action | Source |
|------|--------|--------|
| Feb. 6, 2014 | Target first receives a subpoena from the SEC | 3/13/15 McDowell Decl. ¶ 13 |
| Feb. 21, 2014 | Target makes its first rolling production of "specific materials" to SEC (Target has provided no further description or volume of this material, but this appears | 3/13/15 McDowell Decl. ¶ 13 |

---

[4] Target asserts that the volume of privileged material differs as to the various entities because the FTC and State AGs purportedly sought a narrower scope of documents than the SEC.  Dkt. No. 351, Declaration of David F. McDowell ("3/13/15 McDowell Decl.") ¶ 15, 16.  Notably, Target fails to provide the Governmental Entities' document requests so that this assertion can be reviewed.  Moreover, Target fails to identify which documents on its clawback list went to which Governmental Entity.

| Date | Action | Source |
|------|--------|--------|
| | to be very limited as ESI documents were only collected and produced later) | |
| Mar. 27, 2014 | Completion of ESI document collection from Target and loading of materials for initial review | Dkt. 352, Declaration of Randall J. Fons ("3/13/15 Fons Decl.")[5] ¶ 6 |
| Mar. 28, 2014 | Outside counsel begin assembling review attorneys and training materials to review Target documents | 3/13/15 Fons Decl. ¶ 7-8 |
| Apr. 7-8, 2014 | Training of review attorneys | 3/13/15 Fons Decl. ¶ 10 |
| Apr. 8, 2014 | First level of Target document review begins | 3/13/15 Fons Decl. ¶ 10 |
| Apr. 24, 2014 | Target begins producing responsive ESI documents to SEC (this is two and a half months after SEC's initial request—hardly a rush job as Target contended) | 3/13/15 McDowell Decl. ¶ 13 |
| July 22, 2014 | Target ends production of "responsive documents" to SEC (after three months of rolling production of ESI—again, no rush) | 3/13/15 McDowell Decl. ¶ 13 |
| July 22, 2014 | Target first realizes there was a problem with its attorney/non-attorney list and claws back 11 documents from the SEC (Target provides no additional information about the added names or why they were missed in the first instance) | 3/13/15 Fons Decl. ¶ 12 |
| Sept. 3, 2014 | Target makes first production to Plaintiffs of 22 documents (non-ESI) | Pizzirusso Decl. ¶ 1 |
| Sept. 11, 2014 | SEC issues subpoenas for Target depositions | 3/13/15 Fons Decl. ¶ 16 |
| Oct. 8, 2014 | For the second time, Target realizes there is a problem with its attorney/non-attorney list and claws back another 230 documents from the SEC (these documents and the 11 from July 22, 2014 are not produced to Plaintiffs here) | 3/13/15 Fons Decl. ¶ 12 |

---

[5] Mr. Fons' declaration is dated February 13, 2015, but its content indicates that it was meant to be dated March 13, 2015.

| Date | Action | Source |
|------|--------|--------|
| Oct. 20, 2014 | Target produces 37,605 documents, or substantially all of its SEC production, to Plaintiffs | Pizzirusso Decl. ¶ 1 |
| Early Nov. 2014 | Randall Fons purportedly first discovers that other "privileged" documents were produced to the SEC and convenes an investigation (no mention is made to Plaintiffs) | 3/13/15 Fons Decl. ¶ 16 |
| Nov. 3, 2014 | Plaintiffs depose Nhia Vang using one document which was ultimately on Target's initial clawback list, to no objection regarding privilege | Pizzirusso Decl. ¶¶ 6, 12 |
| Nov. 4, 2014 | Plaintiffs depose Nickolas Kemske using five documents which were ultimately on Target's initial clawback list, to no objection regarding privilege | Pizzirusso Decl. ¶¶ 7, 12 |
| Nov. 4, 2014 | Target produces another 1,410 documents to Plaintiffs | Pizzirusso Decl. ¶ 1 |
| Nov. 19, 2014 | Target produced privilege log to Plaintiffs of 2,000+ entries | Pizzirusso Decl. ¶ 4 |
| Nov. 20, 2014 | Investigation completed and errors found. Randall Fons' team begins re-reviewing "large portions of the SEC production" (again, no mention is made to Plaintiffs) | 3/13/15 Fons Decl. ¶ 18 |
| Dec. 13, 2014 | Randall Fons informs David McDowell that privileged documents were produced to the SEC and thus to Plaintiffs. Re-review commences (unclear how this re-review differs from previous knowledge of and review in early November) | 3/13/15 McDowell Decl. ¶ 23 |
| Jan. 12, 2015 | Target's re-review of documents complete | 3/13/15 McDowell Decl. ¶ 24 |
| Jan. 12, 2015 | Target sends clawback request to Plaintiffs, requesting return of 4,236 documents totaling 17,543 pages | Pizzirusso Decl. ¶ 7 |
| Jan. 20, 2015 | Target submits revised clawback request, requesting return of 3,095 documents totaling 13,609 pages | Pizzirusso Decl. ¶ 20 |

