

JAMES J. PIZZIRUSSO    1700 K Street, NW
Suite 650
Washington, DC 20006

jpizzirusso@hausfeld.com

September 22, 2015

**VIA ECF**

The Honorable Jeffrey J. Keyes
United States District Court for the District of Minnesota
646 Warren E. Burger Federal Courthouse
316 North Robert Street
St. Paul, MN 55101

      Re:    *In re: Target Corp. Customer Data Security Breach Litig.*, 14-md-02522-PAM-JJK

Dear Judge Keyes:

    Plaintiffs request the Court's intervention in compelling Target to produce certain documents from its privilege log that purportedly relate to Target's own investigation and remediation of the 2013 data breach. Target has sought to shield large swaths of its production that delves into the causes and remediation of the breach by having its outside counsel direct this process. Target has withheld hundreds of such documents over three separate privilege logs, claiming that the documents are attorney-client privileged and work product protected. Plaintiffs seek an order compelling the production of these documents from Target's initial privilege log and requiring Target to review its subsequent privilege logs to produce documents consistent with the Court's ruling here.

    **Background** - Target produced its first privilege log on November 19, 2014. Dkt. No. 328 ¶ 4. While Plaintiffs were reviewing the initial log, Target made a clawback request for 4,237 documents, which was later pared back to 3,095 documents. Id. ¶¶ 7, 20. In briefing surrounding the clawback request, Target claims privilege for two related issues, the Data Breach Task Force and the Verizon investigation. Target represented that its outside counsel, Morrison & Foerster ("MoFo") in conjunction with Target management, "authorized the creation of a Data Breach Task Force", which consisted primarily of attorney and non-attorney Target employees. Dkt. No. 351 ¶ 4. According to Target "the Task Force was charged with coordinating and overseeing the investigation of the Intrusion, and overseeing third-party consults to assist in the investigation, as it

involved highly technically [sic] issues beyond the expertise of most of the lawyers." Id. ¶ 5.  As for the Verizon investigation, Target claims that MoFo directly retained Verizon "to assist in the investigation *and remediation*" of the data breach.  Id. ¶ 8 (emphasis added).  According to Target, "Verizon was tasked with providing forensic analysis, systems testing, and other services to enable outside and in-house counsel to provide legal advice to Target in anticipation of litigation and regulatory inquiries."  Id. ¶ 9.  Thus, Target now claims that anything related to the Verizon investigation is privileged, including updates about facts gleaned in the investigation.

At the time, the Court declined to issue an order compelling production of investigation-related documents.  In the intervening time, Plaintiffs sent a letter with detailed challenges to each of the entries on Target's November 19, 2014 privilege log, many of which were challenged because they dealt with investigation of the breach and the planning process for remediating the breach, both of which are business functions of Target that do not constitute requests for legal advice nor do they involve actions taken solely in anticipation of litigation.  Ex. A.  The parties met and conferred, and Target's counsel agreed with Plaintiffs that many privilege log entries should have been produced in the first instance.  Declaration of James J. Pizzirusso ¶ 1 ("Pizzirusso Decl.").  Target made a subsequent production of 62 full documents and 6 documents with reduced redactions.  Pizzirusso Decl. ¶ 2.  Plaintiffs now move for an order compelling a subset of remaining disputed documents specifically related to Target's investigation of the breach.[1]

**Argument** - Target's decision to have its outside counsel direct an investigation that would have normally been conducted in-house cannot shield that investigation from discovery.  Target claims that dozens of documents related to the breach constitute a request for or summary of legal advice because their counsel directed some of the investigation and remediation efforts, with nothing more.  *See generally* Appendix A.  But it is clear that discussions about *facts* relating to the data breach are not requests for legal advice, but rather regular business discussions that Target was undertaking to help respond to (and remediate) the breach—and thus not protected.  *See Cardenas v. Prudential Ins. Co. of Am.*, No. Civ. 99-1421JRTFLN, 2004 WL 234404, at *2 (D. Minn. Jan. 30, 2004) ("*Cardenas*") ("Because in-house counsel may play a dual role of legal advisor and business advisor, the privilege will apply only if the communication's primary purpose is to gain or provide legal advice.") (internal citation omitted); *Diversified Indus., Inc. v. Meredith,* 572 F.2d 596, 602 (8th Cir. 1977) ("A

