# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: Target Corporation Customer Data Security Breach Litigation<br><br><br>This Document Relates to:<br><br>All Financial Institutions Cases | MDL No. 14-2522 (PAM/JJK)<br><br>**REPLY MEMORANDUM IN SUPPORT OF FINANCIAL INSTITUTION PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND FOR APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL [REDACTED]** |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................... 1

II.   STATEMENT OF FACTS ..................................................................................... 4

III.  ARGUMENT .......................................................................................................... 5

    A.    Standing Is Established ................................................................................ 5

    B.    Common Issues Predominate ...................................................................... 7

        1.    PCSA – Common Issues Predominate ............................................. 7

        2.    Negligence – Common Issues Predominate.................................... 11

        3.    Negligence – Causation Issues Predominate.................................. 14

    C.    Plaintiffs Have Advanced A Sound Class-Wide Damages Methodology .. 16

    D.    Target's Purported Affirmative Defenses Do Not Preclude Certification .. 19

    E.    Minnesota Law Applies Class-Wide.......................................................... 21

    F.    Plaintiffs Are Typical And Adequate......................................................... 25

    G.    Superiority Is Met....................................................................................... 27

    H.    Issue Certification Is Appropriate ............................................................. 27

IV.   CONCLUSION ..................................................................................................... 28

I.      INTRODUCTION

At the foundation of Target's entire opposition (and its indulgent *Daubert* motion) lies the fallacy that injury-in-fact is the same thing as damages, and if each class member has not incurred the same type of accounting cost, they have not suffered the same injury-in-fact. Target argues that the Court cannot certify a damages class unless *all conceivable* damages can be tallied on an aggregate basis, but cites not a single case to support its all-or-nothing theory. However, injury-in-fact is any economic cost incurred after receiving an account alert, and is common to all class members. It is black letter law that class members need not have suffered identical damages.

Dr. Cantor's methodologies compute an aggregate damages total for reissuance cost and fraud losses for alerted-on cards "attributable to" the negligence and PCSA theories proposed for certification. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013). *Comcast* says nothing about requiring all conceivable harms flowing from Defendant's liability to be calculable in a class-wide damages model. Target's entire opposition thus fails at the outset.

Target effectively concedes the ascertainability, numerosity and commonality prongs of Rule 23.  Even as to predominance, Target also concedes that key elements of this case – duty and breach under negligence, and retention and breach under the Plastic Card Security Act ("PCSA")[1] – are provable through common, class-wide proof.

---

[1]  Minn. Stat. § 325E.64.

Ex. O[2] at 12 (arguing before Judge Keyes, "Target is not disputing that if there's a duty, that common evidence one way or the other is probably going to show what Target's standard of care is."). Common issues thus indisputably predominate over the vast majority of fact and legal questions in this case.

Target yet argues that the Breach caused no class-wide injury. It ignores, however, the "economic reality" that financial institutions, receiving notice that their sensitive financial data was compromised **by Target** in the Breach (i.e., compromised cards), were required to respond, causing economic injury. Cantor Rebuttal ¶¶12, 17. It also disregards the emerging data-breach case law, under which responding to a data breach notification "easily qualifies as a concrete injury." *See, e.g., Remijas v. Neiman Marcus Grp., LLC*, No. 14-cv-3122, 2015 WL 4394814, at *5 (7th Cir. July 20, 2015). **Which** responses are reasonable is answered by the PCSA, corroborated by Plaintiffs' conduct and their qualified experts. Target's quibbles with banks' responses to the Breach amount to second guessing as to the hypothetical, subjective optimal response. But negligence law and the PCSA compensate for any objectively reasonable response, creating a common legal and factual nexus.

Target raises questions regarding damages that do not undermine class certification. *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 408 (2d Cir. 2015) ("The Supreme Court **did not** foreclose the possibility of class certification under Rule 23(b)(3)

---

[2] All abbreviations and capitalized terms are defined in ¶ 2 of, and all exhibit references are to, the Second Declaration of J. Gordon Rudd, Jr. ("Rudd 2d Decl."), except where otherwise noted.

in cases involving individualized damages calculations.").[3]   For example, Target's argument that "Plaintiffs fail to provide a reliable approach to calculating classwide damages," Target Br. 2, is simply wrong.  Plaintiffs' expert has put forward a damages methodology that Target's expert agrees applies scientifically valid approach. Furthermore, "*Comcast **does not*** mandate that certification pursuant to Rule 23(b)(3) requires a finding that damages are capable of measurement on a class-wide basis." *Id.* at 402.  Target's arguments disputing the existence of class-wide injury, causation and damages are impossible to square with its willingness to enter into quasi-class settlements for tens of millions of dollars **with Class members** through Visa and MasterCard.

Target's remaining arguments fare no better.  First, Minnesota law applies to this case, as Target does not dispute with respect to Plaintiffs' statutory claim, and as Minnesota's choice-of-law analysis establishes for their negligence-based claims.  *See, e.g., In re Target Corp. Customer Data Sec. Breach Litig.,* 64 F. Supp. 3d 1304, 1313 (D. Minn. 2014) ("Target is a Minnesota company that conducts business in Minnesota, and thus its data retention practices are governed by the Act").  Second, each Plaintiff is typical and adequate.  Third, Target's concession about the inefficiencies created by prosecuting individual actions (Target Br. 71), establishes superiority.  Finally, even if claims are not certified under Rule 23(b)(3), certification under Rule 23(c)(4) is appropriate and will promote judicial efficiency.

---

[3] Throughout, all emphases are added, and internal citations, references and alterations are omitted, unless otherwise noted.

## II.    STATEMENT OF FACTS

Plaintiffs' opening brief provides overwhelming evidence of Target's negligence that allowed the Breach.   Nascent discovery establishes additional common facts regarding Target's liability:

- Handwritten notes from an information protection manager stating that "*[s]ometimes you need a breach to get support for security*." Ex. A 243:17-245:1; Ex. B.

- 

- Internal emails establishing that Target's representations, including its CFO John Mulligan's statement to Congress, that Target did not know of the Breach until the U.S. Secret Service alerted it in mid-December are false.   One email shows an employee conceding that Target was "working on [the Breach] on Thanksgiving. . . . *But looks like Target is hiding it*." Ex. E.   Also, Brent Pack, Target's Senior Investigative Consultant, testified that Target identified the malware that effectuated the Breach in Target's system while the Breach was in progress, *but did nothing with this information for two weeks*.   Ex. F 118:13-15, 119:5-16, 169:20-170:4.

