UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re: Target Corporation Customer
Data Security Breach Litigation,

MDL No. 14-2522 (PAM/JJK)

This document relates to:
**Consumer Cases.**

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiffs' Motion for Final Approval of Class-Action Settlement, Plaintiffs' Motion for Payment of Class Representative Service Awards and Attorney's Fees and Expenses, and Objector Leif Olson's Motion to Exclude Testimony. For the reasons that follow, Plaintiffs' Motions are granted and Objector Olson's Motion is denied.

**BACKGROUND**

On March 19, 2015, the Court preliminarily approved the settlement of the consumer actions in this Multi-District Litigation arising out of a 2013 breach of data security at Defendant Target Corporation. In that preliminary approval Order, the Court certified the following settlement class:

> All persons in the United States whose credit or debit card information and/or whose personal information was compromised as a result of the data breach that was first disclosed by Target on December 19, 2013. Excluded from the class are the Court, the officers and directors of Target, and persons who timely and validly request exclusion from the Settlement Class.

(Preliminary Approval Order (Docket No. 364) at 2-3.) The Order also directed notice to the class, appointed settlement class representatives and settlement class counsel. (Id. at 3-6.)

The settlement provides that Target will pay $10 million to settle the claims of class members and to pay service awards to class representatives. Any residual settlement funds will not revert to Target but will be distributed as directed by the Court.

Payments to class members will vary depending on each individual's ability to document their losses. Individuals with documentary proof of losses will be reimbursed both for out-of-pocket loss and time loss (up to two hours at $10 per hour), up to a maximum of $10,000. Plaintiffs estimate that the average payout for so-called "high value" documented claims—where the claimed damages are more than $5,000 and there is documentation to support the claim—will be almost $2,200 per claimant, and the average payout for lower-value documented claims will be just under $300 per claimant.

Individuals who have no documented proof of loss will receive an equal share of the settlement fund after service awards and documented-loss payments are made. Plaintiffs currently estimate that the payment for undocumented-loss claimants will be $40 per claimant. The settlement also requires Target to improve its data security practices in significant ways. Finally, Target agreed to pay all class notice and administrative expenses of the settlement. Those payments are not included in the $10 million settlement fund. Nor is any award of attorney's fees included in the $10 million settlement fund. Target waived its right to appeal an award of fees unless that award is greater than $6.75 million

**DISCUSSION**

Approval of a class action settlement under Federal Rule of Civil Procedure 23(e) requires the Court to analyze whether a settlement is fair, reasonable, and adequate. That analysis includes the following four factors: "(1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement." In re Wireless Tel. Fed. Cost Recovery Fees Litig., 396 F.3d 922, 932 (8th Cir. 2005). "The most important consideration in deciding whether a settlement is fair, reasonable, and adequate is [the first factor.]" Id. at 933 (citation omitted).

    **1.**    **Merits of Plaintiffs' Case**

Although the Court denied in part Target's motion to dismiss the consumer cases, the hurdles to success in the consumer track of this litigation are multitude. In the motion to dismiss, Target argued that the Plaintiffs could not establish standing because they could not establish that they suffered any injury in fact. The Order found that Plaintiffs had sufficiently alleged injury for purposes of 12(b)(6), but the injury question looms over the litigation as it progresses. Some consumers undoubtedly suffered some injuries. But many more consumers who used payment cards at Target during the period of the data breach suffered no concrete injury. Moreover, proving causation for any established losses will be difficult, given the other large-scale retailer data breaches that occurred at approximately the same time as the Target breach. Finally, the vast majority of the class suffered very small losses, if any, because out-of-pocket losses for those consumers whose identities were stolen were

limited by the card company's reimbursement policies and the identity-theft protection Target offered to all consumers in the wake of the breach. These issues are just a few of the many legal and factual issues that make ultimate success in the consumer track tenuous.

This factor weighs in favor of the settlement.

### 2. Target's Financial Condition

Target's financial condition is sound, and Target has ample ability to pay the amounts involved in the settlement. This factor is neutral in the settlement-approval analysis.

### 3. Complexity and Expense of Further Litigation

Further litigation in this case would undoubtedly be expensive and complex. Plaintiffs' consumer-protection claims arise under the laws of nearly every state and the District of Columbia. It is plausible that further litigation would result in separate state-law classes, and it is axiomatic that further litigation would result in voluminous discovery. The legal issues involved are cutting-edge and unsettled, so that many resources would necessarily be spent litigating substantive law as well as other issues. The early settlement of this case benefits the Plaintiff class immensely, and this factor weighs heavily in favor of the settlement.

### 4. Amount of Opposition

Class notice reached more than 80 million people, with direct notice sent to 61 million consumers. The settlement administrator reports that 386 people timely requested exclusion

from the class, and 11 individuals[1] objected to the settlement. The exclusion requests are .00039% of the class, and the objections constitute .0000103% of the class.[2] This infinitesimally small amount of opposition weighs in favor of approving the settlement.

Most of the objections contend that the settlement amount is too low or that the attorney's fees requested are too high, or both. For example, two objectors request additional settlement monies to pay for identity-theft monitoring for the rest of their expected lifespan. Other objectors complained that Target did not notify them quickly enough that their personal information was involved in the data breach. But complaints regarding the amount of the settlement do not provide a justification for rejecting that settlement. In the Court's view, the settlement represents a significant victory for a class whose legal claims are as tenuous as those here.

