Exhibit A

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re:  Target Corporation Customer Data Security Breach Litigation, <br><br> This document relates to the Financial Institution Cases. | MDL No. 14-2522 (PAM/JJK) |

## **SETTLEMENT AGREEMENT AND RELEASE**

## **EXHIBITS**

DISTRIBUTION PLAN.....................................................................................EXHIBIT 1

FINAL JUDGMENT ......................................................................................EXHIBIT 2

NOTICES ..................................................................................EXHIBITS 3–4

REQUEST FOR EXCLUSION.........................................................................EXHIBIT 5

PRELIMINARY APPROVAL ORDER ...........................................................EXHIBIT 6

SETTLEMENT CLASS REPRESENTATIVES LIST.....................................EXHIBIT 7

NOTICE REQUIRED UNDER 28 U.S.C. § 1715...........................................EXHIBIT 8

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release is made as of December 1, 2015, by and among the following parties, as hereinafter defined: (a) Settlement Class Representatives, on behalf of themselves and the Class Members, by and through Settlement Class Counsel; and (b) Target Corporation ("Target"), by and through its undersigned counsel ("Target's Counsel").  Settlement Class Representatives and Target are the "Parties" or a "Party."

## RECITALS

WHEREAS, on December 19, 2013, Target announced that third-party intruders had breached its computer systems and stolen credit and debit card information;

WHEREAS, the Settlement Class Representatives have alleged common law claims and a violation of the Minnesota Plastic Card Security Act, Minn. Stat. § 325E.64, based on Target's allegedly inadequate data security, Target's alleged misrepresentations and omissions regarding its data security, and Target's alleged retention of payment card data;

WHEREAS, on April 2, 2014, the Judicial Panel on Multidistrict Litigation ("MDL Panel") granted a motion for consolidation for coordinated pretrial proceedings and subsequently transferred the cases identified in the motion, as well as all tag-along cases, to the United States District Court for the District of Minnesota;

1

WHEREAS, all of the Actions have been consolidated in accordance with the MDL Panel's transfer orders and currently are a part of the MDL proceedings pending in the Court;

WHEREAS, the Settlement Class Representatives filed the Financial Institutions Complaint, Target moved to dismiss the Financial Institutions Complaint, and, by Order dated December 2, 2014, the Court held that the Plaintiff Financial Institutions stated a claim for which relief could be granted, sustaining their legal theories of negligence, negligence per se, and violation of Minnesota's Plastic Card Security Act, and granted the motion with respect to the Plaintiff Financial Institutions' negligent-misrepresentation-by-omission claim;

WHEREAS, the parties exchanged an extensive amount of discovery in the case; counsel for Plaintiffs served over 100 subpoenas or notices of depositions;  counsel for Plaintiffs took 36 depositions of Target employees, former employees, and third parties; Target took 13 depositions of putative class representatives, absent putative class members, and third parties; counsel for Plaintiffs reviewed over 1 million electronic files collected from the Settlement Class Representatives, and produced over 47,000 documents to counsel for Target; counsel for Plaintiffs reviewed over 400,000 documents produced by Target;

WHEREAS, Counsel for Plaintiffs retained expert witnesses they believe would establish common proof of Target's liability, Class Members' injury, and Class Members' damages at trial;

2

WHEREAS, the Settlement Class Representatives filed a motion for certification of a Rule 23(b)(3) class and appointment of class representatives and class counsel, which Target opposed, and the Court granted in the Class Certification Order;

WHEREAS, Target filed a petition in the United States Court of Appeals for the Eighth Circuit under Rule 23(f) for permission to appeal the Class Certification Order, which the Settlement Class Representatives opposed;

WHEREAS, certain members of the class that the Court certified in the Class Certification Order have already released all claims against Target relating to the Data Breach;

WHEREAS, Settlement Class Counsel had regular communications with many individual putative class members, both large and small institutions, throughout the discovery period, advising them of the progress of the litigation;

WHEREAS, MasterCard asserted the right under its operating regulations and pursuant to the MasterCard ADC program to assess and collect from Target, through its acquiring banks, certain losses that MasterCard alleged its issuers had incurred as a result of the Data Breach;

WHEREAS, Target disputed MasterCard's assessment and, on April 15, 2015, entered into a proposed settlement agreement with MasterCard which sought to partially resolve the disputed assessment; the proposed settlement included a participation condition, stating that the settlement would only become effective if it covers and releases claims of at least 90% of the MasterCard-branded payment cards that

MasterCard identified as having been at risk as a result of the Data Breach; the condition failed due to lack of participation and no settlement was consummated;

WHEREAS, Target has asserted that it intends to continue to challenge MasterCard's assessment, which is now limited to assessed amounts that have not been resolved through settlements between Target, MasterCard, and individual MasterCard issuers;

WHEREAS, Visa asserted the right under its operating regulations and pursuant to the Visa GCAR program to assess and collect from Target, through its acquiring banks, certain losses that Visa alleged certain of its issuers had incurred as a result of the Data Breach;

WHEREAS, Target disputed Visa's assessment and ultimately entered into settlement agreements, finalized between August 11, 2015 and August 14, 2015, with Visa and certain issuing banks to fully resolve the disputed assessment, through which settlements (i) some issuing banks, in their capacities as Visa issuers, released their claims against Target relating to the Data Breach, and some did not, (ii) certain Class Members received reimbursement for certain losses that Visa alleged these Class Members incurred as a result of the Data Breach, and (iii) Target released its right to challenge such payments to Class Members;

WHEREAS, the reimbursements offered by Visa via its settlement with Target differed from reimbursements defined by Visa's GCAR program, in that (i) in addition to GCAR benefits, which covered certain accounts that were allegedly impacted by the Data Breach and that were used in transactions that were authorized through a Visa network,

Visa and Target separately provided an Alternative Recovery Offer ("ARO") providing for a $2.50-per-card payment with respect to certain other debit accounts allegedly impacted by the Data Breach by reason of transactions on those accounts that were not eligible for GCAR recovery because they were authorized through a non-Visa network, (ii) unlike GCAR reimbursements, which require no release of any third party, the AROs required participants, in their capacities as Visa issuers, to release all claims against Target relating to the Data Breach, and (iii) the AROs expressly conditioned the receipt of benefits on giving up the ability to participate in this action, In re Target Corporation Customer Data Security Breach Litigation, MDL No. 14-2522 (PAM/JJK), in their capacities as Visa issuers;

WHEREAS, the overall amount provided to financial institutions, including Class Members, through the Visa settlements, was approximately $63.5 million;

WHEREAS, Target denies (a) the allegations and all liability with respect to any and all facts and claims alleged in the Financial Institutions Complaint, (b) that the Settlement Class Representatives and the class they currently represent have suffered the damages they allege, and (c) that the Financial Institutions Complaint satisfies the requirements to be tried as a class action under Federal Rule of Civil Procedure 23;

WHEREAS, Plaintiffs assert (a) in agreement with the District Court, that facts asserted in the Financial Institutions Complaint raise a reasonable expectation that discovery will reveal evidence to support Settlement Class Representatives' claims, (b) that there is sufficient evidence that the Settlement Class Representatives and the Class have suffered the damages they allege, and (c) that the Financial Institutions Complaint

and the evidence amassed in the case demonstrate that the claims would properly be resolved through class action proceedings, including trial, pursuant to Federal Rule of Civil Procedure 23;

WHEREAS, despite their belief that their claims are meritorious, that they and the Class Members they represent have been injured and suffered damages, and that the Financial Institutions Complaint satisfies the requirements to be tried as a class action under Federal Rule of Civil Procedure 23, the Settlement Class Representatives and Settlement Class Counsel have concluded, after discovery and investigation of the facts and after carefully considering the circumstances of the Financial Institutions Complaint, including the number of financial institutions that expressly released their claims in this litigation through card brand settlements, that it would be in the best interests of the Class to enter into this Agreement, which interests include the substantial value to be derived by this Settlement and the interest in avoiding the uncertainties of litigation and assuring that the benefits reflected herein are obtained for the Class;

WHEREAS, despite its belief that it has valid and complete defenses to the claims asserted against it, Target has nevertheless agreed to enter into this Agreement to reduce and avoid further risk, expense, inconvenience, and the distraction of burdensome and protracted litigation and thereby to resolve any controversy;

WHEREAS, the Settlement set forth in this Agreement is a product of sustained, arm's length negotiations conducted in numerous mediation sessions before The Honorable Arthur J. Boylan, former Chief Magistrate Judge for the United States District Court for the District of Minnesota;

NOW, THEREFORE, in consideration of the covenants and agreements set forth herein and without:  (a) any admission or concession on the part of Settlement Class Representatives or Settlement Class Counsel of the lack of merit of the Financial Institutions Complaint; or (b) any admission or concession of liability or wrongdoing or the lack of merit of any defense whatsoever by Target with respect to the Financial Institutions Complaint,

IT IS HEREBY STIPULATED AND AGREED by the Parties, that the Actions, the Financial Institutions Complaint and the claims set forth therein, the Plaintiff Released Claims, and the Target Released Claims, be settled, compromised, and dismissed with prejudice, subject to Court approval as required by Federal Rule of Civil Procedure 23, on the following terms and conditions:

## 1.    DEFINITIONS

As used in this Agreement, the terms set forth in this section in boldface type will have the following meanings:

**1.1    Actions.**  The actions brought on behalf of financial institutions against Target relating to the Data Breach that were consolidated for pretrial purposes in the matter entitled *In re Target Corporation Customer Data Security Breach Litigation*, MDL No. 14-2522 (PAM/JJK).

**1.2    ADC.**  MasterCard's Account Data Compromise program, as set forth in the MasterCard's *Security Rules and Procedures*.

**1.3    Adjustment.**  This term has the meaning set forth in Section 4.4.6.2.

7

**1.4**   **Agreement or Settlement Agreement.**   This document, including all exhibits.

**1.5**   **Application.**  This term has the meaning set forth in Section 7.1.

**1.6**   **Assessment by MasterCard.**   MasterCard's final ADC Recovery assessment of $19,107,939.38 relating to the Data Breach, dated on or about September 25, 2015.

**1.7**   **Class Certification Order.**  The Court's Order, dated September 15, 2015, granting the Settlement Class Representatives' motion for certification of a Rule 23(b)(3) class and appointment of class representatives and class counsel.

**1.8**   **Class Members or Class.**   All entities in the United States and its Territories that (i) issued Compromised Payment Cards and (ii) have not previously released Target with respect to all of the Compromised Payment Cards that they issued. For purposes of the preceding sentence, the phrase "all entities in the United States and its Territories" shall mean all entities that are organized under the laws of the United States or a Territory thereof.

**1.9**   **Compromised Payment Card.**   A payment card that was identified as having been at risk as a result of the Data Breach by (i) Visa, in an alert in the US-2013-1335-IC series; (ii) MasterCard, in an alert in the ADC1904-US-13 series, the ADC1924-US-13 series, or the ADC1948-US-13 series; (iii) Discover, in an alert similar to the foregoing Visa and MasterCard alerts, including an alert in the DCA-US-2013-1085 series; or (iv) American Express or JCB in an alert similar to the foregoing Visa and MasterCard alerts.

**1.10    Compromised Payment Card Account.**  The payment card account associated with a Compromised Payment Card.

**1.11    Correction Request.**  This term shall have the meaning set forth in Section 4.4.3.

**1.12    Court.**  The Honorable Paul A. Magnuson, United States District Court Judge, District of Minnesota, or such other judge to whom the Actions or Financial Institutions Complaint may hereafter be assigned.

**1.13    Data Breach.**  The payment card data breach that was publicly disclosed by Target on December 19, 2013.

**1.14    Distribution Plan.**  The plan, substantially in the form of Exhibit 1, for distributing a portion of the Settlement Class Escrow Account to Settlement Class Members who submit valid claim forms.

**1.15    Effective Date.**  The first date after which the following events and conditions have occurred: (i) the Court has entered the Final Judgment and the Final Judgment has not been set aside, materially modified, or overturned by the Court or on appeal, and (ii) the time for any motion or petition for reconsideration, appeal, or writ with regard to the Final Judgment has expired.

**1.16    Eligible Account.**  A Compromised Payment Card Account that is not an Ineligible Account.

**1.17    Fee Request.**  This term shall have the meaning set forth in Section 2.4.

**1.18    Final Approval Hearing.**  The hearing held by the Court for the purpose of determining whether to (a) grant final approval of the Settlement, (b) grant the Application, and (c) enter the Final Judgment.

**1.19    Final Judgment**.  A final judgment and order of dismissal with prejudice entered by the Court in the form attached as Exhibit 2 hereto with any blanks completed in accordance with Exhibit 2 hereto.

**1.20    Final Opt-Outs Report.**  This term shall have the meaning set forth in Section 4.4.5.

**1.21    Financial Institutions Complaint.**  The Consolidated Class Action Complaint filed by the financial institution plaintiffs in the matter entitled *In re Target Corporation Customer Data Security Breach Litigation*, MDL No. 14-2522 (PAM/JJK).

**1.22    GCAR.**  Visa's Global Compromised Account Recovery program as set forth in Visa's operating regulations and as administered by Visa.

**1.23    Ineligible Account.**  A Compromised Payment Card Account with respect to which claims of the financial institution that issued the Compromised Payment Card Account against Target relating to the Data Breach have been released.

**1.24    Notices.**  The information, substantially in the form of Exhibits 3–4, to be provided to Class Members pursuant to a notice plan to be approved by the Court.

**1.25    Opt-Outs Report.**  This term has the meaning set forth in Section 4.4.2.

**1.26    Plaintiffs or Financial Institution Plaintiffs.**  The named plaintiffs in the Financial Institutions Complaint.

**1.27** **Plaintiff Released Claims**.  This term has the meaning set forth in Section 6.1.

**1.28** **Plaintiff Released Persons.**  This term has the meaning set forth in Section 6.2.

**1.29** **Plaintiff Releasing Persons.**  This term has the meaning set forth in Section 6.1.

**1.30** **Preliminary Approval Order**.  The Order of Preliminary Approval of Settlement to be entered by the Court substantially in the form attached as Exhibit 6 hereto.

**1.31** **Target Released Claims**.  This term has the meaning set forth in Section 6.2.

**1.32** **Target Released Persons**.  This term has the meaning set forth in Section 6.1.

**1.33** **Service Payments.**  One time payments to the Settlement Class Representatives, through Settlement Class Counsel, as set forth in Section 7.1.

**1.34** **Settlement.**  The settlement embodied in this Settlement Agreement.

**1.35** **Settlement Administrator**.  Subject to Court approval, Dahl Administration.

**1.36** **Settlement Class.**  This term has the meaning set forth in Section 3.1.

**1.37** **Settlement Class Counsel.** This term includes the following firms and individuals:

**CHESTNUT CAMBRONNE PA**
Karl L. Cambronne
Jeffrey D. Bores
Bryan L. Bleichner
17 Washington Avenue North, Suite 300
Minneapolis, MN 55401
Telephone: (612) 339-7300
kcambronne@chestnutcambronne.com
jbores@chestnutcambronne.com
bbleichner@chestnutcambronne.com

**ZIMMERMAN REED, LLP**
Charles S. Zimmerman
J. Gordon Rudd, Jr.
Brian C. Gudmundson
David M. Cialkowski
1100 IDS Center, 80 South 8th St.
Minneapolis, MN 55402
Telephone: (612) 341-0400
charles.zimmerman@zimmreed.com
gordon.rudd@zimmreed.com
brian.gudmundson@zimmreed.com
david.cialkowski@zimmreed.com

**1.38    Settlement Class Escrow Account.**   The account described in Section 5.3.1 of this Agreement.

**1.39    Settlement Class Members**.   The entities that comprise the Settlement Class.

**1.40    Settlement Class Representatives**.   The named plaintiffs in the Financial Institutions Complaint attached as Exhibit 7.

**1.41    Settlement Fund.**   An amount equal to $39,357,939.38 less any Adjustment pursuant to Section 4.4.6.2 and any portion of the Assessment by MasterCard that is not attributed to Settlement Class Members, which amount is the limit and extent of Target's monetary obligations for notice and administrative costs relating to the Settlement plus the payment of claims to Settlement Class Members, excluding the amount of any Service Payments to the Settlement Class Representatives pursuant to Section 7.1.  This amount comprises $20,250,000 paid directly to the Settlement Class Escrow Account by Target, less any Adjustment pursuant to Section 4.4.6.2, plus

$19,107,939.38 paid by Target to fund MasterCard's ADC program, less any portion of the Assessment by MasterCard that is not attributed to Settlement Class Members, which the parties agree constitutes consideration for this Settlement.[1]

## 2.    SETTLEMENT PROCEDURES

2.1     All activities in the Actions or relating to the Financial Institutions Complaint, other than those in furtherance of the Settlement, shall be suspended effective October 22, 2015.

2.2     As soon as possible after the execution of this Agreement, the Settlement Class Representatives shall move the Court for a Preliminary Approval Order substantially in the form of Exhibit 6.

2.3     At the time of the submission of this Agreement to the Court as described in Section 2.2, the Settlement Class Representatives shall request that, after notice is given to Settlement Class Members, the Court hold the Final Approval Hearing and approve the Settlement.

2.4     At least 21 days before the deadline for Settlement Class Members to file objections to the Settlement, Settlement Class Counsel shall file with the Court, and serve upon Target (i) their motion for an award of attorneys' fees, costs, and expenses ("Fee Request"); and (ii) any application by Settlement Class Representatives for awards of Service Payments.

---

[1] The parties understand that a small percentage (believed to be less than two percent) of the MasterCard accounts that formed the basis for the $19,107,939.38 assessment were issued by foreign issuing banks that are not Class Members. The exact amount that will be paid to such foreign issuing banks out of the assessment, however, is not known by the parties.

13

**2.5**     At the Final Approval Hearing, the Parties will request that the Court enter the Final Judgment.

**3.     THE SETTLEMENT CLASS**

**3.1     Settlement Class.**  For settlement purposes only, the Parties agree that the Court should certify a Settlement Class in the Actions pursuant to Fed. R. Civ. P. 23(b)(3), defined as follows:

> All entities in the United States and its Territories that issued Compromised Payment Cards.
>
> Excluded from the class are all entities that previously released Target with respect to all of the Compromised Payment Cards that they issued, and all entities that validly request exclusion from the Settlement Class pursuant to Section 4.4.1 of the Settlement Agreement.

Target agrees not to contest the modification of the class definition set forth in the Class Certification Order for purposes of this Settlement, but reserves the right to contest and appeal the certification of a class for any purpose other than this Settlement.  If the Court enters the Preliminary Approval Order, the parties agree they will not assert that such action is an adjudication of any fact or issue for any purpose other than the effectuation of this Agreement or that it may be considered as law of the case or *res judicata* or have collateral estoppel effect in this or any other proceeding.

**4.     NOTICE, OPT-OUTS, AND OBJECTIONS**

**4.1     Manner of Giving Notice to the Class.**     Pursuant to the Preliminary Approval Order, the Settlement Administrator will provide notice to Class Members in accordance with a notice plan to be approved by the Court in such Order.

**4.2   Other Required Notice.**   Target will serve the notice required under 28 U.S.C. § 1715, in the form attached as Exhibit 8.

**4.3   Payment of Expenses Relating to Notice and Administration.**   All costs associated with providing notice to Class Members and with administration of the Settlement will be paid from the Settlement Class Escrow Account.

**4.4   Opt Outs by Class Members**.

**4.4.1   Procedures for Opt-Outs**.   The Parties will request that the Court order procedures for Class Members to request to "opt out" (i.e., to be excluded from the Settlement Class) in accordance with the provisions in the Preliminary Approval Order. No request to opt out shall be valid unless the Class Member requests to be excluded from the settlement. Exclusion requests must be made in writing, including the Class Member's name, address, telephone number, statement that the Class Member wants to be excluded, the name of this proceeding (*In re Target Corporation Data Security Breach Litigation*), and signature. A request to opt out shall be considered valid if the Class Member completes and signs the written request for exclusion in the form of Exhibit 5, or alternatively sends a letter by U.S. Mail that includes all of the information set forth in the prior sentence, and sends such completed form or letter to the Settlement Administrator at the address provided in the Notices attached as Exhibits 3–4, postmarked no more than ninety (90) days after the date the Preliminary Approval Order is entered.   Each Class Member that submits a request to opt out in accordance with the previous sentence and the provisions of the Preliminary Approval Order shall be excluded from the Settlement Class.   Class Members seeking to opt out will also be asked to

15

provide the number of Eligible Accounts that they issued.  Each Class Member that does not submit a valid request to opt out shall remain in the Settlement Class and shall be bound by the Settlement and release provided in Section 6.1 of this Agreement.

 **4.4.2   Opt-Outs Report.**  Within seven (7) days of the date set forth in the Notices by which opt-out requests must be postmarked, Settlement Class Counsel shall cause the Settlement Administrator to send to Settlement Class Counsel and to Target's Counsel:  (i) copies of all requests to opt out; (ii) a report identifying (a) each Class Member that submitted a request to opt out; (b) the number of Eligible Accounts issued by each such Class Member; and (c) the Settlement Administrator's determination as to the validity or invalidity of each such Class Member's request to opt out pursuant to the provisions of Section 4.4.1 and the Preliminary Approval Order (the "Opt-Outs Report").

  **4.4.2.1**   With regard to the number of Eligible Accounts issued by each Class Member, the Opt-Outs Report provided pursuant to Section 4.4.2 shall reflect:  (i) the number of Eligible Accounts claimed by the Class Member in its request to opt out; or (ii) if the request to opt out does not indicate the number of Eligible Accounts issued by such Class Member, the aggregate total number of accounts identified as having been issued by such Class Member in (a) the document produced in the above-captioned matter as VISA-TARMDL0001414, provided that the Class Member has not released its claims against Target in its capacity as an issuer of Visa-branded payment cards, and (b) the document produced in the above-captioned matter as MC_000001, provided that the Class Member has not

released its claims against Target in its capacity as an issuer of MasterCard-branded payment cards; or (iii) if the request to opt out does not indicate the number of Eligible Accounts issued by such Class Member and the Class Member is not identified in either VISA-TARMDL0001414 or MC_000001 as having issued any accounts, 2,500 Eligible Accounts, which is the number of Eligible Accounts any such Class Member will be deemed to have issued for purposes of this Agreement, unless written confirmation to the contrary is obtained pursuant to Section 4.4.2.2.

**4.4.2.2**   Settlement Class Representatives, through Settlement Class Counsel, and Target, directly or through Target's Counsel, may contact any Class Member deemed to have issued 2,500 Eligible Accounts pursuant to Section 4.4.2.1 part (iii) to obtain a written statement from such Class Member regarding the number of Eligible Accounts issued by such Class Member.  In the event of a Correction Request relating to any such Class Member, a written statement from the Class Member as to its number of Eligible Accounts shall be accorded the same weight as if the Class Member had indicated its number of Eligible Accounts in its request to opt out.

**4.4.3**   Within fourteen (14) days of the Settlement Administrator's delivery of the Opt-Outs Report pursuant to Section 4.4.2, the Settlement Class Representatives, through Settlement Class Counsel, and Target, through Target's Counsel, shall have the opportunity to submit a request that the Settlement Administrator correct any information

included in the Opt-Outs Report that is believed to be incorrect, including but not limited to information regarding the number of Eligible Accounts actually issued by a Class Member (a "Correction Request").  Any such Correction Request must be emailed to the Settlement Administrator at Mail@TargetBankSettlement.com and delivered to all other Parties in accordance with Section 12.  The Parties shall meet and confer regarding any Correction Requests prior to submitting them to the Settlement Administrator. If there is disagreement among the Parties regarding a Correction Request, the Party disputing the Correction Request shall have three (3) business days following the submission of the Correction Request to submit a request that the Settlement Administrator reject the Correction Request.

      **4.4.4**   If any party submits a Correction Request pursuant to the procedures set forth in Section 4.4.3, then Settlement Class Counsel shall cause the Settlement Administrator, not later than seven (7) days after the later of (i) the date of the Correction Request and (ii) any objection or dispute regarding such Correction Request, to deliver to Settlement Class Counsel and to Target's Counsel another version of the Opt-Outs Report, incorporating any requested corrections that the Settlement Administrator determines should be made.  Any Opt-Out Report delivered pursuant to this Section 4.4.4 shall supersede and replace any prior version of the Opt-Outs Report.

      **4.4.5**   Following the time period for the submission of any Correction Requests and, if applicable, the Settlement Administrator's delivery of another version of the Opt-Outs Report pursuant to Section 4.4.4, and no later than fourteen (14) days before the Final Approval Hearing date, Settlement Class Counsel shall cause the Settlement

18

Administrator to file the then-operative Opt-Outs Report with the Court.  To the extent there is any dispute between the Parties regarding any determination made in the Opt-Outs Report filed with the Court, the Parties shall present such disputes to the Court for resolution no later than seven (7) days before the Final Approval Hearing date.  In the event that no dispute is presented pursuant to this Section 4.4.5, the "Final Opt-Outs Report" shall be the Opt-Outs Report filed with the Court pursuant to this Section 4.4.5. In the event that a Party presents a dispute to the Court pursuant to this Section 4.4.5, the "Final Opt-Outs Report" shall be the Opt-Outs Report filed with the Court pursuant to this Section 4.4.5, as modified (if at all) by the Court's ruling on such dispute.

**4.4.6   Effect of Opt Outs by Class Members**.  The settlement is subject to Target's right to terminate the Settlement, or to proceed with the Settlement based upon an adjustment to the Settlement Fund, if Class Members that issued more than 525,000 Eligible Accounts submit valid requests to opt out.

**4.4.6.1  Right of Termination.**  If Class Members that, according to the Final Opt-Outs Report, issued more than 525,000 Eligible Accounts submit valid requests to opt out, Target may terminate this Agreement by providing written notice of termination to Settlement Class Counsel and to the Court no later than seven (7) days after the later of (i) the deadline to present disputes to the Court, pursuant to Section 4.4.5, regarding the Opt-Outs Report, and (ii) the Court's ruling on any dispute presented to the Court, pursuant to Section 4.4.5, regarding the Opt-Outs Report.

19

**4.4.6.2 Adjustment.** If Class Members that, according to the Final Opt-Outs Report, issued more than 525,000 Eligible Accounts submit valid requests to opt out and Target does not terminate the Settlement Agreement pursuant to Section 4.4.6.1, then the $20,250,000 amount payable by Target to the Settlement Class Escrow Account will be reduced by an amount equal to $20,250,000 multiplied by the number of opted-out Eligible Accounts exceeding 525,000 divided by 10,500,000 (the "Adjustment").

### 4.5     Objections by Settlement Class Members

**4.5.1 Procedure for Objections.** The Parties will request that the Court order procedures for Settlement Class Members to object to the approval of the Settlement, the Application, or both, in accordance with the provisions in the Preliminary Approval Order.

## 5.     CARD BRAND SETTLEMENTS AND SETTLEMENT FUND DISTRIBUTION

### 5.1     Target's Challenge to the Assessment by MasterCard.

Prior to the earlier of (i) the Effective Date, or (ii) the termination of the Agreement, Target will not initiate any litigation or other action to seek reimbursement of funds that Target pays pursuant to the Assessment by MasterCard. In the event that the Effective Date occurs, Target covenants that it will not initiate any litigation or other action to challenge the Assessment by MasterCard regarding, and otherwise will not seek reimbursement of, any

funds paid to Settlement Class Members pursuant to the Assessment by MasterCard.  As a result, provided that the Effective Date occurs, Target will have paid the portion of the MasterCard Assessment attributed to Settlement Class Members by funding MasterCard's ADC recovery program with up to $19,107,939.38.   This payment is part of the Settlement Fund.

      **5.2**      Pursuant to its GCAR program, Visa asserted the right to assess and collect from Target, through its acquiring banks, a payment in excess of $43 million that Visa alleged certain of its issuers had incurred as a result of the Data Breach.  In exchange for foregoing its rights to challenge the GCAR assessment by Visa and for funding the GCAR program as well as the AROs providing for a $2.50-per-card payment with respect to certain debit accounts allegedly impacted by the Data Breach by reason of transactions on those accounts that were authorized through a non-Visa network (and, therefore, not eligible for GCAR recovery), certain financial institutions released their claims against Target in this litigation.

      **5.3**      **Distribution of Monetary Payments to Settlement Class Members.** Settlement Class Members shall be eligible to receive a portion of the Settlement Class Escrow Account to the extent provided for in the Distribution Plan.

      **5.3.1 Settlement Class Escrow Account.**  Within five (5) business days of the later of (i) the Court's Preliminary Approval Order and (ii) Settlement Class Counsel's provision to Target of the account information for the Settlement Class Escrow Account, Target shall pay $500,000 of the Settlement Fund into the interest-bearing Settlement Class Escrow Account to be used in the first instance to pay the costs of notice

21

and administration of the Settlement.   To the extent that the costs of notice and administration of the Settlement exceed $500,000, such costs shall be paid out of the remainder of the Settlement Class Escrow Account; Target shall not bear any obligations relating to such costs.   Target shall pay $19,750,000 (minus any Adjustment pursuant to Section 4.4.6.2) into the interest-bearing Settlement Class Escrow Account within five (5) business days after the Effective Date.   The money in the Settlement Class Escrow Account shall be a Court-approved Qualified Settlement Fund for federal tax purposes pursuant to Treas. Reg. § 1.468B-1.   Settlement Class Counsel, on behalf of the Settlement Class, shall be responsible for all administrative, accounting and tax compliance activities in connection with the Settlement Class Escrow Account and the monies deposited into the Settlement Class Escrow Account, including any filing necessary to obtain Qualified Settlement Fund status pursuant to Treas. Reg. § 1.468B-1. Target shall provide to Settlement Class Counsel any documentation necessary to facilitate obtaining Qualified Settlement Fund status for the Settlement Class Escrow Account pursuant to Treas. Reg. § 1.468B-1.  All taxes on income or interest generated by the Settlement Class Escrow Account, if any, shall be paid out of the Settlement Class Escrow Account.

   **5.3.2 Distribution of the Settlement Class Escrow Account.** The Settlement Class Escrow Account shall be used to (i) pay all costs and expenses associated with notice and administration of the Settlement, including but not limited to any taxes due on the account, as set forth in Section 5.3.1; and (ii) make payments to the

Settlement Class Members in accordance with the Distribution Plan, and as approved by the Court.

      **5.3.3  Distribution of Remaining Funds.**  The Parties intend that the entire Settlement Class Escrow Account be distributed pursuant to the claims administration process, and the distribution plan is designed to avoid remaining funds. To the extent that any funds remain, no portion of the Settlement Class Escrow Account shall be returned to Target.  Any such remaining funds will be distributed by the Settlement Administrator as directed by the Court or its designee, upon application of Settlement Class Counsel.  The Parties will confer and attempt to agree upon a recommendation for the distribution of any such remainder.  In the event that no agreement is reached, each Party reserves its right to be heard by the Court on the issue.

      **5.3.4  All Claims Satisfied.**  Each Settlement Class Member shall look solely to the payments due to any such Settlement Class Member under the Distribution Plan for satisfaction of all Plaintiff Released Claims.

      **5.3.5  No Responsibility for Distribution.** After the Effective Date, Target and its insurers shall have no responsibility, financial obligation, or liability whatsoever with respect to the investment or distribution of the Settlement Fund, or with respect to the administration of the settlement or the Settlement Class Escrow Account.

**6.     RELEASE OF CLAIMS**

      **6.1    Release of Settlement Class Claims.**  As of the Effective Date, the Settlement Class Representatives and all other Settlement Class Members, on their own behalves and on behalf of their respective past and present parents, subsidiaries,

affiliates, divisions, successors, predecessors, assignors, assignees, and assigns, and each of their respective past and present officers, directors, shareholders, members, insurers, agents, and employees (associates) ("Plaintiff Releasing Persons"), shall be deemed to have waived any right to assert against Target and its present, former, and future parents, subsidiaries, affiliates, divisions, successors, predecessors, assignors, assignees, and assigns, and each of their respective present, former or future, officers, directors, shareholders, insurers, employees (associates), agents, acquirers, processors, representatives, attorneys, and accountants (collectively, "Target Released Persons"), and to have irrevocably released and forever discharged the Target Released Persons from and for, any and all liabilities, claims, cross-claims, causes of action, rights, actions, suits, debts, liens, contracts, agreements, damages, costs, attorneys' fees, losses, expenses, obligations, or demands, of any kind whatsoever, existing or potential, or suspected or unsuspected, whether raised by claim, counterclaim, setoff, or otherwise, including any known or unknown claims, which they ever had, now have, or may claim now or in the future to have, that (i) were alleged or asserted against any of the Target Released Persons in the Actions or Financial Institutions Complaint or that could have been alleged or asserted against any of the Target Released Persons in the Actions or Financial Institutions Complaint; (ii) arise out of the same nucleus of operative facts as any of the claims alleged or asserted in the Actions or Financial Institutions Compliant; or (iii) arise out of the Data Breach or any disclosures or notices that Target made or failed to make about the Data Breach  ("Plaintiff Released Claims").

**6.2**      **Release of Plaintiff Released Parties.**   As of the Effective Date, Target shall be deemed to have waived any right to assert against Settlement Class Representatives, the other Settlement Class Members, and Settlement Class Counsel ("Plaintiff  Released Persons"), and to have irrevocably released and forever discharged the Plaintiff Released Persons from and for, any and all liabilities, claims, cross-claims, causes of action, rights, actions, suits, debts, liens, contracts, agreements, damages, costs, attorneys' fees, losses, expenses, obligations, or demands, of any kind whatsoever, existing or potential, or suspected or unsuspected, whether raised by claim, counterclaim, setoff, or otherwise, including any known or unknown claims, which it ever had, now has, or may claim now or in the future to have, relating to the institution or prosecution of the Actions ("Target Released Claims").

**6.3**      **Unknown Claims.**   For purposes of the releases set forth in Sections 6.1 and 6.2 and the Final Judgment, "unknown claims" means claims that Target and the Plaintiff Releasing Persons do not know or suspect to exist in their favor as of the entry of the Final Judgment, which if known by them might have affected their settlement of the Actions or the Financial Institutions Complaint.  It is the intention of the Parties and the Settlement Class Members that, upon the Effective Date, Target and each of the Plaintiff Releasing Persons shall be deemed to have, and by operation of the Final Judgment shall have, expressly waived and relinquished, to the fullest extent permitted: (a) by section 1542 of the California Civil Code, or (b) by any law of any state or territory of the United States, federal law, or principle of common law which is similar, comparable, or equivalent to section 1542 of the California Civil Code, the provisions,

25

rights and benefits of any statute or law which might otherwise render a general release unenforceable with respect to unknown claims.   Section 1542 of the California Civil Code reads:

> Section 1542.  <u>General Release, extent</u>.  A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Upon the Effective Date, Target and each of the Plaintiff Releasing Persons shall be deemed to have acknowledged that such party is aware that such party may hereafter discover facts other than or different from those that they know or believe to be true with respect to the subject matter of the Plaintiff Released Claims and Target Released Claims, but it is such party's intention to, and each of them shall be deemed upon the Effective Date to have, waived and fully, finally, and forever settled and released any and all Plaintiff Released Claims and Target Released Claims, whether known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non-contingent, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

**6.4    Bar to Future Suits.**   Upon entry of the Final Judgment, Target, the Settlement Class Representatives and other Settlement Class Members shall be enjoined from prosecuting any claim they have released in the preceding paragraphs in any proceeding against any of the Plaintiff Released Persons, Target Released Persons or based on any actions taken by any of the Plaintiff Released Persons or Target Released Persons that are authorized or required by this Agreement or by the Final Judgment.   It is

further agreed that the Settlement may be pleaded as a complete defense to any proceeding subject to this section.

## 7.   SERVICE PAYMENTS, ATTORNEYS' FEES AND LITIGATION EXPENSES AND REIMBURSEMENTS

**7.1    Service Payments and Attorneys' Fees and Expenses.**  The total amount that the Settlement Class Representatives and Settlement Class Counsel may seek pursuant to the Fee Request and any additional application on behalf of the Settlement Class Representatives for Service Payments (collectively, with the Fee Request, the "Application") will not exceed a maximum total of $20,000,000.   From this amount, Settlement Class Representatives and Settlement Class Counsel will seek a combined total of $100,000 for Service Payments to the Settlement Class Representatives.  Target will pay the fees, costs, expenses, and Service Payments awarded by the Court pursuant to the Application, up to the maximum total of $20,000,000, which payment shall be made separate and apart from the Settlement Fund.  Target reserves the right to object to the Application, provided that Target waives its right to appeal the Court's ruling on the Application if the amount awarded by the Court for attorneys' fees, costs, expenses, and Service Payments does not exceed $20,000,000 in total.

**7.2    Payment Procedure.**  Within ten (10) business days of the later of (a) the Effective Date or (b) receipt by Target of the Settlement Class Counsel's completed W-9 forms, Target shall cause any attorneys' fees, costs, expenses, and Service Payments awarded by the Court pursuant to the Application, up to the maximum aggregate amount of $20,000,000 to be paid to the Chestnut Cambronne Trust Account.  Settlement Class

Counsel shall be solely responsible for distributing any awarded Service Payments to the Settlement Class Representatives and for distributing any awarded attorneys' fees, costs, and expenses.

**7.3     No Additional Amounts Due.**  Target shall not be liable for any additional fees, costs, or expenses of Settlement Class Counsel, the Settlement Class Representatives, or any other Settlement Class Member in connection with the Actions or Financial Institutions Complaint, or for any other service awards.   Settlement Class Counsel and Settlement Class Representatives agree that they will not seek any additional fees, costs, expenses, or service awards from Target in connection with the Actions or the Financial Institutions Complaint.

## 8.     SETTLEMENT ADMINISTRATOR'S REPORTING OBLIGATIONS

**8.1**     In addition to the reporting obligations set forth in Section 4.4.5, no later than fourteen (14) days before the Final Approval Hearing date, the Settlement Administrator shall file with the Court a sworn declaration verifying that notice was provided to Class Members as required in the Preliminary Approval Order.

## 9.     CONTINGENCIES

**9.1     Contingencies.**  This Agreement shall be deemed terminated if: (a) the Court fails to enter the Preliminary Approval Order; (b) the Court fails to enter the Final Judgment; (c) the Final Judgment is not fully upheld on appeal, if any appeal of the Final Judgment is taken; (d) Target elects to terminate pursuant to Section 4.4.6.1 above; or (e)

by written instrument signed by all Parties or their successors in interest or their duly authorized representatives prior to the Effective Date.

**9.2    Effect of Termination.**

**9.2.1**   In the event that this Agreement is terminated pursuant to Section 9.1, or fails to become effective for any reason whatsoever, then all obligations under this Agreement shall cease to be of any force and effect, and the Parties shall be deemed to have reverted to their respective statuses as of October 22, 2015, including with respect to any discovery pending as of October 22, 2015 or deadlines existing in the Actions or Financial Institutions Complaint as of October 22, 2015,  and they shall proceed in all respects as if this Agreement, its exhibits, and any related agreements or orders, including any modification of the class definition pursuant to the Preliminary Approval Order, had never been executed or entered, except that the provisions set forth in this Section 9.2.1, and in Section 2.1, Section 9.2.2, Section 11, Section 13.2, and Section 14.5 shall survive any such termination.  Further, the facts that Target did not oppose the certification of the Settlement Class, or that the Court preliminary or finally approved the certification of a Settlement Class, shall not be used or cited thereafter by any person or entity, including in any contested proceeding relating to the certification of any class.

**9.2.2**   In the event this Agreement is terminated, or fails to become effective for any reason whatsoever, then the Parties agree to jointly seek an order from the Court restoring the Parties to their positions as of October 22, 2015, with respect to the Actions and Financial Institutions Complaint.

## 10.    CONTINUING JURISDICTION

The Court shall retain jurisdiction to implement and enforce this Agreement's terms and the Final Judgment.

## 11.    PUBLICITY; CONFIDENTIALITY

The Parties agree that all of their negotiations relating to this Settlement Agreement are, and shall remain, confidential and subject to the confidentiality provisions governing the Parties' mediation.  The Parties further agree that they will not make the settlement reflected herein public until the Settlement Agreement is formally submitted to the Court.   In issuing public statements, including responding to any inquiries from the public media concerning the Actions or the Financial Institutions Complaint or the settlement of the Actions or the Financial Institutions Complaint, the Settlement Class Representatives, Settlement Class Counsel, Target, and Target's Counsel will limit their statements to the provision of such factual information as is contained in the settlement notice, the Settlement Agreement, the pleadings, and any of the various court orders in the Actions or the Financial Institutions Complaint.  The Settlement Class Representatives, Settlement Class Counsel, Target, and Target's Counsel may further state to the effect that "the matter has been settled to the satisfaction of all parties."  Nothing in this Section 11 shall limit (a) the ability of Settlement Class Counsel or the Settlement Class Representatives, after the Settlement Agreement is formally submitted to the Court, to communicate privately or publicly the basis for their support of the Agreement, provided that no information regarding the negotiations relating  to the Settlement are disclosed, (b) the ability of Target or its successors to make such public disclosures as the

federal securities laws require or to provide information about the settlement to state and federal regulators, or other government officials after the Settlement Agreement is formally submitted to the Court, (c) the ability of Target to communicate with MasterCard about the Settlement and the Assessment by MasterCard, in order to ensure that the Assessment by MasterCard is handled in a manner contemplated by the Settlement, or (d) the ability of Target to notify its insurers about the Settlement.

## 12.    NOTICES

Any communication, verification, or notice sent by any Party in connection with this Agreement shall be sent by email (in which case it will be effective on transmission to each representative of a party for whom an email address is listed below, unless the party making delivery is notified that the email was not received by such representative of the other party) or overnight mail (in which case, it will be effective on the business day after being deposited with a reputable delivery service) as follows:

**To Settlement Class Representatives:**          **To Target:**

Charles S. Zimmerman
J. Gordon Rudd, Jr.
Brian C. Gudmundson
David M. Cialkowski
**ZIMMERMAN REED, LLP**
1100 IDS Center, 80 South 8th St.
Minneapolis, MN 55402
Telephone: (612) 341-0400
charles.zimmerman@zimmreed.com
gordon.rudd@zimmreed.com
brian.gudmundson@zimmreed.com
david.cialkowski@zimmreed.com

Karl L. Cambronne
Jeffrey D. Bores
Bryan L. Bleichner
**CHESTNUT CAMBRONNE PA**
17 Washington Avenue North, Suite 300
Minneapolis, MN 55401
Telephone: (612) 339-7300
kcambronne@chestnutcambronne.com
jbores@chestnutcambronne.com
bbleichner@chestnutcambronne.com

Douglas H. Meal
ROPES & GRAY LLP
800 Boylston Street
Prudential Tower
Boston, Massachusetts 02199
Douglas.Meal@ropesgray.com

Michelle L. Visser
ROPES & GRAY LLP
Three Embarcadero Center
San Francisco, California 94111
Michelle.Visser@ropesgray.com

Robin Preble
TARGET CORPORATION
TPS-3155
1000 Nicollet Mall
Minneapolis, MN 55403
Robin.Preble@target.com

## 13.   MISCELLANEOUS

**13.1   Entire Agreement.**  This Agreement contains the entire agreement between the Parties and supersedes all prior understandings, agreements, or writings regarding the subject matter of this Agreement.

**13.2   No Liability.**  Nothing contained herein, or in any document or instrument contemplated by this Agreement, is to be construed as an admission of wrongdoing or liability by any party, such wrongdoing and liability being expressly denied, and no final adjudication having been made.  The Parties have entered into this Agreement solely as a compromise of all claims for the purpose of concluding the disputes between them, and

the Agreement may not be used by any third party against any Party.  Pursuant to Fed. R. Evid. 408, the entering into and carrying out of this Agreement, and any negotiations or proceedings related to it, shall not be construed as, or deemed evidence of, an admission or concession by any of the Parties or a waiver of any applicable statute of limitations, and shall not be offered or received into evidence in any action or proceeding against any Party in any court, administrative agency or other tribunal for any purpose whatsoever.

**13.3   Amendment.**  This Agreement may be amended or modified only by a written instrument signed by all Parties or their successors in interest or their duly authorized representatives.

## 14.   REPRESENTATIONS AND WARRANTIES

**14.1   No Additional Persons with Financial Interest**.  Target shall not be liable for any additional attorneys' fees and expenses of any Settlement Class Members' counsel, including any potential objectors or counsel representing a Settlement Class Member individually, other than what is expressly provided for in this Agreement. Settlement Class Counsel agree to hold Target harmless from any claim that the term "Settlement Class Counsel" as defined in Section 1.37 of this Agreement fails to include any person or firm who claims that they are entitled to a share of any attorneys' fees awarded to Settlement Class Counsel in connection with the Actions or the Financial Institutions Complaint.

**14.2   Parties Authorized to Enter into Agreement**.  Each person executing this Agreement represents and warrants that he or she is fully authorized to enter into this Agreement and to carry out the obligations provided for herein.  Each person executing

this Agreement on behalf of Settlement Class Representatives or Target covenants, warrants and represents that he or she is and has been fully authorized to do so by the Settlement Class Representatives or Target.  Each Settlement Class Representative and Target hereby further represents and warrants that it intends to be bound fully by the terms of this Agreement.

**14.3    Governing Law.**  This Agreement is intended to and shall be governed by the laws of the State of Minnesota without regard to its choice of law principles.

**14.4    No Construction Against Drafter.**  This Agreement shall be deemed to have been drafted by the Parties, and any rule that a document shall be interpreted against the drafter shall not apply to this Agreement.

**14.5    Agreement Binding on Successors in Interest.**  This Agreement shall be binding on and inure to the benefit of the respective heirs, successors, and assigns of the Parties.

**14.6    Execution in Counterparts**.  This Agreement shall become effective upon its execution by all of the Parties' attorneys.  The signatories may execute this Agreement in counterparts.  Each counterpart shall be deemed to be an original, and execution of counterparts shall have the same force and effect as if all signatories had signed the same instrument.  Signatures sent in PDF format by email will constitute sufficient execution of this Agreement.

IN WITNESS WHEREOF, the Parties have caused the Agreement to be executed by their duly authorized attorneys.

***Counsel for Target***

_____

Douglas H. Meal
ROPES & GRAY LLP
800 Boylston Street
Prudential Tower
Boston, Massachusetts 02199
Douglas.Meal@ropesgray.com

***Settlement Class Counsel***

_____

Charles S. Zimmerman
**ZIMMERMAN REED, LLP**
1100 IDS Center, 80 South 8th St.
Minneapolis, MN 55402
Telephone: (612) 341-0400
charles.zimmerman@zimmreed.com

_____

Karl L. Cambronne
**CHESTNUT CAMBRONNE PA**
17 Washington Avenue North, Suite 300
Minneapolis, MN 55401
Telephone: (612) 339-7300
kcambronne@chestnutcambronne.com

35

IN WITNESS WHEREOF, the Parties have caused the Agreement to be executed by their duly authorized attorneys.

***Counsel for Target***

_____

Douglas H. Meal
ROPES & GRAY LLP
800 Boylston Street
Prudential Tower
Boston, Massachusetts 02199
Douglas.Meal@ropesgray.com

***Settlement Class Counsel***

_____

Charles S. Zimmerman
**ZIMMERMAN REED, LLP**
1100 IDS Center, 80 South 8th St.
Minneapolis, MN 55402
Telephone: (612) 341-0400
charles.zimmerman@zimmreed.com

_____

Karl L. Cambronne
**CHESTNUT CAMBRONNE PA**
17 Washington Avenue North, Suite 300
Minneapolis, MN 55401
Telephone: (612) 339-7300
kcambronne@chestnutcambronne.com

IN WITNESS WHEREOF, the Parties have caused the Agreement to be executed

by their duly authorized attorneys.

*Counsel for Target*

Douglas H. Meal
ROPES & GRAY LLP
800 Boylston Street
Prudential Tower
Boston, Massachusetts 02199
Douglas.Meal@ropesgray.com

*Settlement Class Counsel*

Charles S. Zimmerman
**ZIMMERMAN REED, LLP**
1100 IDS Center, 80 South 8th St.
Minneapolis, MN 55402
Telephone: (612) 341-0400
charles.zimmerman@zimmreed.com

Karl L. Cambronne
**CHESTNUT CAMBRONNE PA**
17 Washington Avenue North, Suite 300
Minneapolis, MN 55401
Telephone: (612) 339-7300
kcambronne@chestnutcambronne.com