UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: Target Corporation Customer Data Security Breach Litigation<br><br>This Document Relates to:<br><br>All Financial Institutions Cases | MDL No. 14-2522 (PAM/JJK) |

**DECLARATION OF JEFFREY D. DAHL WITH RESPECT TO IMPLEMENTATION OF THE NOTICE PLAN AND PERFORMANCE OF REQUIRED SETTLEMENT ADMINISTRATION ACTIVITIES**

I, Jeffrey D. Dahl, declare:

1. I am over 21 years of age and am not a party to this action. This declaration is based on my personal knowledge, information provided by the staff of Dahl Administration, LLC ("Dahl"), and information provided by Dahl's media partner. If called as a witness, I could and would testify competently to the facts stated herein.

2. I am Founder and a Principal of Dahl. Dahl was appointed as Settlement Administrator by the Court in its Order dated December 2, 2015 and is responsible for class notice and claims administration. I am a nationally-recognized expert with over 22 years of experience in class action settlement administration. I have provided claims administration services and notice plans for more than 500 class actions involving consumer rights, securities, product liability, fraud, property, employment, and discrimination. I have experience in all areas of settlement administration including notification, claims processing and distribution. I have also served as a Distribution Fund Administrator for the U.S. Securities and Exchange Commission.

1

3. I previously submitted a Declaration of Jeffrey D. Dahl With Respect to Settlement Notice Plan on December 2, 2015. I submit this Declaration in support of Plaintiffs' Motion for Final Approval of Class Action Settlement to establish that the approved Notice Plan was implemented and that Dahl has performed all of the Settlement Administration activities required by the Court's *Order* granting preliminary approval of the Settlement, dated December 2, 2015 ("Order") and the *Settlement Agreement and Release* ("Settlement Agreement").

4. This Declaration describes: (a) compilation of the Settlement Class Member Notice list; (b) the sending of direct mail Notice to potential Settlement Class Members; (c) the sending of direct email Notice to potential Settlement Class Members; (d) implementation of print and digital publication notice plan to banking executives; (e) implementation of print publication notice plan to credit union executives; (f) implementation of social media notice plan to banking industry professionals on the LinkedIn social media platform; (g) issuing of a nationwide press release; (h) creation and maintenance of a settlement website; (i) implementation of a toll-free telephone helpline including both live representative and automated response capabilities; (j) implementation of a reminder Notice campaign via mail and email; (k) other communications with potential Settlement Class Members related to the settlement; (l) an accounting of claims filed; and (m) an accounting of exclusion requests filed.

**COMPILATION OF THE SETTLEMENT CLASS MEMBER NOTICE LIST**

5. In December 2015, Settlement Class Counsel provided Dahl with data files containing information needed to compile a list of Settlement Class Members to be sent Notice. These files included (a) a list of Visa issuers who received CAMS alerts related to the Target Data Breach ("Visa CAMS Alerts") that was produced in the MDL; (b) a list of MasterCard issuers who received ADC alerts related to the Target Data Breach ("MC ADC Alerts) that was produced in the MDL; (c) a list originally provided by Target of issuers who released their

claims either in the Visa ARO or in separate settlements with Target ("Target Release File"); (d) a list originally provided by Visa of issuers who released their claims through the Visa ARO ("Visa Release File"); and (e) a list of contact information for banks and credit unions nationwide.

6. In addition to the files received from Settlement Class Counsel, Dahl obtained a file of bank contact information from the FDIC and a file of credit union contact information from a commercial list source.

7. Dahl reviewed the data contained in the Visa CAMS and MC ADC Alerts files and removed any records for issuers not based in the United States or its Territories.

8. Then, Dahl compared the Visa CAMS and MC ADC Alerts records, for issuers based in the United States, to the lists of issuers who had released their claims as provided in the Target and Visa Release Files, and marked all issuers who could be programmatically identified as having released their claims so they would not be sent Notice. Based on Dahl's data review, claims for 76% of compromised Visa accounts were released by issuers and claims for 45% of compromised MasterCard accounts were released by issuers. Overall, claims for 68% of all Visa and MasterCard compromised accounts were released by issuers.

9. Finally, Dahl compared the resulting list of 6,510 Settlement Class Members (representing 10,943,226 eligible accounts based on the Visa CAMS and MC ADC Alerts files) to the banks and credit unions in the contact list from Settlement Class Counsel, the contact list from the FDIC, and the purchased credit union contact list to append contact mailing address and email address information when available. Dahl was able to find mailing address or email contact information for issuers representing 90% of the eligible accounts, but was unable to obtain mailing address or email contact information for approximately 2,300 issuers representing 10% of the eligible accounts. In order to provide notice of the Settlement to these Settlement

Class Members, Dahl, and its media partner FRWD, implemented a targeted multi-platform media plan as described in paragraphs 14-18 of this Declaration.

10. The final list of potential Settlement Class Members contained 7,091 records suitable for mailing (the "Mailed Notice List"). The Mailed Notice List includes multiple addresses for some institutions. In addition to the Mailed Notice List, any record with an email address contact was compiled into an Emailed Notice List. This List contained 4,465 email address records, which represented 2,422 unique issuers.

## DIRECT MAIL NOTICE

11. Dahl formatted the Notice, Fixed Premium Claim Form, Documentary Support Claim Form, and Request for Exclusion Form materially identical to the versions of those documents that were filed as exhibits to the Settlement Agreement and Distribution Plan and were approved by the Court. On December 22, 2015, the Notice packets were mailed to 7,091 records in the Mailed Notice List. Copies of the Notice, Fixed Premium Claim Form, Documentary Support Claim Form, and Request for Exclusion Form are attached as Exhibits A – D.

12. Dahl was responsible for receiving and re-mailing, when possible, any Notice packets returned as undeliverable by the U.S. Postal Service. As of the March 22, 2016 claim filing deadline, 6,937 Notice packets were delivered and 154 Notice packets were returned as undeliverable. Dahl conducted a web-based search to obtain updated addresses and re-mailed 131 Notice packets, none of which were returned as undeliverable. In all, the U.S. Postal Service completed delivery of 7,068 Notice packets or 99.7% of initial Notice packets mailed.

## DIRECT EMAIL NOTICE

13. Dahl formatted an Email Notice materially identical to the Summary Notice attached as an exhibit to the Settlement Agreement that was approved by the Court. The Email

4

Notice included live hyperlinks to the settlement website. On December 22, 2015, the Email Notices were sent to 4,465 contacts in the Email Notice List. Dahl confirmed a send rate of 67.4% of email addresses attempted, meaning that the email was not bounced by the recipient's server or failed as a bad address. A copy of the Email Notice is attached as Exhibit E.

## PUBLICATION NOTICE TO BANKING EXECUTIVES

14. Dahl's media partner FRWD formatted a Summary Notice materially identical to the Summary Notice attached as an exhibit to the Settlement Agreement that was approved by the Court, suitable for print publication in the *Independent Banker Magazine* and *BankNews Magazine*. The Summary Notices were published in the February 2016 issue of *Independent Banker Magazine* and the January 2016 issue of *BankNews*. In addition to placement of the Summary Notice in these print publications, a Summary Notice with a reminder about the claim filing deadline was published in the March/April issue of the *ABA Banking Journal*. Tearsheets providing proof of publication are attached as Exhibit F.

15. Dahl's media partner FRWD placed digital "belly band" banner notice advertisements and digital display banner notice advertisements on the ABA Banking Journal website. The "belly band" banner notice ad appeared to all site visitors as the main feature on the front page of the digital edition of the *ABA Journal* and users were required to click past the ad to continue into the digital edition providing excellent notice visibility. The digital display banner advertisements appeared on the website's home page. The banner ads contained a brief message about the settlement and a direct hyperlink to the settlement website. The ads appeared 178,432 times during the period from December 29, 2015 through March 22, 2016. Images of the notice ads as they appeared are attached as Exhibit G.

## PUBLICATION NOTICE TO CREDIT UNION EXECUTIVES

16. Dahl's media partner FRWD formatted a Summary Notice materially identical to

5

the Summary Notice attached as an exhibit to the Settlement Agreement that was approved by the Court, suitable for print publication in the *Credit Union Journal*. The Summary Notice was published in the January 11, 2016 issue of the *Credit Union Journal*. A tearsheet providing proof of publication is attached as Exhibit H.

## SOCIAL MEDIA NOTICE

17. Dahl's media partner FRWD placed targeted digital notice advertisements, including a hyperlink to the settlement website, on the LinkedIn social media network. These notice advertisements were targeted to appear on the LinkedIn pages being viewed by LinkedIn users who were members of the following LinkedIn groups: Financial Risk Management Network; Banking Connects; Retail Banking Network; Risk, Regulation & Reporting; Financial Services Regulation; Banking Careers; Finance Club; Bank Jobs; Banking Recruitment; and Financial Regulation. These social media digital notice ads were placed 505,227 times during the social media notice period of December 24, 2015 through January 25, 2016.

## PRINT AND DIGITAL PUBLICATION NOTICE SUMMARY

18. The print and digital publication notice campaigns in combination with the social media notice campaign produced a total of 1,237,199 notice impressions targeted at individuals likely to be senior executives of financial institutions that meet the definition of the Settlement Class. Each publication notice impression was an opportunity for a potential Settlement Class Member to click on the banner or social media notice advertisement, or enter the www.TargetBankSettlement.com address into a web browser, and view the Settlement Website.

## EARNED MEDIA

19. Dahl formatted the Summary Notice attached as an exhibit to the Settlement Agreement that was approved by the Court into a format suitable for issuing as a press release. On December 22, 2016, the press release was issued on PR Newswire's National Newsline.

6

**SETTLEMENT WEBSITE**

20. Dahl developed and implemented a custom settlement website based upon the contents of the Court-approved Notice and Claim Forms. The website contents were approved by counsel and the website was implemented and maintained by Dahl at www.TargetBankSettlement.com. The website was launched on December 22, 2015 and remains available as of the date of this Declaration. A screen capture of the settlement website home page is attached as Exhibit I.

21. The website contains Settlement summary information, important dates and deadlines, frequently-asked questions and responses, the ability to file a claim online (which was disabled after the March 22, 2016 claim filing deadline), downloadable documents related to the settlement, and information on how to contact the settlement administrator.

22. As of April 8, 2016, the settlement website has been visited by 5,027 unique visitors.

**TOLL-FREE HELPLINE**

23. Dahl established a toll-free helpline to assist representatives of potential Settlement Class Members and any other persons seeking information about the Settlement. The helpline is fully automated and operates 24 hours per day, seven days per week. Callers are given the option to speak to a live operator Monday – Friday between the hours of 7:00 a.m. and 7:00 p.m. Central Time. Callers have the option to leave a message for the Settlement Administrator outside of live coverage hours. The helpline was launched on December 22, 2015 and remains available as of the date of this Declaration.

24. The helpline includes automated frequently-asked questions and responses developed based upon the contents of the Court-approved Notice and approved by counsel.

25. As of April 8, 2016, the settlement helpline has received 616 calls.

7

## IMPLEMENTATION OF A REMINDER NOTICE CAMPAIGN

26. Dahl implemented a mailed and emailed reminder Notice campaign to remind potential Settlement Class Members of the claim filing deadline. The reminder Notice campaign included two mailings of the Notice and Claim Form packet, one mailing of a reminder letter from Class Counsel, and two emailed reminder Notices. The mailed reminder Notice packets were sent on March 7, 2016 and March 14, 2016 to potential Settlement Class Members who had not yet filed a claim or request for exclusion as of the date of the respective reminder mailing. The reminder letter from Settlement Class Counsel was mailed on March 10, 2016 to potential Settlement Class Members who had not yet filed a claim or request for exclusion as of that date. The emailed reminder Notice was sent on March 7, 2016 and March 14, 2016 to potential Settlement Class Members who had not yet filed a claim or request for exclusion and who had valid email addresses. Copies of the mailed Notice envelope with reminder wording, the reminder letter from Class Counsel, and the email reminder Notice are attached as Exhibits J, K and L.

## OTHER COMMUNICATIONS

27. As of April 8, 2016, Dahl has received and responded to 100 emails from potential Settlement Class Members.

## ACCOUNTING OF CLAIMS FILED

28. Dahl is responsible for effectuating the claims process. Dahl provided an online claim filing portal through the settlement website that was accessible to Settlement Class Members through the March 22, 2016 claim filing deadline. Claims could also be filed in paper form by mail or courier delivery. As of April 8, 2016, Dahl has received 2,279 claims, of which 1,241 were filed online and 1,038 were filed on paper claim forms. Of the 2,279 claims filed, 66 claims have been identified as invalid – 24 claims were filed by consumers, who are not eligible

for this settlement, and 42 are duplicate claims. Of the 2,213 unique claims filed by institutions, 1,737 (representing 5,085,649 eligible accounts) are Fixed Premium claim forms and 476 (representing 2,250,003 eligible accounts) are Documentary Support claim forms. Claims have been filed for 7,335,652 out of 10,943,226 identified eligible accounts which is a 67% filing rate.

29. Dahl is responsible for evaluating Claim Forms in accordance with the terms of the Plan of Distribution for the Cash Component of the Settlement (*Settlement Agreement Exhibit 1*). As of April 8, 2016, Dahl has receipted all claims submitted and updated its database with the claim data provided by each filer. For claims filed online, Dahl has compiled any supporting documents submitted electronically and linked them to the corresponding claimant record. Dahl has conducted an initial review to identify 42 duplicate claims and 24 claims filed by non-class members.

30. Dahl has also run preliminary calculations of claim values based on the claim data as filed on timely claims. As of April 8, 2016, Dahl has received 32 late claims which are currently under review and are not included in the preliminary calculations of claim values. Dahl's initial calculations result in an estimated total recovery for timely-filed Fixed Premium claims of $7,380,733.50 (4,920,489 accounts x $1.50) and an estimated total recovery for timely-filed Documentary Support claims of $10,749,209.70 (total costs claimed reduced by 40%, then further reduced by any reimbursements claimed). The total estimated recovery for all timely claims is $18,129,943.20 which means it is very unlikely that claim awards in either category will have to be reduced from the maximum recoveries allowed under the settlement.

31. Dahl is preparing a claim processing manual and timeline for review by counsel that follows the processing steps outlined in the Plan of Distribution, including notification to claimants with incomplete claims to provide more information, and notification to any claimants who have a Disputed Claim, as defined in Section 5 of the Plan of Distribution. Dahl is

scheduled to begin its claim review process on April 20, 2016 and Dahl expects the claims validation process, including Dispute Resolution, to take up to 120 days.

## ACCOUNTING OF REQUESTS FOR EXCLUSION

32.     The deadline for potential class members to request to be excluded from this settlement was March 1, 2016.  Dahl has received 39 valid requests for exclusion, totaling 154,138 eligible accounts.  Dahl has received six (6) invalid requests for exclusion, of which four (4) were untimely and two (2) had no eligible accounts.  A current project report documenting claims and opt outs filed as of April 8, 2016 is attached as Exhibit M.

## CONCLUSION

33.     Dahl provided direct notice to potential Class Members by sending mailed and emailed notice to identified Settlement Class Members, representing 90% of identified eligible accounts, where mailing address and email contact information was available.  In addition, the publication notice components of the Notice Plan that was approved by the Court produced more than 1.2 million print and digital impressions targeted at senior executives in organizations likely to meet the definition of the Settlement Class.

34.     The initial mailed Notice reached 99.7% of the recipients to which it was mailed and the initial email Notice delivered to 64.7% of recipients' mailboxes.  In addition, reminder Notices packets were sent twice, a reminder letter from Class Counsel was sent, and email reminder Notices were sent twice to any Settlement Class Members who had not yet filed a claim or opt out by the respective reminder dates.

35.     It is my opinion that the Notice and notice program comply fully with Rule 23 of the Federal Rules of Civil Procedure; meet the notice guidelines established by the Federal Judicial Center's Manual for Complex Litigation, 4th Edition (2004) as well the Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide

(2010); and are consistent with, and even exceed, the notice programs approved previously by both state and federal courts.

36. Based on my experience the claims filing rate of over 67% of the identified eligible accounts far exceeds normal claim response rates for any class action settlement and further supports that the Notice plan was effective.

I declare under penalty of perjury, that the foregoing is true and correct. Executed this 11th day of April, 2016 in Minneapolis, Minnesota.

*[signature]*
Jeffrey D. Dahl
Founder and Principal
Dahl Administration, LLC

11