## III.   ARGUMENT

### A.   Target's Statements Are Contradictory and Not Credible.

Throughout its statements to Plaintiffs and the Court, Target's story has shifted on multiple occasions.  Its latest submission represents more of the same contradictory testimony and evidence.  Given Target's burden of showing that disclosure here was inadvertent, these conflicting statements weigh against a finding in Target's favor.

### 1.   Target's Changing Story about the Number of Reviews

Target first claimed that it conducted a two-level review prior to the SEC production and then "similar reviews" of both the FTC and AGs productions.  After Plaintiffs argued that these six separate reviews weighed against Target's assertions that its production was inadvertent, Target *now* claims that it conducted just one two-level review at the outset of its production to the SEC and relied on that review for later productions.

| Statement 1 | Statement 2 |
|---|---|
| "We designed a process for reviewing all documents to be produced to the SEC-both for both [sic] responsiveness and for privilege. As part of that process, counsel for Target identified and segregated documents we identified as privileged. . . Documents produced in response to requests made by the Federal Trade Commission (FTC) and to certain states' Attorneys General (AGs) were also included in the productions to the SEC. ***These productions were also subject to attorney review for privilege and responsiveness, based on a similar review procedure we used for the SEC production***." Dkt. No. 324, Declaration of | "The FTC requests were more limited in scope than the SEC requests, and ***did not require a separate electronic review***." 3/13/15 McDowell Decl. ¶ 15 (emphasis added)<br><br>"The State's [sic] [AGs] document requests were more limited in scope than the SEC requests, and ***did not require a separate electronic document review***." 3/13/15 McDowell Decl. ¶ 17 (emphasis added) |

| Statement 1 | Statement 2 |
|---|---|
| Randall J. Fons ("2/16/15 Fons Decl.") ¶¶ 4-5 (emphasis added) | |

### 2.      Target's Changing Story about the Reasons for Its Purported Mistakes

Target first claimed that the inadvertent disclosure was caused solely by two issues: a faulty list of names and a reading pane error.  After Plaintiffs and the Court questioned Target about the amount of documents subject to each error and how that could be the case given the additional documents Target added to the clawback request (some of which did not appear to be in either category), Target has since claimed additional sources of error (without giving any explanation of the purported reasons for the additional mistakes) and still has provided no description for how many documents (or which bates numbers) fall into any of the various categories.  Target also has not produced the list of the names (and how it was subsequently modified) that purportedly gave rise to the attorney list error.

| Statement 1 | Statement 2 |
|---|---|
| "Our subsequent investigation into the root causes of the inadvertent production revealed the following: a. The list of attorneys and non-attorneys working at the direction of counsel utilized for Target's initial document review projects omitted a large number of individuals who should have been included… b. Due to a technical glitch in the document review platform, the header or footer panes were not visible in certain viewing modes, preventing some members of the review team from seeing documents that bore "attorney-client" or "work product" privilege legends." | MR MCELHINNY: … Again, and as I understand it, [the incomplete list of attorneys and non-attorneys], combined with the viewer problem, which is a different problem, ***account for the vast majority of the documents we're talking about, but not all***.<br>THE COURT: And what else it accounts for?<br>MR MCELHINNY: My understanding it –<br>THE COURT: The mistaken disclosure?<br>MR MCELHINNY: -- mistakes made by reviewers. |

| Statement 1 | Statement 2 |
|---|---|
| Dkt. No. 338, Declaration of Randall J. Fons ("2/20/15 Fons. Decl.") ¶ 7. | 2/24/15 Hearing Tr. 30:3-10 |

### 3.     Target's Changing Timeline Regarding the Attorney List Error

Target initially claimed that it first learned of the issue with its list of attorney and non-attorney names in November 2014.  In its most recent submission, Target now admits that it conducted clawbacks based on this exact same issue in July and October 2014.  Even though Target knew that there were problems with this "attorney list" in July and October, it fails to explain why additional steps were not taken at that time to rectify any problems with this list.

| Statement 1 | Statement 2 |
|---|---|
| "Our subsequent investigation into the root causes of the inadvertent production revealed the following: a. The list of attorneys and non-attorneys working at the direction of counsel utilized for Target's initial document review projects omitted a large number of individuals who should have been included. This appears to have been the primary cause of the inadvertent production." 2/20/15 Fons. Decl. ¶ 7<br><br>"In the process of reviewing the SEC Production set in early November to prepare for testimony, privileged documents were discovered." 3/13/15 Fons Decl. ¶ 16 | "As additional names were identified, the team ran revised searches on documents that had already been produced to the SEC as part of the rolling production.  As a result of that process, Target clawed back 11 documents from the SEC on July 22, 2014, and 230 documents on October 8, 2014." 3/13/15 Fons Decl. ¶ 12 |

### 4.     Target's Changing Timeline Regarding Discovery of Its Error

Target's date of discovery of its allegedly inadvertent disclosure has also shifted throughout its briefing.  In previous submissions, Target claimed that it only learned of the disclosure on December 13, 2014.  In the latest version of its story, however, Target's

counsel now admit that its attorneys knew as early as the beginning of November 2014 (if not sooner) that there was an issue with the production (not to mention the fact that they had clawed back similar documents in July and October).

| Statement 1 | Statement 2 |
|---|---|
| "On December 13, 2014, the lawyers in our firm working on this MDL Proceeding learned that a number of privileged documents had been produced to the SEC by mistake, and that those same documents were subsequently produced in the MDL proceeding (since, as noted, no additional privilege review was conducted)." Dkt. No. 322, Declaration of Mark D. McPherson ("McPherson Decl.") ¶ 5 | "In the process of reviewing the SEC Production set in early November to prepare for testimony, privileged documents were discovered." 3/13/15 Fons Decl. ¶ 16<br><br>"Based on the results of the investigation, we ran revised searches on the production set, including with additional names of lawyers and non-lawyers.  From approximately November 20 to December 13, we re-reviewed large portions of the SEC production based on the results of the revised searches." 3/13/15 Fons Decl. ¶ 18 |

These examples show the extent to which Target's story about its purported inadvertent disclosure has been a moving target from the outset of the briefing to this Court.  The Court was correct to request additional information, and now that it has been provided, Target's position is even less clear.

### B.    Target Has Failed to Address the Court's and Plaintiffs' Questions.

Notably absent in Target's presentation of new evidence are answers to many of the questions that the Court and Plaintiffs raised at oral arguments or in their briefing. Again, given that Target bears the burden of proving that its disclosure was "truly inadvertent," *Minnesota v. Carlson*, No. 27CR1129606, 2014 WL 5091763, at *2 (Minn. Dist. Ct. July 31, 2014) (quoting *Fox v. Massey-Ferguson, Inc.*, 172 F.R.D. 653, 671

(E.D. Mich. 1995).  Target's failure to present evidence on certain material issues should lead to a ruling against it.

First, Target has failed to provide the Court or Plaintiffs with the number of additional individuals for whom it is now claiming privilege (over its initial review list), nor has it identified who those individuals are.[6]  This information is highly relevant to evaluating both whether the omission was truly inadvertent, or else whether, if it was inadvertent, Target's process was so reckless as to constitute waiver under the *Starway* factors.  For example, if Target left off from its list various in-house counsel and not others, it would tend to show that Target intentionally left those attorneys off its list.  As another example, if Target's list of additional individuals is significantly higher than its original list, that would tend to show that Target's process was unreasonable at the outset, weighing in Plaintiffs' favor for the first *Starway* factor concerning reasonableness of precautions.  Finally, if Plaintiffs had this list, they could cross-check to ensure that Target's assertions were correct and these newly added attorneys were actually on the documents for which Target is newly claiming privilege.  Without these lists or any other objective evidence supporting Target's assertions, the Court is faced with more "self-serving declarations" that cannot form the basis for Target's position.  *See Harmony Gold U.S.A., Inc. v. FASA Corp.*, 169 F.R.D. 113, 116 (N.D. Ill. 1996).

---

[6] Given the questions posed by Plaintiffs and the Court, it is more than reasonable to expect that this information would have been provided at this point.  That the information has not been produced should be deemed not only a failure but a refusal, whether implicit or explicit, to provide the information, notwithstanding the burden Target faces here.

In the same vein, Target now asserts in its briefing that additional individuals whose documents gave rise to privilege concerns were initially discovered during its first review process, leading to a clawback of 241 documents from the SEC prior even to any production to Plaintiffs.  Target also does not identify those individuals nor does it explain whether other documents from those individuals are being clawed back in the current dispute (and why these initial concerns did not cause Target to reevaluate its entire production at that time).  Target fails to address why it did not take additional actions to identify other individuals giving rise to privilege concerns when it was faced with evidence from its reviewers that its initial list was insufficient.

Also, as described above, Target has now indicated at least three different causes for its alleged inadvertent production (contradicting its initial assertions to this Court).  However, Target has never identified which documents fall into each category, or whether there is overlap between the categories.  This is highly relevant information for the Court and Plaintiffs; should the Court find it compelling that Target changed its mind on its list of individuals for whom to search and wish to issue a ruling finding that this category of documents was not inadvertently disclosed, the Court would need to know which documents fall into this category.  These numbers are also significant for showing reasonableness and number of disclosures under the *Starway* analysis, should the Court analyze that argument.

Without answers to these questions, Target has deprived the Court and Plaintiffs of a full picture by which to assess Target's position and failed to meet its burden.  As such, Target's clawback request should be denied.

### C. Target Has Failed to Adequately Respond to Plaintiffs' Key Arguments.

Finally, in all of its briefing, Target has still not provided the Court or Plaintiffs with a sufficient rebuttal to most of Plaintiffs' key arguments. Because these points have gone unrebutted, or else because Target failed to meet its burden to present enough evidence to challenge these arguments, Target's request for relief must fail.

### 1. Target's Changes to Its List of Attorneys and Non-Attorneys Working at the Discretion of Attorneys Contradicts Its Claim of Inadvertence.

First and foremost, Target's own explanation for the "primary cause" of the breach contradicts its claim of inadvertence. 2/20/15 Fons Decl. ¶ 7. Target states that it created a list of attorneys and non-attorneys whose emails might give rise to privilege concerns, and used that list for its review process. *Id.* Target states that it reminded reviewers "that they may encounter privileged documents and personnel that were not detailed in the documentation provided to them . . . ." 3/13/15 Fons Decl. ¶ 10. Reviewers identified additional names that could give rise to privilege concerns, and Target initially clawed back 241 documents from the SEC accordingly. Id. ¶¶ 11-12. Target completed its review process, and produced a privilege log on November 19, 2014. Pizzirusso Decl. ¶ 4.

After all of this, Target then *made a decision* to supplement (for the third time) its list of attorneys and non-attorneys working at the discretion of attorneys. Thus, the initial list of documents provided to Plaintiffs was done so *deliberately*. Target may have been able to claim inadvertence had, for example, documents containing names that were on

the initial list somehow slipped through the cracks - but Target admits this is not what occurred.  Instead, Target consciously changed strategy to alter the original list to add "a large number" of additional individuals for whom it wanted to withhold documents. 2/20/15 Fons Decl. ¶ 7.  And, as discussed above, Target has not even provided the Court or Plaintiffs with the number of individuals it added, the names of these individuals, or the documents clawed back subject to this list so that Plaintiffs and the Court can evaluate its claim.[7]

To allow Target to claim an inadvertent production because it changed its mind about what individuals it wanted to hold back from production would open the door for other deliberate shifts.  For example, what is to stop Target for claiming six months from now that it wants to add additional individuals to this list?  Instead, this deliberate strategic change cannot be deemed as inadvertence under any reasonable definition of the word.  Target meant to produce these documents in the first instance and later changed its mind.

### 2.     Target's Reading Pane Error Offers No Support for Its Claim of Inadvertence.

Target's second claim of error involves an apparent technical issue in which "header or footer panes were not visible in certain viewing modes, preventing some members of the review team from seeing documents that bore 'attorney-client' or 'work

---

[7] Moreover, it should not matter for privilege purposes whether an attorney's name is on a document.  The inclusion of an attorney does not make a document privileged when, for example, it is otherwise a business document.  *Cardenas v. Prudential Ins. Co. of Am.*, No. 99-CV-1421 JRT/FLN, 2004 WL 234404, at *2 (D. Minn. Jan. 30, 2004).  In other words, it is the content of the document that makes it privileged, not the list of recipients.

product' privilege legends." 3/13/15 Fons Decl. ¶ 17.  This argument carries no weight for several reasons (in addition to Target's refusal to explain how many documents were overlooked for this reason).

First, Target provides no examples of screen shots or any other objective evidence to show how this purported error occurred.  Target's argument also seems to contradict its own declarations because Target itself acknowledges that these documents would have been "prepopulated with a 'privileged' tag" as they would have contained "attorney", "attorney client", or "work product"—the terms Target gave its document vendor to use. 3/13/15 Fons Decl.¶ 9.  Thus, by Target's own evidence, any of these documents for which headers and footers were not "visible" would have nonetheless been prepopulated as "privileged" for purposes of extra review.  Moreover, the vast majority of documents on Target's clawback list are emails that would not even have had such legends or viewing pane issues.  And as Plaintiffs argued in previous briefing and at oral argument, the fact that reviewers could not *see* these legends has no bearing on whether the documents themselves were actually privileged.  It is the content of the document, not a legend, that makes it privileged.  And Target admits that it reviewed the content of these documents—and would have given close scrutiny to any document prepopulated as privileged.  Indeed, Target claims that "documents identified as responsive and not privileged by first-level reviewers were reviewed a second time by more senior attorneys prior to production."  Dkt. No. 350, p. 4.

Given these facts, there is simply no reason why this apparent technical glitch should carry any weight.

### 3.    The Governmental Entities' Decisions Regarding Target's Clawback Request Are Irrelevant.

In its recent submission, Target informed the Court that the SEC has now complied with Target's clawback request and destroyed the requested documents. 3/13/15 Fons Decl. ¶ 21.  Target also asserts that the FTC has also agreed to destroy these documents, and representatives for the state AGs "are confident that those states [that received the documents] will return or destroy the documents, consistent with applicable state law."  3/13/15 McDowell Decl. ¶ 26.  Notably, however, Target has still not provided a single piece of correspondence with any Governmental Entities to the Plaintiffs or the Court.

Regardless, none of this should impact the Court's final determination as to whether waiver here was effectuated.  As outlined in Plaintiffs' previous briefing, if the Court conducts the *Starway* analysis and finds that waiver occurred as to the Governmental Entities, then waiver has occurred as to Plaintiffs, as well.  *See* Dkt. No. 327, pp. 13-19.  This remains true whether the Governmental Entities agree to return the materials.  The Governmental Entities have had access to the relevant documents—some of them for almost a year.  To borrow a phrase from one of Target's own cited cases, "the genie is out of the bottle" now given Target's lax approach to purported confidentiality. *See Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, No. 07 Cv.2014(SWK), 2008 WL 199537, at *6 (S.D.N.Y. Jan. 22, 2008) (citations omitted). And once it is out of the bottle, it cannot be recorked as waiver has occurred.

At the hearing, Plaintiffs cited authority for the analogous proposition that, even where a third party receiving purportedly privileged materials agrees to keep them confidential, waiver is nonetheless effectuated as to other parties.  *See In re Chrysler Motors Corp. Overnight Evaluation Program Litig.*, 860 F.2d 844, 846-47 (8th Cir. 1988).  In that case, the government moved to compel class plaintiffs to disclose a tape that was produced to class plaintiffs by Chrysler during settlement talks.  The government wanted the tape for its own case against Chrysler.  Chrysler argued that the tape was subject to work product protection which was not waived by virtue of its production in settlement talks because class plaintiffs had agreed to keep it confidential, but the Court rejected this argument: "[T]he agreement between Chrysler and co-liaison counsel for the class action plaintiffs not to disclose the computer tape to third-parties [does not] change the fact that the computer tape has not been kept confidential."  *Id.* at 847.  Here, too, the Governmental Entities' decision to return the documents does not change the underlying fact that, under the *Starway* factors, Target's negligent and/or intentional actions have waived any privileged.

Target attempts to challenge Plaintiffs' citation to *In re Chrysler Motors* because that case involved waiver due to voluntary disclosure and not inadvertent disclosure. Dkt. No. 350, p. 9 n.3.  But Target (who has the burden here) has offered no authority to support its own position that the act of waiver is somehow canceled where a receiving party gives back the materials at issue, and Plaintiffs have found none.  And Target has failed to rebut Plaintiffs' evidence that the documents at issue here were not inadvertently disclosed.

### 4.     Target's Process Was Wholly Inadequate.

In its latest brief, Target brazenly claims that the "facts" show that "in large part, these processes [to protect privileged documents] worked." Id. p. 1.  Target claims that its process was plainly adequate because it did catch some documents that were purportedly privileged and resulted in the production of a privilege log.  2/16/15 McDowell Decl. ¶ 6. Target touts its 2,000+ entry privilege log as evidence that its process worked as it should.  Id.[8]  But it submitted this privilege log after it already knew that its method was flawed, i.e., after Target's counsel already realized that many privileged documents had been produced to the SEC.  This further demonstrates Target's haphazard approach to the entire process.

Thus, Target is now claiming that its privilege review process, which (according to Target) allowed 3,095 documents to slip through the cracks—nearly four times as many documents than were actually caught in its first privilege review—was adequate and reasonable.  In fact, as Plaintiffs explained in previous briefing, Target's process cannot be viewed as reasonable under the *Starway* factors because of the size and scope of its disclosure alone (among other things), and the nature of those documents.  Dkt. No. 327, pp. 13-16.  To this day, Target *still* has not cited a single case to support this proposition,

---

[8] Target has repeatedly mistaken how many documents were actually on its privilege log. 3/13/15 McDowell Decl. ¶ 22 (claiming that its original privilege log "itemized more than 2,000 privileged documents").  As described in the Declaration of James J. Pizzirusso, Target withheld approximately 800 documents, not over 2,000 as claimed by Target.  Pizzirusso Decl. ¶ 4.  This discrepancy is due to the fact that Target sometimes included multiple entries related to a single documents on its original log.  Target does not appear to have a full grasp of adequate control of its process.

while Plaintiffs have cited multiple cases in which productions involving much smaller numbers of documents were found unreasonable. *Id.* p. 16. Target has done nothing to combat Plaintiffs' argument that this is an entirely unprecedented request seeking extraordinary relief. No other Federal Court (or state court for that matter) has ever been asked to do what Target is asking this Court to do; that is: to allow a sloppy review and strategy shift to upend ongoing litigation and allow a company to claw back 9% of its entire production to date (over 13,000 pages).

With respect to certain subcategories of documents identified by the Plaintiffs and the Court relating to the Data Breach Task Force and the Verizon investigation, Target still provides no evidence to rebut Plaintiffs' arguments that either these documents were purposefully produced or else that they were produced as the result of an unreasonable process.

### a.   Data Breach Task Force

Target takes the position that *every* document involving the Data Breach Task Force is privileged because Mr. McElhinny of Morrison & Foerster, in conjunction with Target management, authorized the creation of the task force. 3/13/14 McDowell Decl. ¶¶ 4-7; Hearing Tr. 26:21-24. Putting aside the case law cited by Plaintiffs in their opening brief as to why such investigations are not privileged (Dkt. No. 337 at pp. 31-33), Target's failure to take even minimal steps to protect this purported privilege is clear evidence that these documents were purposely or recklessly produced.

Before learning that Target was claiming privilege for *all* Data Breach Task Force documents (which Plaintiffs do not believe is a valid position), Plaintiffs questioned why

a simple search for the listserv email address of "databreachtaskforce@target.com" was

not conducted.  *Id.* at p. 11.  Target has repeatedly skirted this question, both at oral

argument and in its latest brief, by stating that Data Breach Task Force documents do not

bear legends describing their purpose.  3/13/15 Fons Decl. ¶ 15.  But this ignores the

point: there was a very simple, formulaic way to identify these documents that Target

simply chose not to use.  Now that Target has explained that this committee was

purportedly "highly confidential," Plaintiffs are even further puzzled by this failure.  If

Target meant to always withhold these documents, it had a very easy way to do so

(search for the email address), but it did not.

Target also claims that it relied on its privilege filters and list of attorneys and non-

attorney personnel to identify these task force documents.  If this is true, then why did

Target not list the attorneys and non-attorney personnel for this "confidential", "need-to-

know" committee on its original list of relevant persons?  *See* 3/13/15 McDowell Decl. ¶

6.  And if Target did include these individuals on its initial list, then these documents

would have been reviewed and actively unchecked as non-privileged.  Again, without the

original and updated lists of individuals (which Target has now refused to provide for a

third time), the Court simply cannot evaluate Target's claims on this subcategory and

Target has failed to meet its burden.

### b.    Verizon Investigation

Target also claims that all documents relating to an investigation by a Verizon

team (but not a separate PCI Forensic Investigator investigation for credit card issuers

conducted by Verizon) are privileged because the team was retained and directed by

"attorneys at Morrison & Foerster, other outside counsel, and in-house counsel at Target." 3/13/15 McDowell Decl. ¶ 10.

Again, Plaintiffs have questioned why Target did not simply search for the "verizon.com" email address and give those documents extra scrutiny.  Target's explanation for this failure is two-fold.  First, Target claims that to do so would have been "both under- and over-inclusive."  3/13/15 Fons Decl. ¶ 15.  This explanation is questionable.  If this investigation was as "confidential" as Target claims, then any reasonable law firm would have conducted such a search, regardless of what other documents might have been picked up in the process.  Indeed, Target stresses in its declarations that Verizon "agreed to maintain its work and communications in strict confidence . . . ." 3/13/15 McDowell Decl. ¶ 10.  It defies logic then that Target would have accidentally allowed those same communications to slip through the cracks and be produced to Governmental Entities and Plaintiffs.

Second, Target claims that some individuals who worked on the Verizon investigation were inadvertently left off the original list of individuals whose names were searched.  2/24/15 Hearing Tr. 31:19-32:1.  Again, without the lists that Target has refused to provide, the Court and Plaintiffs cannot evaluate this claim.  It seems unlikely that Target would accidentally leave these individuals on a supposedly highly confidential committee off of its list of persons whose communications could give rise to privilege concerns.  Thus, this is additional evidence weighing against a finding of inadvertence, or else for a finding of waiver under the *Starway* factors.

### 5.      Target Did Not Promptly Remedy Its Error.

Finally, Target maintains that it took "immediate" steps to remedy its error.  Dkt. No. 350 at pp. 8-9.  This argument is contradicted by its own timeline.  Target knew that there was an issue with its privilege review list as far back as July 2014, when it made its first clawback request based on its counsel's own failure to identify all individuals whose documents could give rise to privilege concerns. 3/13/15 Fons Decl. ¶ 12.  At that point, Target failed to overhaul its list, which could have likely avoided the instant dispute. Target had another opportunity in October 2014, when it clawed back an additional 230 documents due to this exact same issue.  3/13/15 Fons Decl. ¶ 12.  This clawback took place two weeks before Plaintiffs received Target's major production.  And yet, Target did nothing to reevaluate its list at that time either.  Target went on to produce a privilege log on Nov. 19, 2015, after having already realized that privileged documents were included in its initial production and while an investigation into the cause of that purported lapse was ongoing.  Pizzirusso Decl. ¶ 4; 3/13/15 Fons Decl. ¶ 18.  And again, Target failed to act.

Target continues to use the date of December 13, 2014 as its date of discovery, but this is disingenuous.  At the latest, Target's attorneys (by their own admission) knew there was an issue with its production in early November, and yet did not inform Plaintiffs until two months later (on January 12, 2015) that potentially privileged documents were produced.  In those intervening months, Plaintiffs spent countless hours reviewing documents, drafting memos, using them at depositions, and creating additional work product surrounding these materials.  This cannot be deemed as "immediate" or

even reasonably prompt for the purposes of determining waiver under the *Starway*

factors, and is in fact longer than the period that Plaintiffs originally challenged in their

briefing.  Dkt. No. 337, pp. 16-17.  Indeed, under the test of when a party should have,

with reasonable diligence, discovered its error, Target's failure is compounded because it

knew of similar issues with its production *six months prior* to its disclosure of the issue

to Plaintiffs.  *Id.* p. 17.

Target failed to act reasonably and thus, under either inadvertence or waiver,

Target's arguments fail.

## IV.   CONCLUSION

As Plaintiffs have stressed from the beginning of this dispute, Target has failed to

adequately address how nearly 10% of its production could supposedly have been

inadvertently produced and then gone unnoticed for more than half a year.  Target bears

the burden of showing that its disclosure of 13,000 pages of documents was truly

inadvertent and that any privileges were not waived.  And even though this Court gave

Target ample opportunity to address these issues, Target has failed to meet its burden and

again provided self-serving declarations as opposed to the objective evidence that both

the Court and Plaintiffs asked for at the last hearing.  Target's additional explanation for

how and why this happened either supports Plaintiffs' argument, or raises more questions

than it answers.

For the reasons described above and in the previous submissions, Plaintiffs

respectfully request that the Court deny Target's request to enforce compliance with the

clawback order.

Dated: March 27, 2015

Respectfully Submitted,

/s/ James J. Pizzirusso
James J. Pizzirusso
HAUSFELD LLP
1700 K Street NW, Suite 650
Washington, DC  20006
Tel:  (202) 540-7200
Fax:  (202) 540-7201
jpizzirusso@hausfeldllp.com

*Counsel for Financial Institution Plaintiffs*

Charles S. Zimmerman
ZIMMERMAN REED, PLLP
1100 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Tel: (612) 341-0400
Fax: (612) 341-0844
charles.zimmerman@zimmreed.com

*Lead Counsel for the Financial Institution Plaintiffs*

Karl L. Cambronne
CHESTNUT CAMBRONNE, PA
17 Washington Ave N Ste 300
Minneapolis, MN 55401-2048
Tel: (612) 339-7300
Fax: (612) 336-2940
kcambronne@chestnutcambronne.com

*Lead Coordinating Counsel*