---

[1] Plaintiffs also request that the Court direct Target to review its later privilege logs and produce documents consistent with the Court's ruling here.  Target is best situated to determine which documents have been withheld based on its claimed privilege over its internal investigation and remediation plan.

HAUSFELD

PAGE 3
September 22, 2015

communication is not privileged simply because it is made by or to a person who happens to be a lawyer.").

In *Mission National Insurance Co. v. Lilly*, the court examined whether the plaintiff's selection of outside counsel to investigate an accident gave rise to attorney-client and work product protection for the investigation files. The court found that, to the extent that the plaintiff outsourced its regular business functions to outside counsel, "their work-product, communications to client, and impressions about the facts will be treated herein as the ordinary business of plaintiff, outside the scope of the asserted privileges." 112 F.R.D. 160, 163 (D. Minn. 1986). With respect to attorney-client privilege, the court found that:

> It is not dependent whatsoever upon the anticipation of litigation, but instead depends upon the nature of the relationship involved. It is clear that the attorney must be acting in the role of legal counsel with respect to the information in issue before the privilege may attach. If the attorney is acting in some other role, as an ordinary businessman for example, the privilege may not be properly claimed.

*Id.* The court also noted that, as to the work product doctrine, "[a] more or less routine investigation of a possibly resistible claim is not sufficient to immunize an investigative report developed in the ordinary course of business." *Id.* (quoting *Tejada Fashions Corp. v. Yasuda Fire & Marine Ins. Co.,* No. 83–5512, slip op. (S.D.N.Y. June 18, 1984).

In another case, *Lumber v. PPG Industries, Inc.*, the plaintiffs purchased wood preservatives and primers from the defendant which were used on its products, and later began receiving complaints from its own customers about wood rot. Plaintiffs then "contacted outside legal counsel, who directed the Plaintiffs to conduct an investigation into the problem. The Plaintiffs maintain that an investigation, under the supervision of their counsel, ensued." 168 F.R.D. 641, 643 (D. Minn. 1996). On a motion to compel, the court ordered production of "the facts underlying each party's investigation into the cause of the alleged wood deterioration", noting that "Plaintiffs may not shield their investigation of the cause of the [accident] merely because they elected to delegate their ordinary business obligations to legal counsel." *Id.* at 646-647.

These same principles apply here. Target would have had to investigate and fix the data breach regardless of any litigation, to appease its customers and ensure continued

**HAUSFELD**

PAGE 4
September 22, 2015

sales, discover it vulnerabilities, and protect itself against future breaches. Indeed, Target's own declaration states that Verizon was retained to assist with *remediation* of the data breach, and that the Data Breach Task Force was responsible for coordinating and overseeing the investigation of the breach Dkt. No. 351 ¶¶ 5, 8. These are regular, business functions of an organization that have nothing to with pending litigation or traditional requests for legal advice, and any related documents should be produced. *See Simon v. G.D. Searle & Co.,* 816 F.2d 397, 400 (8th Cir. 1987) ("attorney-client privilege does not protect client communications that relate only [to] business or technical data. . . . Legal departments are not citadels in which public, business or technical information may be placed to defeat discovery and thereby ensure confidentiality.") (quotation omitted); *Lumber v. PPG Indus., Inc.*, 168 F.R.D. at 643. Target cannot possibly claim, for example, that advice on fixing the data breach constitutes a request for *legal* advice; nor can it claim that, absent litigation, it would not have investigated or remediated the breach. Target should not be allowed to prevent the production of relevant materials simply because it had counsel oversee traditional business functions.[2]

A review of the documents on Target's privilege log further illustrate the lack of foundation for its position. These entries include:



Ex. B, Jacob Dep. 121:10-13


**HAUSFELD**

[redacted]

Beyond the privilege log descriptions, Target's assertions that its investigation should be privileged are called into doubt by evidence produced thus far in discovery. During her deposition, Beth Jacob, Chief Information Officer ("CIO") of Target, could not answer the vast majority of questions about the mechanisms of and reasons for the data breach, claiming attorney-client privilege. Ex. B, Jacob Dep. 110:24-111:2 [redacted]; 132:22-133:5 [redacted]; 246:16-247:9 [redacted]. According to Ms. Jacob, [redacted] which Target claims is privileged. Id. 112:19-113:8. But facts are *not* privileged. *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). Thus, the highest-ranking technology employee at Target claims that learning about the breach, which *should be part of her regular job function*, was actually a request for legal advice under Target's theory of the investigation. This simply cannot be the purpose of the attorney-client privilege, which has been distorted beyond recognition in this case.

Another document shows that Target's decision to retain Verizon was not done in anticipation of litigation, but, again, for business reasons. [redacted] Ex. C, TGTMDLC00070533. There was no outside counsel in attendance, and according to Target, there was not yet a litigation hold in place, so there was no anticipation of litigation.[3] [redacted] These are legitimate, *business* reasons for engaging Verizon that have nothing to do with litigation—indeed, when the decision was made to engage [redacted]

---

[3] See Ex. D (indicating that, as of Dec. 14, 2013, no litigation hold was in place).

# HAUSFELD

*See id*. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Another document from that day shows that, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Ex. E, TGTMDLC00114175. If anything, as suggested in Target's own policies, Target only used its outside counsel to retain Target *specifically* in order to shield the investigation from discovery, and not because the retention was done for a litigation purpose. Ex. F, TGTMDLC00096037 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ It is disingenuous for Target to now argue that its retention of Verizon for this portion of its investigation was done for the purposes of legal advice and in anticipation of litigation.[4]

Finally, even if the work product doctrine does apply to Target's investigation of the breach, the doctrine allows for discovery of potentially work product protected materials "upon a showing of 'substantial need and an inability to secure the substantial equivalent of the items through alternate means without undue hardship' for ordinary work product (such as photographs and raw information)." *Pittman v. Frazer*, 129 F.3d 983, 988 (8th Cir. 1997) (citing *In re Murphy,* 560 F.2d 326, 333–36 & n. 20 (8th Cir. 1977)). As an initial matter, Plaintiffs have tried to get this information through other sources, namely through depositions of witnesses on basic questions about the investigation of the data breach, only to be stymied by Target's counsel under a claim of attorney-client privilege. *See* Ex. B, Jacob Dep. 118:7-122:1 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ 130:7-131:12 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Even absent those efforts, though, *Lilly* makes clear that requiring the party seeking investigation files to "recreate" the investigation "would clearly constitute an undue hardship." 112 F.R.D. at 164 (noting that the party conducting the investigation "has all the relevant information under its control"). Thus, under the alternate theory, the work product doctrine does not apply to Target's investigation.

Because Target's investigation of the breach through Verizon and the Data Breach Task Force was done for a business purpose—to determine the cause of the breach and remediate it—Target should be compelled to produce the documents listed in Appendix A, including documents discussing facts gleaned in the investigation, and to make supplemental productions from its subsequent privilege logs consistent with the Court's ruling.

---

[4] Target claims that there were two Verizon investigations, one private and one public. Target has claimed that its attorneys retained the private Verizon team the day after the Dec. 14, 2013 meeting, so it appears that the Verizon team discussed at that meeting was the private team. Dkt. No. 351 ¶ 8.



PAGE 7
September 22, 2015

Sincerely,

/s/ James J. Pizzirusso
James J. Pizzirusso

cc: All Counsel of Record

**Appendix A**
Plaintiffs' Privilege Log Challenges

# [REDACTED]