- Evidence establishing Target's knowledge of its data security vulnerability as it had 24 data breaches since 2010.   *See* Ex. G 297:10-308:24; Ex. H.

Target avoids any discussion of its misconduct.   Rather, it second-guesses banks' Breach-response efforts, though fully compensable under the PCSA.   In doing so, Target has consistently mischaracterized and misconstrued Plaintiffs' actions.   *See infra*, Section III.G.

## III.   ARGUMENT

### A.   Standing Is Established for All Class Members

Target's argument that banks responding to card network alerts suffered no Article III injury-in-fact (or "injury" for negligence purposes) is unfounded.  Responding to data breach alerts has a common, "unavoidable" economic cost.  *See* Cantor Report ¶¶35-46 (describing economic impact of alert responses); Cantor Decl. ¶¶12-13, 17; Cantor Rebuttal ¶26. Librock Decl. ¶¶10-21 (issuers obligated to respond to alerts); Ex. I (Zalpuri Dep. 137-39) (Target-retained expert agrees institutions receiving alerts "have to assess their risk").  The alerts referred to real, not potential, harm:  indeed, 92.5% of alerted-on accounts "were associated with authorized payment card transactions initiated from … terminals [already] ***confirmed as compromised***."   Rudd Decl., Ex. E at TGTMDL00009113.[4]  The clarion call of such alerts is universally recognized. *See* Ex. J. (Visa, *Best Practices for Dealing with an Account Compromise*, (2010)) (alert that accounts "may be at risk" triggers eight issuer actions).  Accordingly, courts have found responding to a data breach to constitute injury-in-fact.  *See, e.g., Remijas*, 2015 WL 4394814, at *5 (mitigating harm from data breach confers standing); *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1217 (N.D. Cal. 2014) (same); *Resnick v. Avmed, Inc.*, 693 F.3d 1317, 1323 (11th Cir. 2012) (damages from identity theft constituted injury-in-fact). Target and its experts provide zero evidence that any financial

---

[4] These sources identify class members, rendering the class ascertainable. *See Mullins v. Direct Digital, LLC*, No. 15-cv-1776, 2015 WL 4546159, at *1-2 (7th Cir. July 28, 2015).

institution can take actions to confront a data breach and incur no economic cost.  Cantor Rebuttal ¶¶16, 39-40.

*Remijas* is instructive.   There, the Seventh Circuit **rejected** the defendant's argument that customers' reactions to data breach alerts to mitigate losses were insufficient to confer standing under *Clapper.*  The court explained, "customers should not have to wait until hackers commit identity theft or credit-card fraud in order to give the class standing, because there is an 'objectively reasonable likelihood' that such an injury will occur."  *Id.* at *4 (quoting *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013)).  *Remijas* is consistent with other data breach case law and its analysis fits squarely here.  *See Remijas*, 2015 WL 4394814, at *5 (noting "that in *Anderson v. Hannaford Bros. Co.*, … plaintiffs sufficiently alleged mitigation expenses—namely, the fees for replacement cards and monitoring expenses...."). Financial institutions, notified that their accounts were compromised, had to react.  Reacting to a breach notification confers standing.  *See id.*; *Anderson*, 659 F.3d at 162; Minn. Stat. § 325E.64. subd. 3.

Target dismisses *Remijas* as a "small minority" opinion.  But *Remijas* favorably cites this Court's analysis in *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1304, and reflects the concerted view on the harm caused by data breaches and standing, emerging post-*Clapper*.

Finally, all class members' injuries are redressable in this lawsuit through the class-wide damages methodologies advanced by Dr. Cantor for reissued cards or fraud costs, through damages proceedings once liability has been established after a Rule 23(c)(4) proceeding, or both.  Redressability poses no obstacle to certification.

### B.      Common Issues Predominate

Plaintiffs readily establish predominance with respect to their negligence and PCSA claims.  Indeed, Target **concedes** that **two of the four** negligence elements (duty, breach) and the two core PCSA issues (retention, breach) will turn on common evidence.  Target Br. 2; *see also* Ex. O; *Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 133 S. Ct. 1184, 1196 (2013) ("Rule 23(b)(3) … does **not** require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof ... [but] that common questions **predominate** over any questions affecting only individual class members.") (emphasis in original).  Because at least half of the elements of Plaintiffs' claims (and all of those concerning breach-inducing fault issues) depend on common evidence, "common issues predominate."  *Gunnells v. Healthplan Servs., Inc*., 348 F.3d 417, 429 (4th Cir. 2003) (liability issues predominated over causation and damages issues).

### 1.      PCSA – Common Issues Predominate

Attempting to manufacture individual issues, Target overcomplicates the PCSA, a straightforward statute designed to shift the financial burden of data breaches from card-issuing institutions to merchants.  The elements of a PCSA claim are: (1) retention of protected information by a merchant; (2) a breach of the merchant's system; and (3) proximate harm to card-issuing institutions.  *See* Minn. Stat. § 325E.64.  Each element can be established through class-wide proof.  Mem. 37-39.  Target does not dispute that evidence of the two threshold PCSA elements, retention and breach, will be common to all class members.  Thus, predominance is established.

With respect to causation and damages, Target misreads the PCSA.  The PCSA requires merchants to reimburse card-issuing institutions for "costs" of "reasonable actions" taken in response to a breach to protect cardholders or provide services, and includes ***specific examples of such "reasonable" actions*** – "including but not limited to" card account reissuance and fraudulent charge reimbursement.  Minn. Stat. §325E.64. Subd. 3, (1) & (4).   The Minnesota Legislature has already decided that these are "reasonable actions" that qualify for reimbursement under the PCSA.[5] Plaintiffs need not establish more.  *See id.*; *see also In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21, 28 (D. Me. 2013) (immediate issuance of "new cards is evidence of the reasonableness of replacement of cards as mitigation.") (quoting *Anderson*, 659 F.3d at 164-65).  This point is further established by Plaintiffs' experts.  Librock Decl. ¶21; Librock Supp. ¶4.

Moreover, questions of reasonableness create no individualized issues where, as here, the fact-finder may determine reasonableness ***categorically***.  *See Lindell v. Synthes USA*, No. 11-cv-02053, 2014 WL 841738, at *9-11 (E.D. Cal. Mar. 4, 2014) (holding whether expenses were "reasonable" and "necessary" was common to class and determinable on categorical basis).  The ***costs*** incurred to undertake reasonable responses to the Breach "concern damages, not liability."  *Id.*

---

[5] Caselaw cited by Target (Target Br. 42) is inapplicable.  *See Luiken v. Domino's Pizza, LLC*, 705 F.3d 370, 373 (8th Cir. 2013) (statutory language at issue qualified the reasonableness of the examples, providing that "[o]bligatory charges which ***might*** reasonably be construed … as payment for personal services rendered, include, but are not limited to …"); *In re Estate of Pawlik*, 845 N.W.2d 249, 251 (Minn. Ct. App. 2014) (focusing on the effect of language at the end of a list – "Interested person' includes heirs, devisees, children … ***and any others having a property right***").

8

Target also challenges causation under the PCSA, *see* Target Br. 43, but this too can be established through common evidence. The card brands indisputably issued alerts in direct response to the Breach. Institutions receiving these alerts were bound by regulatory, economic, and customer obligations to respond. *See* Cantor Report ¶¶35-46; Cantor Decl. ¶¶12-13; Librock Decl. ¶¶10-21; Librock Supp. ¶4; *see also* Meal Decl., Ex. 1 at 80:9-15 ("all banks are facing…three [or] four challenges around this data breach…[:] customer impact, reputation risk, relationships with the regulators [and]… not violating regulatory guidance.").

A "range" of reasonable responses, appropriately bounded by the class definition, were available to institutions to protect themselves and customers. *See* Librock Decl. ¶¶21; Librock Supp. ¶¶4, 7. Such actions have economic consequences to card-issuing institutions. Cantor Report ¶¶35-46; Cantor Decl. ¶¶14-17. The responses Mr. Librock identified are deemed reasonable by the PCSA and were taken by Plaintiffs **and** Target. *Compare* Librock Decl. ¶21 *with* Minn. Stat. § 325E.64, subd. 3; *see also* Librock Supp. ¶12; Fullerton Decl. ¶¶3, 5, 8; White Decl. ¶¶5, 9; Diers Decl. ¶¶5, 9; Yelverton Decl. ¶¶5, 9; Brosky Decl. ¶¶5, 9;. Ex P at 6:1-6; 23:8-27:1 (Target reissued cards and reimbursed fraud losses upon alert that Target RedCards compromised).

Target repeatedly misconstrues Mr. Librock's opinions and quotes his testimony out of context. Librock Supp. ¶¶1-2, 9-10. Mr. Librock does not opine as to the particular decision-making process of each institution. *See* Librock Supp. ¶¶10-11. He maintains that the responsive actions set forth in the PCSA were objectively reasonable

responses to the Breach for any bank.  *See id.* ¶¶3-4; *see also* Minn. Stat. § 325E.64, subd. 3.

Target's expert, Mr. Zalpuri, has never advised an issuing bank about what to do when there is a data compromise.  Ex. I at 98:12-99:13.  He admitted he does not have enough information about the Target data breach to have an opinion on what was a reasonable response by an issuer.  *Id.* at 218:6-220:17. Even so, Zalpuri agrees that some response to the alerts was necessary.  Zalpuri Decl. ¶¶35-36, 40 (noting monitoring and investigation activities); Ex. I at 137-39.

Target's argument that the PCSA "require[s] an analysis of whether the card would be used fraudulently[,]" Target Br. 39, violates basic tenets of statutory construction by "adding words or meaning to a statute."  *Genin v. 1996 Mercury Marquis,* 622 N.W.2d 114, 117 (Minn. 2001).  Any account included in an alert was "affected by" the Breach.  *See Remijas*, 2015 WL 4394814, at *5 (cardholders were "affected" by breach); *see also* Cantor Report ¶¶35-46 (noting common impact on plaintiffs from Breach).  Visa likewise recognizes that every alerted-on account carries risk for its issuer bank ***whether actually stolen or not***.  *See* Meal Decl. Ex. 38 ("It is often difficult to determine with certainty if a hacker was able to retrieve all of the exposed account numbers … it is not uncommon for criminals to store account data up until the expiry date of the card.").

Finally, class certification is appropriate even if this Court finds that individual causation issues remain.  *See Mooney v. Allianz Life Ins. Co. of N. Am.*, No. 06-cv-545, 2009 WL 511572, at *5 (D. Minn. Feb. 26, 2009) (declining to decertify class based on

causation issues); *Collins v. Olin Corp.*, 248 F.R.D. 95, 104 (D. Conn. 2008) ("individual issues of causation do not preclude class certification"); *Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010) (same).

### 2.   Negligence – Common Issues Predominate

Courts regularly find predominance satisfied and certify negligence class actions. *See, e.g., Ebert v. Gen. Mills*, No. 13-cv-3341, 2015 WL 867994, at *2, *15 (D. Minn. Feb. 27, 2015); *Anwar v. Fairfield Greenwich Ltd.*, 306 F.R.D. 134, 140-44 (S.D.N.Y. 2015); *Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597, 606-07 (E.D. La. 2006). Predominance as to Plaintiffs' negligence claims is likewise established here, where duty and breach indisputably implicate common issues, and common issues abound as to injury, causation and damages.

*Hannaford* (Target Br. 19-20) is distinguishable because there, unlike here, plaintiffs failed to advance an expert-developed damages methodology. *Hannaford*, 293 F.R.D. at 30-33, 35. Moreover, in *Henke v. Arco Midcon, L.L.C.*, (Target Br. 57) unlike here, the plaintiffs failed to put forward common evidence of "injury causation and damages" tied to the contamination at issue. *Stollenwerk v. TriWest Healthcare Alliance,* No. 03-cv-0185, Slip Op. 7-8 (D. Ariz. June 10, 2008), is distinguishable because there the plaintiff adduced no evidence showing that causation could be established with common evidence; moreover, the court found that certain affirmative defenses created predominance issues, whereas Target's asserted affirmative defenses here relate to damages, and are irrelevant to predominance, *see infra* Section III.D.

Target's argument that negligence-based injury from the Breach cannot be shown through common, class-wide evidence (Target Br. 20-23) conflates the distinct concepts of injury-in-fact and damages.  The Breach caused card brands to issue alerts.  *See* Rudd Decl. Ex. FF at MC_000967.  Class members – as Plaintiffs did[6] – were then obligated to respond under applicable regulations and to mitigate losses.  *See* Cantor Report ¶¶35-46; Cantor Decl. ¶¶12-13; Librock Decl. ¶¶10-21; Librock Supp. ¶¶4; Ex. J. Target's expert Dr. Cremieux also erroneously conflates economic impact and damages in asserting that class-wide data cannot show injury, *see* Cremieux Rep. ¶¶6(B), 12, 22-33, 67, which, as Dr. Cantor explains, is economically incorrect; whether an economic impact occurred and the measurement of damages are distinct questions.  Cantor  Rebuttal ¶¶13-29.  Dr. Cremieux simply imposes his own incorrect legal description of injury.  *See* Cremieux Rep. at n.15 (citing own article regarding injury).  As noted *supra*, these facts present cognizable injuries.[7]  *See In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 256 F.R.D. 82, 88-89 (D. Conn. 2009) (evidence that plaintiffs expended resources mitigating consequences of unlawful conduct demonstrated injury-in-fact).[8]

Target wrongly contends that the only types of common **injury** the Court may consider in its predominance analysis are those addressed through Plaintiffs' class-wide

---

[6] *See, e.g.,* Fullerton Decl. ¶¶3-5, 8-10; White Decl. ¶¶5-10; Diers Decl. ¶¶5-10; Yelverton Decl. ¶¶5-10; Brosky Decl. ¶¶5-10.

[7] *Hannaford*, *Remijas* and *Adobe* recognize that card data theft causes a real and "reasonably certain future harm" to issuers and cardholders affected by the breach, in satisfaction of Minnesota's negligence injury standard.

[8] Because Plaintiffs can establish injury through common evidence, *Owner-Operator Indep. Drivers Ass'n, Inc. v. New Prime, Inc.*, 339 F.3d 1001, 1012 (8th Cir. 2003), which simply requires as much, presents no bar to certification.

damages methodology.   Target Br. 22-23.   But Plaintiffs' ***damages*** methodology has nothing to do with establishing the fact of ***injury***.   *See, e.g., MacRae v. Grp. Health Plan, Inc.*, 753 N.W.2d 711, 719-20 (Minn. 2008) (injury triggering accrual of negligence action is *any* "compensable damage," and is "*not limited to* … damage or cause of action specifically identified in the complaint"); *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 694 (D. Minn. 1995) ("damage Plaintiffs suffered" distinct from "proof of the fact of injury"); *In re Urethane Antitrust Litig.*, 251 F.R.D. 629, 637 (D. Kan. 2008) (same); *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 506 (1957) (injury caused by negligence different from damages sought for such injury); *see also* Cantor Rebuttal ¶13 ("this perspective confuses the issue of impact as economic injury with the specific measurement of damages components").   Thus, Target's argument that no injury exists until a bank incurs reissue cost or fraud loss is contrary to law – the moment a financial institution expends resources responding to an alert it is injured; the magnitude of damages is a separate question.

Target's remaining arguments regarding injury also fail.   *First*, while Target argues that common Card Brand data as to fraud "losses" on payment cards cannot establish injury (Target Br. 23-24), the same data was sound enough to support Target's recent $67 million settlement with Visa-card issuers, based on their losses from the Breach.   *See* Ex. K (Settlement Agreement dated August 14, 2015 by and between VISA U.S.A. Inc. and Target Corp.).   *Second,* Target's arguments concerning "chargeback rights," reimbursements and particular issuers' insurance (Target Br. 24-25) raise issues of damages and potential offsets – not injury-in-fact. *See Remijas*, 2015 WL 4394814, at

13

*8 (card industry practice of reimbursing fraud charges did not "defeat[] … injury-in-fact"); *Graff v. Robert M. Swendra Agency, Inc.*, 800 N.W.2d 112, 120 (Minn. 2011) (plaintiff's ability to recover insurance proceeds for harm suffered irrelevant to damages determination under "collateral source" rule). *Third*, Target's arguments concerning how many cards were reissued and at what cost raise quintessential damages questions. *See In re Potash*, 159 F.R.D. at 694 (quantum of loss distinct issue from fact of injury). *Fourth*, Target's argument-by-hindsight that banks were not injured by cancelling and reissuing alerted-on cards before fraudulent activity manifested ignores established law. *See Anderson*, 659 F.3d at 164-65 (noting "the reasonableness of replacement of cards … a commercially reasonable judgment" by banks notified of merchant card data breach); *Remijas*, 2015 WL 4394814, at *5 (rejecting argument that plaintiffs not injured by card data breach until "threatened harm" of fraudulent usage "materialize[s]"; alert responses "easily qualif[y] as [] concrete injury"). *Finally*, even if the Court were to consider injury and damages jointly, common evidence concerning Target's fault still would predominate. *See In re Nexium Antitrust Litig.*, 777 F.3d 9, 21 (1st Cir. 2015) ("Even … where the issue of injury-in-fact presents individual questions… it does not necessarily follow that they predominate").

### 3.    Negligence – Causation Issues Predominate

Target argues Plaintiffs must show that every single action undertaken by every bank was "done because of the [Breach]," not "other reasons." Target Br. 34. However, the causation element of a negligence claim requires that the defendant's conduct was a "substantial factor in the harm's occurrence," not the sole cause. *George v. Estate of*

*Baker*, 724 N.W.2d 1, 10 (Minn. 2006) (citing Restatement (Second) of Torts § 431 (1965)).  Also, the class definition includes only alerted-on accounts, providing a narrow boundary on the claimed damage.  Moreover, a defendant "ought…to have anticipated that the [conduct] was likely to result in injury to" the plaintiff.  *Ponticas v. K.M.S. Invs.*, 331 N.W.2d 907, 915 (Minn. 1983).

As in causation under the PCSA: (i) expert testimony establishes that class members were obligated to respond to the Breach; (ii) other courts have found mitigation responses to data breaches constitute injury; and (iii) institutions did respond to the Breach, incurring costs.

Ignoring these common issues, Target cites individual differences between Plaintiffs' responses to the Breach.  *See* Target Br. 6-11.  These purported differences, however, are immaterial to the causation inquiry, as they center on damages.  *See, e.g.*, Target Br. 34 (cards "would have been reissued anyway"); 36 (plaintiffs "reissue[d] cards selectively" or "reissue[d] all cards used at Target").  That responses may vary among class members does not change the fact that responsive actions were necessary as a result of the Breach and within the PCSA's protections.  Cantor Report ¶¶35-46; Meal Decl., Ex. 1 at 80:9-15; Librock Decl. ¶¶10-21; Cantor Decl. ¶¶14-17.

Target's remaining causation arguments challenging Plaintiffs' use of statistics (Target Br. 32) fail.  Reliability is implicated only if Dr. Cantor is unable to obtain requested data and then only to challenge weight, not admissibility.  *See* ECF No. 564 (Plaintiffs' Memorandum in Opposition to Motion to Exclude Expert Testimony at 17).  Also, Target's argument that "PIN-based debit card fraud…could not have been caused

by the [Breach] because the PINs were fully encrypted" (Target Br. 33) supports certification, since it presents an up-or-down common factual question.

*In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 393-94 (D. Mass. 2007), cited repeatedly by Target, is distinguishable.  First, *TJX* involved misrepresentation-based claims requiring a showing of "reasonable reliance" which is not required here.  *Id.* at 395-96.

Second, the *TJX* plaintiffs proposed to measure damages by applying card-brand reimbursement formulas – whereas Plaintiffs' expert has advanced an independent economic model.  *Id.* at 395-99.  Target mischaracterizes Dr. Cantor's position regarding the reliability of the baselines used by Visa and MasterCard in estimating fraud damages. Target omits Dr. Cantor's testimony that the networks' "methodology is very conservative [in favor of Target] for understanding what is baseline…." Ex. Q at 202:24-25-203:1.  "[I]t's again a very conservative way of removing this [baseline fraud]…." *Id.* at 205:14-17.  Dr. Cantor never testified that the baseline estimates used by the networks could never be used but has proposed alternative methods to estimate baseline fraud amounts.  Cantor Report ¶¶67-76.

Finally, *TJX* recognized that causation issues ***would not*** undermine predominance where – ***as here*** – "issuing banks engaged in fraud monitoring or reissued their cards" ***upon receipt of alerts***.  *Id.* at 397.

## C.    Plaintiffs Have Advanced A Sound Class-Wide Damages Methodology

Plaintiffs have presented "a likely method for determining class damages." *Khoday v. Symantec Corp.*, No. 11-cv-180, 2014 WL 1281600, at *32 (D. Minn. Mar. 13,

2014).   Dr. Cantor proffers a class-wide damages methodology based on common evidence, Cantor Report ¶¶50-96 and Cantor Rebuttal ¶¶41-80, the soundness of which Target does not contest.   *See* Cremieux Rep. ¶79.   While this methodology calculates class-wide damages for two categories of damages directly attributable to the class's injuries, and others call for individualized tabulation, "the existence of certain individualized issues, particularly with respect to damages," will not preclude predominance.   *Ebert*, 2015 WL 867994, at *15.   Courts can manage the damages phase of class actions even where *no* class-wide damages are calculable.   *See In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 139-41 (2d Cir. 2001) (enumerating management devices).

Contrary to Target's assertions (Target Br. 45-47), the use of "aggregate damages calculations is well established in federal court and implied by the very existence of the class action mechanism itself."   *In re Pharm. Indus. Average Wholesale Price Litig.,* 582 F.3d 156, 197 (1st Cir. 2009). "Where aggregate damages have not been permitted, it has been for reasons other than the mere use of averages," such as a distribution of funds based on *cy pres* principles.   *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-md-1175, 2014 WL 7882100, at *62-63 (E.D.N.Y. Oct. 15, 2014), (adopted by District Court on July 10, 2015 (2015 WL 5093503)).   *Wal-Mart Stores, Inc. v. Dukes* is no different. Plaintiffs there sought certification under Rule 23(b)(2), not Rule 23(b)(3), and the language Target cites pertains to the proofs for damages and defenses required in a so-called "*Teamsters*" hearing regarding "incidental" individual damages in a pattern or practice employment discrimination suit.   131 S. Ct. 2541, 2560-61 (2011).   *Wal-Mart*

17

did not announce a per-se bar on the use of averages in damages analysis.  *See In re Air Cargo, supra.*   Moreover, Target's suggestion that the Court should stay its decision pending the Supreme Court's decision in *Bouaphakeo v. Tyson Foods*, 765 F.3d 791 (8th Cir. 2014) *cert. granted*, 135 S. Ct. 2806 (2015), should be rejected.  *See BAE Sys. Land & Armaments L.P. v. IBIS TEK, LLC*, 2015 WL 4964654, at *1, 3 (D. Minn. Aug. 19, 2015) (denying stay request pending substantively-related appeal).

Contrary to Target's speculation (Target Reply ISO *Daubert* Mot. 12-13), Dr. Cantor's final aggregate damages calculation will exclude opt-outs' damages.  Cantor Rebuttal ¶50.   Target thus lacks standing to contest allocation issues.  *See In re Urethane Antitrust Litig.*, 768 F.3d 1245 (10th Cir. 2014).

Nor do Dr. Cremieux's arguments undercut Dr. Cantor's analysis of economic impact or opinion regarding a class-wide damages methodology.  Cantor Rebuttal ¶6. Critically, ***Dr. Cremieux acknowledges that Dr. Cantor's methodology is "scientifically reliable.***" Cremieux Rep. ¶79.  Target's arguments based on the opinion of Dr. Cremieux fail.  Target's speculation (Target Br. 2-3, 44-45) that Dr. Cantor may not obtain certain evidence or may need to extrapolate from certain data is (i) premature, *see* Pls.' *Daubert* Opp. at 20-21; and (ii) overblown, as Dr. Cantor has identified relevant data sources, Cantor Rebuttal ¶57-80, and Dr. Cantor's methodology can accommodate imperfect information regardless, including through scientifically sound extrapolation, as needed, *see* Cantor Rep. ¶¶65-76, Cantor Decl. ¶¶26-27.  For example, Dr. Cantor demonstrates that appropriate data, from which to adjust damages based on merchant chargebacks, exist at the network level, which Dr. Cremieux criticizes based on a typographical error

18

in a MasterCard document so glaringly obvious that it should have put him on notice to conduct basic research to correct it.   Cantor Rebuttal ¶66.   Similarly, Dr. Cantor rebuts Dr. Cremieux's assertion that a significant number of fraudulent transactions may have resulted from other breaches, Cremieux Rep. ¶¶26-31, by demonstrating that the data he relies upon does not support his thesis, and instead shows a large incidence of fraudulent activity coincident with the Breach.   Cantor Rebuttal at ¶¶30-36).

This evidence exceeds Plaintiffs' burden at this stage, given that a class-wide damages methodology is ***not*** a predominance requirement under *Comcast*.   The Second Circuit made this clear in *Roach*, explaining that *Comcast* does not "preclud[e] class certification where damages are not capable of measurement on a classwide basis."   778 F.3d at 408.

Finally, Target's suggestion of a "gross mismatch" between Plaintiffs' theory of liability and damages (Target Br. 45) is wrong.   As described above, the Breach injured financial institutions by forcing them to respond; two appropriate and reasonable responses, for which Plaintiffs seek recovery are reissuance costs and fraud losses.   *See* Librock Decl. ¶¶10-21; Minn. Stat. § 325E.64.   Plaintiffs' theory of damages is consistent with their theory of liability under *Comcast.*

### D.   Target's Purported Affirmative Defenses Do Not Preclude Certification

Target wrongly states that the potential applicability of affirmative defenses defeats predominance.   Target Br. 47-52.   Courts are "reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against

individual members." *Braun v. Wal-Mart Stores, Inc.*, No. 01-cv-9790, 2003 WL 22990114, at *9 (D. Minn. 2003); *see also Cromeans v. Morgan Keegan & Co., Inc.*, 303 F.R.D. 543, 561 (W.D. Mo. 2014) (same). This rule applies here, where the class's claims arise from a single course of conduct. *See In re Checking Account Overdraft Litig.*, 286 F.R.D. 645, 656 (S.D. Fla. 2012) ("[u]nique affirmative defenses rarely predominate where a common course of conduct is established").

Target's proffered affirmative defenses – comparative fault, failure to mitigate, and assumption of risk – go not to questions of liability, but damages, which will not preclude predominance. *See Springrose v. Willmore*, 192 N.W.2d 826, 827 (Minn. 1971) (assumption of risk affirmative defense ties to damages "apportioned under [] comparative negligence statute").  Class members cannot plausibly be considered negligent for causing the Breach or receiving alerts.  Target's only comparative fault defense, therefore, relates to the mitigation-of-damages prong of the statute, Minn. Stat. § 604.01, subd. 1a, as Target implicitly concedes.  Target Br. 49.  But affirmative defenses that require individual damage adjustments will not predominate.  *See Cromeans*, 303 F.R.D. at 561 ("The differences in calculation of damages, should the defenses apply, is a minor matter in comparison with the fundamental similarity of the claims.").

Regardless, Plaintiffs have advanced evidence showing the reasonableness of the class's responses, Librock Decl. ¶¶10-21; Librock Supp. ¶¶3-4, which are consistent with the PCSA and data breach case law and would defeat Target's proposed defenses. *See Hannaford*, 293 F.R.D. at 27; *see also Rini v. Oaklawn Jockey Club*, 861 F.2d 502, 505 (8th Cir. 1988) (plaintiff's conduct must be "out of all proportion to the advantage which

[the plaintiff] is seeking to obtain" for affirmative defenses to apply). As such, Target's contention that Visa best practices determine whether bank responses to the Breach were reasonable is incorrect.

Likewise, Target's argument that issuing banks assumed the risk of card fraud because "fraud is a known cost of issuing debit cards" fails as a matter of law. Target Br. 52. In order to establish this defense, Target must show that Plaintiffs acted unreasonably in *issuing* payment cards – an absurd proposition, inconsistent with the PCSA, yet common to all class members. *See* Minn. Stat. § 325E.64, subd. 3(4) (allowing recovery for fraud reimbursements); *Springrose*, 192 N.W.2d at 827.

### E.    Minnesota Law Applies Class-Wide

Target's choice-of-law analysis hinges on its argument that class members' claims have only a "slight nexus to Minnesota." Target Br. 65. Target previously argued the opposite. *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 2522, ECF No. 90 at 8-9, 11-12 (J.P.M.L. Jan. 30, 2014) (arguing Minnesota's unique connection to case and that "***no other jurisdiction has any***" connections). Minnesota's choice-of-law rules favor applying Minnesota law here.

First, Target fails to address Plaintiffs' argument that the PCSA contains a choice-of-law provision, directing application of Minnesota law pursuant to Minnesota's legislative jurisdiction powers. Mem. 28-30. Defendant consequently concedes that the PCSA applies class-wide.

Next, contrary to Target's argument, the fact that "meaningful differences among the relevant laws of various states" exist (Target Br. 60) does not defeat class

certification; the application of one state's law "ultimately may be proper." *See In re St. Jude Med., Inc., Silzone Heart Valve Prods. Liab. Litig.*, 425 F.3d 1116, 1120 (8th Cir. 2005); *see also Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 140-41 (2d Cir. 2015) ("if the forum state's choice-of-law rules require the application of only one state's laws to the entire class, then the representation of multiple states within the class does not pose a barrier to class certification."); *Mooney*, 244 F.R.D at 537 (Minnesota law applied to multi-state class claims).

Furthermore, Target incorrectly insists that the Court may determine which law applies "[o]nly after identifying the relevant substantive conflicts." Target Br. 65.  But it is "***unnecessary*** to determine the precise number of outcome-determinative conflicts" when the "choice-of-law analysis" is clearly called-for.  *Mooney*, 244 F.R.D. at 534. Target also insists the Court should identify which would be the better rule of law. Target Br. 60.  But the better-rule factor is obsolete.  *See Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co.*, 604 N.W.2d 91, 96-97 (Minn. 2000) (not addressing "better-rule" factor because Minnesota Supreme Court has not credited it in 20 years). Target also argues that *Myers v. Gov't Emps. Ins. Co.*, 225 N.W.2d 238, 241 (Minn. 1974), requires that every conflict must be identified.  But *Myers* simply states that, "[b]efore applying the *Milkovich* standards, it must first be determined that a conflict *exists*."  *Id.  Myers* does not pertain where, as here, the requisite conflicts are assumed.

Target also argues, from whole cloth, that the various choice-of-law *rules* of class members' jurisdictions should apply. Critically, what constitutes a "forum state" in an MDL is dictated by *where the applicable complaint was originally filed*, not where absent

22

class members happen to live. *See, e.g.*, *Mooney*, 244 F.R.D. at 535 (applying only Minnesota's choice-of-law rules to Minnesota-filed class action complaint alleging multi-state class); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) (applying only California's choice-of-law rules to California-filed class action complaint alleging nationwide class). Because all proposed representative Plaintiffs filed their complaints in Minnesota, the "forum state" is Minnesota.

Differences in law mean nothing by themselves. The lodestar of Minnesota's *Milkovich* test is the *policy interest* each state has in having its law apply. Target ignores Minnesota's expressly-stated (through the PCSA) policy interest in policing data security practices of Minnesota retailers. *See Shank v. Fid. Mut. Life Ins. Co.*, 21 N.W.2d. 235, 238 (Minn. 1945) (legislature declares public policy through statutes). Minnesota does not use the "most significant relationship" test, and the place-of-injury analysis Target suggests (Target Br. 65) has been abolished. *Balts v. Balts*, 142 N.W.2d 66, 70 (1966). Furthermore, Minnesota courts reject consideration of "false" conflicts, in which the foreign state's purported interest in its law applying is unimportant in the context of the particular litigation. *Myers*, 225 N.W.2d at 242. Target cites no governmental interest outside Minnesota that would be impacted by applying Minnesota law. It also ignores the *Fluck* case (Mem. at 36), in which the court applied Minnesota *tort law* where Minnesota's interest in deterring its manufacturers from selling harmful products outweighed Colorado's interest in reposing its locally injured resident's claim. Those failures are dispositive.

As for the other *Milkovich* factors, Target agrees that the ***predictability*** factor does not bear significant weight.  Target contends *Nesladek v. Ford Motor Co.* supports the proposition that ***interstate order*** favors application of class members' home-state law in tort cases, but *Nesladek* so held because of Minnesota's "tenuous" link to the case, 46 F.3d 734, 739 (8th Cir. 1995), unlike here, where Minnesota's contacts are myriad. Target ignores the ***simplification of the judicial task*** factor.  And without authority, Target baldly claims that the ***better rule of law*** would be to "allow each state to apply its own laws," Target Br. 68, despite the fact that this factor is a dead letter.

Finally, differences in laws defining the scope of "economic loss" remedies in tort claims and "contributory or comparative negligence" do not alter the analysis.  Minnesota follows "[t]he almost universal rule that matters of procedure and remedies [are] governed by the law of the forum state," *Danielson v. National Supply Co.*, 670 N.W.2d 1, 5-6 (Minn. Ct. App. 2003), and do not implicate the *Milkovich* analysis. *See also In re Levaquin Prods. Liab. Litig.*, No. 08-md-1943, 2010 WL 7852346, at *7-8 (D. Minn. Nov. 9, 2010) (punitive damages is remedial matter governed by forum law).

Forum law controls whether an area of law is substantive, procedural or remedial, *Zaretsky v. Molecular Biosystems, Inc.*, 464 N.W.2d 546, 548 (Minn. Ct. App. 1990), And Minnesota courts have consistently described the economic loss rule as limiting the *type* of damages available, as opposed to the accrual of a tort claim.  *See Hapka v. Paquin Farms*, 458 N.W.2d 683, 688 (Minn. 1990) (economic loss rule affects "limitation of remedies"); *see also Saratoga Fishing Co. v. J.M. Martinac & Co.*, 520 U.S. 875, 876 (1997) (economic loss rule "concern[s] *limits* upon the damages that a tort plaintiff…can

recover."). Similarly, as Target's "comparative fault" defenses concern the mitigation of damages – as demonstrated *supra* Section D – Minnesota remedial law applies.

### F.     Plaintiffs Are Typical And Adequate

Target highlights purported differences between Plaintiffs and the class that are irrelevant to the typicality inquiry.  Target Br. 69.  The Breach exposed the accounts of Plaintiffs and ***all*** class members to real risk, requiring them to respond and incur economic costs.  *See*, *e.g.*, Librock Decl. ¶21; Cantor Report ¶46.  This is common injury, regardless of bank size.  *See Potash*, 159 F.R.D. at 691 ("Rule 23(a)(3) does not require the representative plaintiffs to have the same claim size or financial interest as the class"); *Khoday*, 2014 WL 1281600, at *16 (typicality satisfied where plaintiff's claim arises from same event as "the class claims, and gives rise to the same legal or remedial theory," notwithstanding "factual variations"); *TJX*, 246 F.R.D. at 393 (holding typicality satisfied and rejecting as "immaterial" differing bank sizes, card brands or types, and breach responses).

Target's argument that Plaintiffs are "uninformed about key elements of their claims" and thus are inadequate class representatives (Target Br. 70) misrepresents Plaintiffs' testimony and raises irrelevancies.  Indeed, Target does not cite to any evidence suggesting that Plaintiffs are unaware of the facts of ***this case*** or have failed to meet their obligations as representative plaintiffs.  *See In re Select Comfort Corp. Sec. Litig.*, 202 F.R.D. 598, 609 (D. Minn. 2001) (Class representatives are not required to have detailed "firsthand knowledge of facts or law … The class representatives have demonstrated a willingness to vigorously prosecute this action through qualified

counsel."). For instance, Target points to Plaintiffs' purported lack of knowledge as to "basic industry concepts" like "interchange fees" that are ***immaterial*** to the class-wide damages sought. Target Br. 70. Similarly:

- Target falsely claims that Plaintiffs are "unfamiliar with … the Complaint's allegations," Target Br. 70 & n.211, but the record demonstrates just the opposite. *See* Meal Decl., Ex. 46 at 368:25-369:24 (CSE Federal Credit Union "CSE") reviewed the operative complaint); Meal Decl. Ex. 26 at 253:1-21 (Mutual said that one purpose of suit was to shift cost burden of data breaches from banks to merchants).

- Target's suggestion that Plaintiffs "did not know whether other financial institutions are similarly situated," Target Br. 70 & n.212, is disingenuous at best. *See* Meal Decl., Ex. 10 at 101:13-14 (Umpqua Bank testified only that it did not have "the specifics of how other banks make cost-benefit analysis decisions," but that, confronting a data breach "the goals of [all] institutions are exactly the same"); Meal Decl. Ex. 37 at 114:14-20 (First Federal Savings of Lorain "Lorain") testified simply that it did not know if other banks had a corporate policy identical to Lorain's) *see id*. at 34:2-14 (Lorain testified that "all banks have…common goals" when faced with data breaches); Ex. L, CSE Tr. at 373:13-376:20 ("Financial institutions that issue plastic [cards] follow the basic same rules… the same regulations as CSE").

- Target's statement that Plaintiffs "did not see themselves as representing other financial institutions," misrepresents the testimony. *See* Target Br. 70 & n.213.[9]   The Plaintiffs are well aware of their roles as representative plaintiffs. *See, e.g.,* Ex. L, CSE Tr. at 373:13-376:20

---

[9] Umpqua Bank's 30(b)(6) witness actually stated:

   Q:   (BY MR. BATCHELDER) Well, let's talk about Umpqua Bank.

   A:   Sure.

   Q:   By the way, are you here representing other financial institutions?

   A:   No.

Meal Decl. Ex. 10, 64:6-11. This ambiguous colloquy does not implicate Umpqua's role as proposed class representative. Rather, the witness, in his capacity as corporate designee for Umpqua, was clearly representing only Umpqua at the deposition.

("we represent all financial institutions"); Ex. M., Village Bank Tr. at 174:6-175:4 ("I'm representing banks...I'm quite comfortable representing other banks and other financial institutions"); Ex. N., Lorain Tr. at 33:10-34:35:22 ("We're seeking to represent customers … of any bank").

Plaintiffs have established their adequacy to serve as class representatives.

### G.    Superiority Is Met

Target's challenge to superiority merely rehashes its opposition and Plaintiffs need not reiterate their rejoinders.  However, Target's statement that a class action would not be superior because "separately adjudicating all Plaintiffs' claims and Target's defenses would require enormous resources," Target Br. 71, proves, in a single sentence, why a class action is necessary.  *See Potash*, 159 F.R.D. at 699 (superiority met where pursuing separate proceedings "would not be economical").

### H.    Issue Certification Is Appropriate

As the predominance and superiority requirements are satisfied, certification under Rule 23(b)(3) is appropriate.  And, while a sound class-wide damages methodology for two types of damages has been advanced, should the Court deem it proper, it may certify a liability-only class, and leave all damages calculations to subsequent proceedings.  *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig*., 722 F.3d 838 (6th Cir. 2013) (certifying liability class under Rule 23(b)(3) and approving subsequent damages proceedings); *Pella*, 606 F.3d at 394 (district court has discretion to certify liability class where damages or causation require individualized assessments).

Target's argument against Rule 23(c)(4) issue certification is also unavailing. First, Target cites the wrong legal standard.  Most Circuits that have addressed issue

27

certification have held that courts may proceed with class treatment of important common issues under Rule 23(c)(4), even if common questions do not predominate for the entire cause of action. *See In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 227 (2d Cir. 2006); *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Target cites the minority Fifth Circuit view. *See e.g. In re Nassau Cnty.*, 461 F.3d at 226 (Fifth Circuit approach contrary to "plain language and structure of Rule 23") (citing cases); *In re Baycol Prods. Litig.*, 218 F.R.D. 197 (D. Minn. 2003) (approving majority position that courts may certify common issues). Issues of fault and causation for Plaintiffs' PCSA and negligence claims depend on common evidence. Thus, at a minimum, these issues can be certified under 23(c)(4).

Target's retreat to the Seventh Amendment also fails. Should this Court certify issues of liability and causation, the only issue remaining would be damages, which implicate discrete, separable questions. *See Castano v. Am. Tobacco Co.*, 84 F.3d 734, 750 (5th Cir. 1996) ("[The] Constitution allows bifurcation of issues that are so separable that the second jury will not be called upon to reconsider findings of fact by the first"). Accordingly, liability or issue certification is entirely appropriate.

## IV.  CONCLUSION

For the reasons stated in Plaintiffs' opening papers and herein, Plaintiffs respectfully request that the Court grant the motion in full.

Dated: September 3, 2015

**CHESTNUT CAMBRONNE PA**

By: /s Karl L Cambronne
Karl L. Cambronne (MN 14321)
Jeffrey D. Bores (MN 227699)
Bryan L. Bleichner (MN 0326689)
17 Washington Avenue North, Suite 300
Minneapolis, MN 55401
Telephone: (612) 339-7300
kcambronne@chestnutcambronne.com
jbores@chestnutcambronne.com
bbleichner@chestnutcambronne.com

*Coordinated Lead Counsel for Plaintiffs*


**REINHARDT WENDORF
    & BLANCHFIELD**
Garrett Blanchfield
E-1250 First National Bank Building
332 Minnesota Street
St. Paul, MN 55101
Telephone: (651) 287-2100
g.blanchfield@rwblawfirm.com

*Coordinating Liaison Counsel*

**LEVIN, FISHBEIN, SEDRAN
    & BERMAN**
Howard J. Sedran
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: (215) 592-1500
hsedran@lfsblaw.com

**ZIMMERMAN REED, LLP**

By: /s Charles S. Zimmerman
Charles S. Zimmerman (MN 120054)
J. Gordon Rudd, Jr. (MN 222082)
Brian C. Gudmundson (MN 336695)
1100 IDS Center, 80 South 8th St.
Minneapolis, MN 55402
Telephone: (612) 341-0400
charles.zimmerman@zimmreed.com
gordon.rudd@zimmreed.com
brian.gudmundson@zimmreed.com

*Lead Counsel for Financial Institution
Plaintiffs*


**LOCKRIDGE GRINDAL NAUEN
P.L.L.P.**
Karen Hanson Riebel
100 Washington Ave. S., Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
khriebel@locklaw.com



*Bank Liaison Counsel*

**BARRETT LAW GROUP, P.A.**
Don Barrett
404 Court Square North
PO Box 927
Lexington, MS 39092
Telephone: (662) 834-9168
dbarrett@barrettlawgroup.com

**KESSLER TOPAZ MELTZER
    & CHECK LLP**
Naumon A. Amjed
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
namjed@ktmc.com

**CARLSON LYNCH LTD**
Gary F. Lynch
115 Federal Street, Suite 210
Pittsburgh, PA 15212
Telephone: (412) 322-9243
glynch@carlsonlynch.com

**SCOTT + SCOTT LLP**
Joseph P. Guglielmo
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174
Telephone: (212) 223-6444
jguglielmo@scott-scott.com

**BEASLEY, ALLEN, CROW,
METHVIN, PORTIS MILES, P.C.**
W. Daniel Miles, III.
272 Commerce Street
PO Box 4160
Montgomery, AL 36103-4160
Telephone: (334) 269-2343
dee.miles@beasleyallen.com

**HAUSFELD LLP**
James J. Pizzirusso
1700 K Street NW, Suite 650
Washington D.C. 20006
Telephone: (202) 540-7200
jpizzirusso@hausfeldllp.com

*Plaintiffs' Leadership Committee*