Nearly every objector takes issue with the amount of attorney's fees requested. Some objectors contend that because the attorneys were not victimized in the data breach, they should not recover their fees. This fundamentally misapprehends the role of class counsel in such large-scale litigation as this, and provides no reason for rejecting the settlement. Other objectors contend that the requested amount of fees constitutes a too-high percentage

---

[1] One of the objectors, Sam Miorelli, is not a member of the class, having used a payment card at Target just after the class period.

[2] Even if, as objector Miorelli contends, the Court should evaluate exclusions and opt-outs by comparing those numbers to the number of individuals who submitted claims, the exclusions and opt-outs are only two-tenths of one percent of that group, a number that does not call into question the merits of the settlement.

of the class recovery to be fair and reasonable. According to these objectors, the requested fee is 40% of the settlement. As discussed below, however, the total benefit to the class from the settlement is more than the $10 million cash payment to the class. The total benefit includes Target's payment of all notice and administration expenses, payments that often are deducted from a settlement payment to the detriment of the class. When such expenses are included in the total benefit calculus, the amount of fees requested is a reasonable 29%.

One objector, Leif Olson, appearing through the Center for Class Action Fairness, raises a multitude of objections to the settlement in addition to the attorney's-fees arguments discussed above.[3] Olson first seeks an injunction against the settling parties paying objectors in exchange for the settlement of their objections. But neither the Center nor Olson have any evidence that Plaintiffs or Target have offered any payment in exchange for withdrawing objections to the settlement, raising the Court's suspicions that the arguments in the Center's 36-page brief are boilerplate arguments raised against every class-action or multidistrict litigation settlement. Olson also argues that a settlement class cannot be certified because class members who have not experienced a concrete injury have an irreconcilable conflict will class members who did suffer a tangible injury. But the Court certified a settlement class in the preliminary approval order, and will not revisit that determination here. Indeed, many of Olson's arguments regarding class certification are arguments in favor of the

---

[3] Olson captions his objection as both an objection and as a motion for attorney's fees. Nowhere in the pleading, however, does Olson discuss his purported request for fees. The Court will therefore deny this purported motion without further discussion.

settlement: the fact that the laws of many different states may apply to class members' claims would make class certification unlikely were this case to proceed, but that legal complexity and corresponding weakness in Plaintiffs' case renders a settlement more appropriate.

The Court has fully evaluated all of the objections to the settlement in light of the actual terms and benefits of the settlement, and finds that the objectors' objections do not merit rejection of the settlement.

**5.     Notice**

Rule 23(e)(1) requires that any notice of proposed settlement be directed in a reasonable manner to all class members who would be bound. Additionally, "the notice must be reasonably [calculated] to convey the required information and it must afford a reasonable time for those interested to make their appearance." Grunin v. Int'l House of Pancakes, 513 F.2d 114, 120 (8th Cir. 1975) (internal quotation marks and citation omitted).

The parties accomplished notice here through direct notice, paid and earned media, and an informational website. The settlement administrator estimates that the notice program reached 83% of potential class members. The notice here comports with Rule 23(e).

**C.     Class Representative Service Awards**

Plaintiffs request that the Court award $1,000 to three class representatives who were deposed as part of the discovery process, and $500 to the remaining class representatives. These class representative awards are reasonable and Plaintiffs' request is granted.

**D.     Attorney's Fees**

Finally, as discussed briefly above, Plaintiffs request an award of $6.75 million for attorney's fees, costs, and expenses. The settlement agreement provides that Target will not appeal an attorney's fee award of $6.75 million or less, although Target reserved the right to challenge any request for attorney's fees. The fee award is not deducted from the settlement fund, but Target will pay it separately. Any amount awarded less than $6.75 million will revert to Target.

Despite the objectors protestations to the contrary, the fee request here is not unreasonable under either the lodestar or percentage-of-the-fund methodology. The request amounts to a negative lodestar multiplier of .74, and as noted is 29% of the total monetary payout Target is required to make as part of the settlement. This case has been hard-fought and heavily litigated since its inception. The fee request is not excessive; rather it is reasonable in light of the complexities and vagaries of this case.

**E.     <u>Daubert</u> Motion**

Objector Olson brought a motion challenging the affidavit of retired United States Magistrate Judge Arthur J. Boylan, contending that the opinions expressed therein violate the principles of <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 597 (1993). <u>Daubert</u> and Rule 702 of the Federal Rules of Evidence provide that expert testimony is admissible only to the extent that it "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). According to Olson, Magistrate Judge Boylan's affidavit usurps the role of the Court by averring that the settlement is fair, reasonable, and

adequate.

Even if the affidavit contained impermissible legal conclusions, the Court is capable of separating those conclusions from Magistrate Judge Boylan's helpful and insightful factual descriptions of the settlement process in this case. Moreover, <u>Daubert</u> and Rule 702 are only tangentially relevant in a proceeding such as this, when the Court is asked to determine whether a settlement is in a class's best interests. The Motion to Exclude was unnecessary and it is denied.

**CONCLUSION**

The Court has examined the settlement and concludes that it is fair, reasonable, and adequate. Accordingly, **IT IS HEREBY ORDERED that**:

1. Objector Leif Olson's Motion to Exclude (Docket No. 623) is **DENIED**; and

2. Consumer Plaintiffs' Motion for Payment of Service Awards and for an Award of Attorney's Fees and Reimbursement of Expenses (Docket No. 481) is **GRANTED**; and

3. Consumer Plaintiffs' Motion for Approval of Settlement (Docket No. 610) is **GRANTED**.

Dated: <u>November 17, 2015</u>

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge