# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: Target Corporation Customer Data Security Breach Litigation<br><br>This Document Relates to:<br><br> All Consumer Cases | MDL No. 14-2522 (PAM/JJK) |

## CONSUMER PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR CERTIFICATION OF SETTLEMENT CLASS IN ACCORDANCE WITH LIMITED REMAND ORDER

113437

# TABLE OF CONTENTS

**PAGE**

ARGUMENT ........................................................................................................... 3

I.    CLASS PLAINTIFFS SATSIFY RULE 23(A)(4)'S
ADEQUACY REQUIREMENT. ............................................................... 3

    A.    Plaintiffs Have Common Interests with Class Members.
There is no Intraclass Conflict, Let Alone Any
Fundamental Conflict. ....................................................................... 3

    B.    Plaintiffs-Class Representatives Vigorously Prosecuted
the Interests of the Class Through Qualified Counsel. .................... 10

    C.    The Cases Objector Olson Invokes are Readily
Distinguishable. ............................................................................... 18

II.    CLASS PLAINTIFFS SATISFY ALL ADDITIONAL
PREREQUISITES OF RULE 23(A) AND 23(B)(3). ............................... 26

CONCLUSION ..................................................................................................... 30

i

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ...................................................................................... 18, 28, 29

*Blades v. Monsanto Co.*,
  400 F.3d 562 (8th Cir. 2005) ........................................................................ 28

*Bouaphakeo v. Tyson Foods, Inc.*,
  No. 5:07-cv-04009-JAJ, 2016 WL 5868081 (N.D. Iowa Oct. 6, 2016) ....................... 25

*Boyd v. Ozark Air Lines, Inc.*,
  568 F.2d 50 (8th Cir. 1977) .......................................................................... 26

*Carnegie v. Household Int'l, Inc.*,
  376 F.3d 656 (7th Cir. 2004) ........................................................................ 29

*DeBoer v. Mellon Mortg. Co.*,
  64 F.3d 1171 (8th Cir. 1995) ........................................................................ 6, 10

*Dewey v. Volkswagen AG*,
  681 F.3d 170 (3d Cir. 2012) .......................................................................... 19, 20, 21

*Grunin v. Int'l House of Pancakes*,
  513 F.2d 114 (8th Cir. 1975), *cert. denied*, 513 F.2d 114 (1975) ................................ 13

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ...................................................................... 18

*Huyer v. Buckley*,
  849 F.3d 395 (8th Cir. 2017) ........................................................................ 14

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ........................................................................ 11, 12, 15

*In re Ins. Brokerage Antitrust Litig.*,
  579 F.3d 241 (3d Cir. 2009) .......................................................................... 23

*In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*,
  847 F.3d 619 (8th Cir. 2017) ...................................................................... 14

*In re Literary Works in Elec. Databases Copyright Litig.*,
  654 F.3d 242 (2d Cir. 2011) ....................................................................... 22

*In re Lutheran Bhd. Variable Ins. Prods. Co. Sales Practices Litig.*,
  No. 99-MDL-1309 PAM/JCL, 2004 WL 2931352 (D. Minn. Dec. 16, 2004) ............ 27

*In re Monosodium Glutamate Antitrust Litig.*,
  No. CIV. 00MDL1328PAM, 2003 WL 297276 (D. Minn. Feb. 6, 2003) ................... 13

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ................................................................. 14, 15

*In re Pet Food Prods. Liab. Litig.*,
  629 F.3d 333 (3d Cir. 2010) ....................................................................... 23

*In re Target Corp. Customer Data Sec. Breach Litig.*,
  847 F.3d 608 (8th Cir. 2017) ........................................................................ 1

*In re U.S. Bancorp Litig.*,
  291 F.3d 1035 (8th Cir. 2002) ..................................................................... 13

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
  396 F.3d 922 (8th Cir. 2005) ................................................................. 24, 30

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
  364 F. Supp. 2d 980 (D. Minn. 2005) ........................................................... 13

*Johnston v. Comerica Mortg. Corp.*,
  83 F.3d 241 (8th Cir. 1996) ........................................................................ 12

*Lonardo v. Travelers Indem. Co.*,
  706 F. Supp. 2d 766 (N.D. Ohio 2010) ..................................................... 14, 17

*Marshall v. Nat'l Football League*,
  787 F.3d 502 (8th Cir. 2015) ............................................................ 8, 24, 30

*Martin v. Reid*,
  818 F.3d 302 (7th Cir. 2016) ...................................................................... 16

iii

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) ................................................................... 8

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999) ...................................................................... 18, 19

*Paxton v. Union Nat'l Bank*,
   668 F.2d 552 (8th Cir. 1982) ............................................. 3, 10, 26, 27, 28

*Petrovic v. Amoco Oil Co.*,
   200 F.3d 1140 (8th Cir. 1999) ........................................ 18, 19, 20, 23, 24

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ........................................................................... 29

*Poertner v. Gillette Co.*,
   618 F. App'x 624 (11th Cir. 2015) ........................................ 14, 15, 16, 17

*Prof'l Firefighters Ass'n of Omaha, Local 385 v. Zalewski*,
   678 F.3d 640 (8th Cir. 2012) .................................................. 6, 10, 19, 23

*Reynolds v. Nat'l Football League*,
   584 F.2d 280 (8th Cir. 1978) .................................................... 6, 9, 10, 23

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ................................................................. 9

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ............................................................... 14

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011) .................................................................. 7

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) .................................................................. 24, 25

*Uhl v. Thoroughbred Tech. & Telecomm., Inc.*,
   309 F.3d 978 (7th Cir. 2002) .......................................................... 20, 23

*Valley Drug Co. v. Geneva Pharm., Inc.*,
   350 F.3d 1181 (11th Cir. 2003) ............................................................. 9

*Wal-Mart Stores, Inc. v. Dukes,*
   564 U.S. 338 (2011). ........................................................................................... 27

*Ward v. Dixie Nat'l Life Ins. Co.,*
   595 F.3d 164 (4th Cir. 2010) ............................................................................ 9

**Rules**

Fed. R. Civ. P. 23 ................................................................................................... 1

Fed. R. Civ. P. 23(a) ............................................................................................. 26

Fed. R. Civ. P. 23(a)(1) ........................................................................................ 26

Fed. R. Civ. P. 23(a)(2) ........................................................................................ 27

Fed. R. Civ. P. 23(a)(3) ........................................................................................ 28

Fed. R. Civ. P. 23(a)(4) ....................................................................... 1, 3, 23, 26, 28

Fed. R. Civ. P. 23(b)(3) ............................................................................. 26, 28, 29

Fed. R. Civ. P. 23(e) ............................................................................................. 24

Class Counsel respectfully submits this memorandum to assist the Court by (1) addressing the questions posed by the Eighth Circuit in its limited remand opinion; (2) demonstrating that Plaintiffs have satisfied Rule 23(a)(4)'s adequacy of representation requirement, along with all other applicable class certification requirements; and (3) refuting Objector Leif A. Olson's objection and explaining why his challenge to adequacy of representation based on a purported intraclass conflict is wrong as a matter of fact and law. Plaintiffs also respectfully submit proposed findings of fact and conclusions of law for the Court's consideration.

**Eighth Circuit's limited remand**

On February 1, 2017, the United States Court of Appeals for the Eighth Circuit directed this Court to conduct and articulate a rigorous analysis under Fed. R. Civ. P. 23 as applied to this case, specifically concerning Rule 23(a)(4)'s adequacy of representation requirement. *In re Target Corp. Customer Data Sec. Breach Litig.*, 847 F.3d 608 (8th Cir. 2017). The Eighth Circuit instructed this Court to address three questions: (1) "whether an intraclass conflict exists when class members who cannot claim money from a settlement fund are represented by class members who can"; (2) "if there is a conflict, whether it prevents the class representatives 'from fairly and adequately protecting the interests of all of the class members'"; and (3) "if the class is conflicted, whether the conflict is 'fundamental' and requires certification of one or more subclasses with independent representation." 847 F.3d at 613 (internal citation omitted).

**Short answers**

First, there is no intraclass conflict. With regard to adequacy of representation, Plaintiffs-Class Representatives included people who incurred monetary damages and identified losses as a result of the Target data breach, as well as those who did not. Plaintiffs-Class Representatives thus represented the interests of all class members, and in particular including their co-extensive interests in establishing Target's liability under the same claim theories and obtaining remedial relief. The interests of Plaintiffs are aligned with, and not antagonistic to, those of all class members and those common interests were aggressively pursued by Plaintiffs-Class Representatives and Class Counsel in prosecuting and settling this case on favorable terms. Olson has never demonstrated or even articulated any actual conflict or any interest, claim or relief he seeks that was not adequately represented by Plaintiffs-Class Representatives and that is not afforded under the settlement, which benefits all Class Members.

Second, not only is there no conflict but the record shows that Plaintiffs and Class Counsel fairly and adequately represented this class. Third, there is no fundamental conflict that would require subclassing under the facts of this case and settled law. Rather, this class is entirely cohesive: all Class Members brought the same or similar claims arising from a single event. All Class Members could submit a claim for any damages or identified losses stemming from this event, all could opt out to preserve any future claim for damages if they so chose, and all benefit from the substantial equitable relief under the settlement. Objector's claim of lack of adequacy of representation or unfairness consequently make little sense and should be rejected.

**ARGUMENT**

## I.   CLASS PLAINTIFFS SATISFY RULE 23(A)(4)'S ADEQUACY REQUIREMENT.

Fed. R. Civ. P. 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The adequacy requirement has two prongs: whether "(1) the class representatives have common interests with members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton v. Union Nat'l Bank*, 668 F.2d 552, 562-63 (8th Cir. 1982) (citation omitted). Plaintiffs satisfy both prongs.

### A.   Plaintiffs Have Common Interests with Class Members. There is no Intraclass Conflict, Let Alone Any Fundamental Conflict.

Objector Olson's core assertion is that "a subclass within that class – uncertified and unrepresented – receives no recovery or benefit under the settlement." Olson Obj. at 8, ECF No. 513. Olson contends that "[c]lass certification is improper because this zero-recovery subclass is not adequately represented." *Id.* at 10. Olson asserts there is an intraclass conflict because "the class representatives incurred the types of expenses and costs identified in Question 3 of the Claim Form and are eligible to submit claims for class relief" and are not part of "the uncertified zero-recovery subclass." *Id.* at 11. Olson's assertions of an intraclass conflict are unsupported, contradicted by the facts, and without merit.

Plaintiffs' operative Complaint (First Amended Consolidated Class Action Complaint, ECF No. 258, "Complaint") identifies 113 Plaintiffs and describes the harm suffered by each Plaintiff. Compl. ¶¶ 1, 8-113. The Complaint makes clear that Olson's

3

adequacy challenge rests on a false premise. In fact, numerous Plaintiffs alleged monetary damages and specific losses including those in the categories identified in the Claim Form. *See* Decl. of Vincent J. Esades ("Esades Decl.") ¶ 5 (providing examples from the Complaint). Numerous Plaintiffs also did *not* allege incurring such monetary damages or losses, including those listed in the Claim Form, but alleged that they faced future harm as a result of the Target data breach. *See id.* ¶ 6 (citing examples from the Complaint). Olson stated in his Declaration that "I changed passwords associated with the data breach" and "I didn't suffer any losses listed on Question 3 of the Claim Form." Olson Decl. ¶ 6, ECF No. 513-1.

This Court previously appointed Plaintiffs named in the Complaint as Class Representatives upon finding that they are similarly situated to absent Class Members and typical of the Class. Prelim. Approval Order at 3, ECF No. 364. Contrary to Olson's central assertion, as set forth in the Complaint, Plaintiffs included consumers who had incurred monetary damages and identified losses as a result of the Target data breach and those who had not. *See* Compl. ¶¶ 1, 8-113, ECF No. 258; Esades Decl. ¶¶ 5-8. Claims submitted to the settlement administrator reflect the same facts. Many Plaintiffs-Class Representatives submitted claims for monetary damages and identified losses incurred in the Target data breach, while many Plaintiffs-Class Representatives did not submit claims for such damages and losses. *See* Suppl. Decl. of Amy Lake filed Mar. 27,2017 ("Lake Suppl. Decl.") ¶ 3 (indicating that 86 out of 113 Plaintiffs-Class Representatives submitted claims).

4

Plaintiffs-Class Representatives, who included those who alleged suffering monetary damages or identified losses and those who did not, adequately represented the interests of all Class Members. Olson's contention that he was not adequately represented because Plaintiffs consisted only of Class Members who incurred actual monetary losses is incorrect.

Plaintiffs adequately represented and effectively prosecuted all Class Members' interests in establishing Target's liability based on conduct arising from the same event and pursuing damages and equitable relief under the same legal theories. The interests of Plaintiffs and other Class Members were aligned and not antagonistic. All Plaintiffs, regardless of the type of harm alleged, shared the interests of Class Members in recovering for their losses incurred as a result of the Target data breach. All Plaintiffs, whether they incurred monetary damages or identified losses or, like Objectors Olson and Sciaroni, did not, shared the same interest in pursuing equitable relief to improve Target's data security practices, safeguard customers' sensitive data and protect against the threat of future breaches.

The settlement protects all Class Members' interests by properly allocating monetary relief to all Class Member claimants submitting valid documented or self-certification claims for monetary and identified losses. The settlement's significant non-monetary relief benefits all Class Members equally, including those like Olson and Sciaroni who did not file claims and do not contend that they incurred any losses.

Olson fails to identify any interest not adequately represented by the 113 Plaintiffs-Class Representatives. Olson fails to articulate any specific relief or any loss he

5

claims was not afforded under the settlement or pursued by Plaintiffs-Class Representatives. Olson presents no evidence of any actual conflict. *See Reynolds v. Nat'l Football League*, 584 F.2d 280, 286 (8th Cir. 1978) (stating that "theoretical conflicts of interest do not require subclassification, disqualification of the named parties and class counsel, or disapproval of the settlement" and that "[n]o evidence on which a finding of improper actions or actual conflict of interest on the part of the named plaintiffs or their counsel has been presented"); *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1175 (8th Cir. 1995) (finding plaintiff and class counsel fairly and adequately represented the class and "[t]here is no indication that [plaintiff's] interest was antagonistic to the remainder of the class or that the claims were not vigorously pursued"); *Prof'l Firefighters Ass'n of Omaha, Local 385 v. Zalewski*, 678 F.3d 640, 646 (8th Cir. 2012) (finding that "appellant fails to support his contention that such conflict requires separate counsel as a matter of law").

Olson argues that there is an "intraclass conflict between class members who will receive compensation and class members who will receive nothing" and that a purported "subclass" releases claims but "receives no recovery or benefit under the settlement." Olson Obj. at 8, 10, ECF No. 513. These contentions are unfounded and contradicted by the facts of record, which demonstrate that there is no "zero-recovery *de facto* uncertified subclass." *Id.* at 9.

The settlement benefits all Class Members, including those that submit valid claims for losses under the $10 million Settlement Fund; the settlement allows all Class Members who suffered *any* losses as a result of the Target data breach to submit a simple,

6

plain language claim form online or by U.S. mail to the settlement administrator. All

Class Members benefit from Target's obligation to pay costs of notice and settlement

administration, as well as attorneys' fees approved by the Court, in addition to the

Settlement Fund. All Class Members benefit from the substantial equitable relief

provided to all Class Members, whether or not they incurred monetary damages or

identified losses.

No Class Member provides a release of claims without "recovery or benefit under

the settlement." No Class Member releases claims without consideration. Olson's

contention that he "is not eligible for any benefit or recovery under the settlement" is not

accurate. All Class Members, including those who did not incur monetary damages or

identified losses, receive the non-monetary benefits under the settlement including the

significant equitable provisions improving Target's data security practices and reducing

the risk of future breaches. *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 328-29 (3d Cir.

2011) (en banc) (rejecting as "disingenuous" objectors' assertion that certain class

members will receive no money for releasing their claims, noting that "[t]his argument

fails to acknowledge the injunctive relief offered by the settlement, however, which is

intended to benefit all class members regardless of individual monetary recovery").

Olson stated in his appellant brief (without arguing the point in his brief) that the

settlement released "future and statutory claims" without consideration (Opening Br. of

Leif A. Olson at i, 21-22, ECF No. 4386474) and stated in his appellate brief's statement

of the case that "[s]ome of the state claims that remained provide statutory damages" and

cited to statutes in California, the District of Columbia and Rhode Island (*id.* at 5). Olson did not cite these statutes before this Court in his objection.

Regardless, Olson's contention lacks merit. Olson is a resident of Texas. Olson Decl. ¶ 1, ECF No. 513-1. Olson provides no basis for asserting any claim for statutory damages under California, the District of Columbia or Rhode Island statutes. *Cf. Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012) ("[W]e hold that each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place."). Further, Olson concedes he suffered no losses. Olson Decl. ¶ 1. Olson has never identified what claim he seeks to assert in any lawsuit. If he believed he had a claim, Olson could have opted out of the settlement. Olson did not. Lake Suppl. Decl. ¶ 7. *See Marshall v. Nat'l Football League*, 787 F.3d 502, 520 (8th Cir. 2015) (stating "there is a well-established remedy that any class member may elect to preserve what he believes to be a claim worth more than what he may receive under the settlement—opt-out"). And no Class Member released claims, whether for future harm or for statutory damages, without consideration under the settlement, which allowed any class member to submit a claim for any loss and provided significant equitable relief benefiting the entire class. Any Class Member, for instance, could submit a claim for and be reimbursed for the cost of purchasing credit monitoring or identity theft protection. Numerous Plaintiffs alleged in the Complaint incurring such costs (see Esades' Decl. ¶ 8) and thousands of consumers submitted claims under the settlement requesting reimbursement for credit related costs, which include purchasing credit monitoring or identity theft protection. Lake Suppl. Decl. ¶ 6. Olson did not submit

a claim, including for costs associated with protecting against future harm via purchase of credit monitoring or identity theft protection. Lake Suppl. Decl. ¶ 7.

Just as there is no intraclass conflict, there is no fundamental conflict warranting the creation of subclasses or the appointment of separate counsel. As the Eighth Circuit has explained, "'[t]he antagonism which will defeat maintenance of a class action must relate to the subject matter in controversy, as when the representative's claim conflicts with the economic interests of the class.'" *Reynolds*, 584 F.2d at 286 (citation omitted). The adequacy requirement is not implicated absent a "fundamental" conflict. *See Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010) ("For a conflict of interest to defeat the adequacy requirement, that conflict must be fundamental.") (internal quotation marks and citation omitted); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 959 (9th Cir. 2009) ("An absence of material conflicts of interest between the named plaintiffs and their counsel with other class members is central to adequacy . . . ."); *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) ("Significantly, the existence of minor conflicts alone will not defeat a party's claim to class certification: the conflict must be a 'fundamental' one going to the specific issues in controversy.") (citation omitted).

Here, no fundamental conflict exists. Olson has presented no evidence of any actual conflict. The facts of record do not evidence any actual, let alone fundamental, conflict. Plaintiffs-Class Representatives, who, again, include both consumers who had monetary damages and identified losses and consumers who did not, adequately represented and effectively pursued all Class Members' interests in establishing Target's

9

liability and seeking damages and equitable relief. All Plaintiffs-Class Representatives and all Class Members had an interest in pursuing equitable relief to improve Target's data security safeguards and protect against the risk of future breaches. Plaintiffs' and all Class Members' interests were properly protected under the settlement and were adequately represented by the Class Representatives.

Because there is no conflict and no fundamental conflict, appointment of subclasses or separate counsel is unwarranted, unnecessary and would impose unneeded additional costs and further delay payments to Class Members. *See Reynolds*, 584 F.2d at 286 (noting that "theoretical conflicts of interest [do] not require subclassification" and finding that "[n]o evidence on which a finding of improper actions or actual conflict of interest on the part of the named plaintiffs or their counsel has been presented"); *DeBoer*, 64 F.3d at 1175 (finding "[t]here is no indication that [plaintiff's] interest was antagonistic to the remainder of the class or that the claims were not vigorously pursued"); *Prof'l Firefighters*, 678 F.3d at 646 (finding that "appellant fails to support his contention that such conflict requires separate counsel as a matter of law").

## B.    Plaintiffs-Class Representatives Vigorously Prosecuted the Interests of the Class Through Qualified Counsel.

The second prong of the adequacy requirement focuses on "whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton*, 668 F.2d at 562-63 (citation omitted). The Court previously found that Plaintiffs' counsel are experienced in class litigation. Order for Appointment for Lead & Liaison Counsel, ECF No. 64. The Court reaffirmed that determination in its Preliminary

Approval Order at 4, ECF No. 364 (finding that Class Counsel "are experienced and adequate counsel") and again in the Order for Reappointment of Lead and Liaison Counsel, ECF No. 436 ("The Court is satisfied that all appointed counsel have faithfully discharged their duties."). Plaintiffs defer to the Court for its determination, based on the Court's intimate familiarity with the case and the work done by all counsel for the parties who have repeatedly appeared before the Court. Class Counsel respectfully submit that nothing has changed that should alter the Court's previous determinations. Class Counsel's skill and abilities are reflected in the success they achieved in litigating this case and securing a beneficial settlement for all Class Members.

Olson asserts that Class Counsel engaged in self-dealing. Olson Obj. 24-26, ECF No. 513. Sciaroni asserts that Class Counsel engaged in collusion and self-dealing. Sciaroni Obj. at 4, ECF No. 515; Sciaroni's Appellant Br. 30-35, ECF No. 4388056.

These assertions are unfounded, unsupported by a single fact of record and baseless. Nothing in the record suggests any collusion between the parties or self-dealing by any Class Counsel. Whether considered as a challenge to the adequacy of Class Representatives and their counsel under Rule 23(a)(4), or as a challenge to the fairness and adequacy of the settlement under Rule 23(e), Sciaroni's accusation of collusion and Olson's and Sciaroni's accusations of self-dealing are meritless and frivolous. Besides lacking any record support, these assertions ignore the actual settlement terms and the arms-length, adversarial negotiations supervised by Judge Boylan.

Olson and Sciaroni rely upon *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 947 (9th Cir. 2011). *Bluetooth* cautions courts to be alert to

"more subtle signs" that class counsel has pursued their own self interests, including when counsel receive a disproportionate fee or the class receives no monetary distribution, or the presence of a "clear sailing" or a "kicker" provision. *Id. Bluetooth* is inapposite. None of the issues raised in *Bluetooth* is relevant here.

First, this is not a case in which the class obtains no monetary recovery. Class Counsel was not awarded a disproportionate fee award. Class Plaintiffs submitted a fully documented request for a reasonable award of $6.75 million for fees and costs. The Court granted the request, reasoning:

> Despite the objectors protestations to the contrary, the fee request here is not unreasonable under either the lodestar or percentage-of-the-fund methodology. The request amounts to a negative lodestar multiplier of .74, and as noted is 29% of the total monetary payout Target is required to make as part of the settlement. This case has been hard-fought and heavily litigated since its inception. The fee request is not excessive; rather, it is reasonable in light of the complexities and vagaries of this case.

Mem. & Order at 8, ECF No. 645.

District courts within the Eighth Circuit may base a fee award under the lodestar method or the percentage-of-the-fund method. *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 244-45, 246 (8th Cir. 1996). The attorneys' fees and expenses awarded by the Court are reasonable and appropriate under the lodestar method, given the hours spent by Class Counsel in efficiently prosecuting the case, the reasonable hourly rates used by counsel and submitted to the Court at its request early in the litigation, the regular submission of Class Counsel's time and expenses pursuant to the Court's direction, the monitoring by the Court of counsel's time and expenses, the entirely contingent nature of the success achieved by Class Counsel and reflected in the class settlement benefitting all

Class Members, and the quality of Class Counsel's efforts in representing Plaintiffs and

all Class Members. *See Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 127 (8th Cir.

1975) (identifying factors used in evaluating reasonableness of requested fees), *cert.*

*denied*, 513 F.2d 114 (1975). The Court's fee award is also reasonable under the

percentage-of-the-fund methodology based on multiple factors, including the substantial

benefits to the Class provided by the settlement (both the $10 million Settlement Fund

and the significant equitable relief provisions), the substantial risks Plaintiffs and Class

Counsel faced, the contingent nature of the case, the complex issues of fact and law

involved in this litigation, the skill and efficiency of Class Counsel, the significant time

and efforts Class Counsel committed in litigating and settling the case, the

overwhelmingly positive reaction of the Class, and the fact that the fee award,

representing about 28.9% of the common fund benefits to the Class, is well within the

ranges of percentages determined to be reasonable. *See, e.g., In re Xcel Energy, Inc., Sec.,*

*Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 998 (D. Minn. 2005) (noting courts in

the Eighth Circuit and this District "have frequently awarded attorney fees between

twenty-five and thirty-six percent of a common fund in other class actions") (collecting

cases); *In re Monosodium Glutamate Antitrust Litig.*, No. CIV. 00MDL1328PAM, 2003

WL 297276, at *1, *3 (D. Minn. Feb. 6, 2003) (noting that "[m]ost courts applying the

percentage-of-the-fund approach award fees in the 25% to 30% range" and concluding

that "an award of 30% of the settlement fund is reasonable"); *In re U.S. Bancorp Litig.*,

291 F.3d 1035, 1038 (8th Cir. 2002) (36% of $3.5 million settlement fund awarded).

Olson's and Sciaroni's claim that this is an excessive fee award suggestive of self-dealing

is unsupported by the facts and disregards the Court's determination of the reasonableness of the fee award under either the lodestar or percentage-of-the-fund methodology.

Contrary to Objectors' argument, the Court appropriately included notice and costs of administration in valuing the settlement's benefit to the Class for purposes of determining attorneys' fees. The Eighth Circuit recently held that a district court has discretion to include the costs of administration in valuing the overall settlement benefit to the class. *In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 847 F.3d 619, 623 (8th Cir. 2017) (the district court may include "fund administration costs as part of the 'benefit' when calculating the percentage-of-the-benefit fee amount"); *Huyer v. Buckley*, 849 F.3d 395, 398 (8th Cir. 2017) ("the district court did not abuse its discretion by basing its fee award on the total settlement fund, which included administrative costs").[1]

---

[1] *See also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2015) (stating that "[t]he district court did not abuse its discretion in calculating the fee award as a percentage of the total settlement fund, including notice and administrative costs, and litigation expenses"); *Staton v. Boeing Co.*, 327 F.3d 938, 974-75 (9th Cir. 2003) (finding "[t]he district court . . . did not abuse its discretion by including the cost of providing notice to the class . . . as part of its putative fund valuation"); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 802-03 (N.D. Ohio 2010) (including attorneys' fees and costs of class notice and administration in valuing settlement); *Poertner v. Gillette Co.*, 618 F. App'x 624, 630 (11th Cir. 2015) (rejecting objection that "class counsel's slice of the settlement pie is too large" because it was based on objector's "flawed valuation of the settlement pie").

The Court exercised proper discretion in finding that the attorneys' fees, and the costs of administration and of class notice, are part of the total benefit to the Class. Mem. & Order at 6, ECF No. 645. Settlement administrative costs benefit the Class by allowing distribution of the Settlement Fund "in a meaningful and significant way" and notice costs allow Class Members "to learn about a settlement and litigation expenses make the entire action possible." *Online DVD-Rental Antitrust Litig.*, 779 F.3d at 953. Target's agreement to pay attorneys' fees, and class notice and administrative costs, in addition to the $10 million Settlement Fund benefits the Class by ensuring that no class member's distribution is decreased by such fees and costs.

The second and third issues identified in *Bluetooth* (the presence in a settlement of "clear sailing" or "kicker" provisions) are also absent. A "clear sailing" provision is an agreement by a defendant not to challenge plaintiff's request for attorneys' fees. *Poertner*, 618 F. App'x at 630 n.6. The Target Settlement Agreement does not contain a "clear sailing" provision. Target did not agree to pay any amount of attorneys' fees or to refrain from opposing a fee request above a certain amount. Instead, the Settlement Agreement provides that Target *may oppose* Class Counsel's fee request in any amount, while providing that Target will not *appeal* an award not exceeding $6.75 million. Settlement Agreement ¶ 7.2, ECF No. 358-1. *See* Boylan Decl. ¶ 7, ECF No. 614 (stating that "[t]he parties did not reach a 'clear sailing agreement'" and "Lead Class Counsel adamantly and consistently opposed inclusion of any such provision and the parties' counsel avoided entering into any agreement whereby Target would agree not to oppose a fee above a certain amount").

Objectors contend that the "structure" of the settlement invites self-dealing and is somehow unfair to the Class because Target must pay attorneys' fees and the costs of class notice and settlement administration in addition to the $10 million Settlement Fund. On the contrary, these provisions are beneficial to the Class. There is nothing in this settlement that insulates the fee request from judicial review, or interferes with this Court's ability to carefully scrutinize Class Counsel's fee request. Target's agreement to pay attorneys' fees and the costs of class notice and settlement administration, in addition to the $10 million Settlement Fund, benefits the Class and is a "structure" to be encouraged. *See Martin v. Reid*, 818 F.3d 302, 309 (7th Cir. 2016) (approving class action settlement "where the fees are kept entirely separate from the funds that will be available for compensation," stating "[t]his type of provision is to be encouraged, not criticized" and "[i]t was certainly within the district court's discretion to approve it").

Further, the Settlement Agreement does not contain any "kicker" provision, which is a clause providing that any fees not awarded by the court will revert to the defendant. *Poertner*, 618 F. App'x at 630 n.6. *See* Boylan Decl. ¶ 11, ECF No. 614 (stating that "[a]ny suggestion that a 'kicker' arrangement . . . was part of the settlement negotiations is incorrect" and "[s]uch a term was certainly not included in the settlement reached under my direct supervision as the mediator").

Settlement negotiations were structured to avoid any possibility of self-dealing. Judge Boylan's two declarations make clear that only after the parties reached agreement on settling the merits of Plaintiffs' claims did they discuss the issue of attorneys' fees and expenses. Boylan Decl. ¶ 9, ECF No. 360; Boylan Decl. ¶ 10, ECF No. 614. After

16

attesting that the "parties' counsel demonstrated a very high level of professionalism throughout the mediation process" (Boylan Decl. ¶ 5, ECF No. 614), Judge Boylan stated:

> Similarly, Class Counsel's actions, which occurred under my supervision, were entirely proper. Class Counsel never suggested trading or in any way ever exchanged attorneys' fees for class benefits, and in any event, it would have been impossible to do so since the settlement had already been agreed upon before attorneys' fees were discussed. Class Counsel properly structured their negotiations in such a manner as to avoid any conflict between class relief and attorneys' fees.

*Id.* ¶ 10; *see also id.* ¶ 13 (stating that "having observed the extensive rigorous settlement negotiations . . . any contentions concerning any self-dealing in the settlement negotiations in this matter are without merit").

Thus, Objectors' contentions relating to collusion and self-dealing both lack any record support and are contradicted by the facts of record. *See Lonardo*, 706 F. Supp. 2d at 786 (stating that "on the facts of this case, there is nothing to indicate that collusion occurred between the parties on this issue; indeed, all evidence supports the opposite conclusion"); and *Poertner*, 618 F. App'x at 630 ("Further, [Ted] Frank devotes a lot of attention to the settlement's 'red flags' of unfairness: the 'clear-sailing' and 'kicker' clauses relating to class counsel's fees and costs. . . . But we conclude that Frank's self-dealing contention is belied by the record: the parties settled only after engaging in extensive arms-length negotiations moderated by an experienced, court-appointed mediator").

**C.      The Cases Objector Olson Invokes are Readily Distinguishable.**

The conflicts identified in cases Olson cites are not present here. The facts and

procedural postures in *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) and *Ortiz v.*

*Fibreboard Corp.*, 527 U.S. 815 (1999), are far different from those in this litigation. As

the Eighth Circuit has observed:

> *Amchem*, 521 U.S. at 601-02, 117 S. Ct. 2231, and *Ortiz*, 119 S. Ct. at
> 2305, each involved a situation in which the parties agreed upon a class
> definition and a settlement before formally initiating litigation, and then
> presented the district court with the complaint, proposed class, and
> proposed settlement. The difficulty inherent in such a situation is that the
> district court "lack[s] the opportunity, present when a case is litigated, to
> adjust the class, informed by the proceedings as they unfold." *Amchem*, 521
> U.S. at 620, 117 S. Ct. 2231. . . . The difficulties associated with
> settlements like those in *Amchem* and *Ortiz*—the possibility of "collusion
> between class counsel and the defendant . . . [and] the need for additional
> protections when the settlement is not negotiated by a court designated
> class representative," *Hanlon v. Chrysler Corporation*, 150 F.3d 1011,
> 1026 (9th Cir. 1998)—are therefore not present here.

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1145-46 (8th Cir. 1999). The Eighth Circuit

concluded: "We also do not believe, as the objector suggests, that the stark conflicts of

interest that the Supreme Court discerned in *Amchem* and *Ortiz* are present here." *Id.* at

1146. The Eighth Circuit in *Petrovic* further reasoned that *Amchem* and *Ortiz* involved a

conflict between class members who had suffered asbestos-related injuries and those who

might develop such injuries:

> We note that the injuries involved in those cases were extraordinarily
> various, both in terms of the harm sustained and the duration endured. Our
> case, on the other hand, involves a discrete and identified class that has
> suffered a harm the extent of which has largely been ascertained.

18

*Id.* The Eighth Circuit subsequently distinguished *Ortiz* and *Amchem* on similar grounds. *See Prof'l Firefighters,* 678 F.3d at 646-47 (citing *Petrovic* in distinguishing *Ortiz* and *Amchem* as involving multifarious and physical harm, and further reasoning that *Ortiz* involved certifying a mandatory settlement class under Rule 23(b)(1)(B) and not a Rule 23(b)(3) class from which members could exercise their right to opt out). The Eighth Circuit's reasoning in *Petrovic* and *Prof'l Firefighters* applies with equal force here. This case involves a discrete, identified class, whose members suffered harms that have largely been ascertained. The interests of absent class members do not differ from but are aligned with those of the Plaintiffs-Class Representatives.

Olson primarily relies upon a section of *Dewey v. Volkswagen AG*, 681 F.3d 170 (3d Cir. 2012). The settlement in *Dewey* expressly divided the class into two groups, one of which had the right to reimbursement for certain qualifying damages to be paid *before* the damages claims of class members in a second group were paid. *Id.* at 174-76. Importantly, all of the representative class plaintiffs in *Dewey* were in the first group; no representative plaintiff was a member of the second group. *Id.* at 175. The Third Circuit determined that plaintiffs were inadequate class representatives because their interests and the interests of the second group did not align. *Id.* at 187-88. By contrast, here, Plaintiffs did not create two groups of class members. The settlement appropriately covers a single class. Importantly, Plaintiffs-Class Representatives include consumers who incurred monetary damages and identified losses, as well as numerous consumers who, like Olson and Sciaroni, did not. Additionally, unlike in *Dewey*, all Class Members who submitted eligible claims will receive compensatory payments at the same time. *See*

*also Petrovic*, 200 F.3d at 1147 (finding inapplicable cases cited by objectors that "included distinct subgroups of plaintiffs, but all of the class representatives in each case came from only one of the subgroups").

Olson does not mention the more relevant holding of the Third Circuit in *Dewey*. That case involved a class-wide settlement of claims alleging that certain Volkswagen models were prone to leaking. 681 F.3d at 174. A group of objectors argued that the settlement "presents a classic *Amchem* conflict between 'past' claimants (those who have already suffered damage) and 'future' claimants (those who have not yet suffered damage)." *Id.* at 185. Those objectors argued that "because the representative plaintiffs can seek damages for their past leakage, which makes up the vast majority of their damages, they will likely value future protections less than class members with no leakage-related damages." *Id.* at 186. The Third Circuit rejected that argument, finding no "fundamental intra-class conflict sufficient to undermine Rule 23(a)(4)" even though the named plaintiffs may have "value[d] protections for future claimants less than other members of the class." *Id.* The fact that "each class member . . . derives different amounts of utility from any class-wide settlement" hardly shows that a fundamental conflict exists. *Id.* (citation omitted). The court's holding was buttressed by evidence of the settlement negotiations, which showed that the class representatives "seriously pursue[d] protections for future claimants." *Id.*

Similarly, the Seventh Circuit has held that a named plaintiff with a "real stake in all aspects of the case" and an "equal incentive to represent both sides" was an adequate class representative even though some class members would have their property

20

encumbered by the challenged cable line and others would not, and some class members would receive "direct cash payments" and others would not. *Uhl v. Thoroughbred Tech. & Telecomm., Inc.*, 309 F.3d 978, 985-86 (7th Cir. 2002). Plaintiffs-Class Representatives here had a "real stake" in both the equitable relief and the damages relief, and they had every incentive to maximize both types of relief.

Further, all Class Members who suffered any losses may share in the $10 million cash component by submitting a documented claim, or receive a pro rata share of the settlement following payment of documented claims and service awards. Several years have passed since the Target data breach. Olson cannot credibly maintain that in a breach comprising only payment card information, consumers who have already replaced their exposed payment cards nonetheless now face likely future economic loss. *See Dewey*, 681 F.3d at 186 (rejecting similar argument by class action objectors as "unduly speculative"). In any event, the mere possibility of future economic loss under these circumstances does not render it unfair or inequitable for the damages claims of the class to be released. All Class Members are free to submit claims for monetary damages and identified losses of any type, including those categories listed in the claim form and in the other damages option included in the claim form. There is simply no conflict within this class: all of its members were exposed to the Target data breach arising from the same challenged conduct by Target, and all benefit from Target's agreement to pay fees and costs awarded by the Court and the costs of class notice, as well as from the settlement's significant equitable relief. No group of Class Members was disfavored under the settlement. All Class Members were treated fairly. The record demonstrates that Class

21

Counsel seriously pursued, and obtained, meaningful equitable relief benefiting the class as a whole.

Olson's reliance on *In re Literary Works in Electronic Databases Copyright Litigation*, 654 F.3d 242 (2d Cir. 2011), is equally misplaced. That settlement divided the claims of plaintiffs who suffered damages into three categories (denominated by the district court as categories A, B and C), with a damages formula for each category of claims. *Id.* at 246. The *Literary Works* settlement capped defendants' total liability through a provision that disfavored only one of the damages groups (group C). *Id.* ("If the total of all claims . . . exceeds $18 million, then the Settlement reduces compensation for Category C claims *pro rata* until the total compensation is $18 million."). In other words, the *Literary Works* settlement disfavored one category of claims by placing all of the risk that claims might exceed the overall settlement amount on a single category of claims. By contrast, the Target settlement does not divide claimants who suffered damages into categories with a damages formula for each category. The Target settlement contains no provision comparable to the one in *Literary Works* disadvantaging one subgroup of class members who suffered damages as a result of Target's alleged conduct. Instead, all Class Members who suffered any type of loss could submit a claim.

To the extent that Objectors challenge adequacy of representation, or the fairness of the settlement, on grounds that Class Members will receive varying amounts of damages, the contention ignores settled law. No conflict of interest arises from the fact that a settlement provides for different recoveries from various class members:

> If the objectors mean to maintain that a conflict of interest requiring
> subdivision is created when some class members receive more than other
> class members in a settlement, we think that the argument is untenable. It
> seems to us that almost every settlement will involve different awards for
> various class members.

*Petrovic*, 200 F.3d at 1146. *See also Prof'l Firefighters,* 678 F.3d at 646-47 (rejecting

challenge to adequacy requirement, finding appellant failed to demonstrate potential

conflict "requires separate counsel as a matter of law" where same counsel represented

both active and retired employees, their interests "aligned in many significant ways" and

class representatives included both active and retired employees); *Reynolds,* 584 F.2d at

285-87 (8th Cir. 1978) (affirming "conclusion that theoretical conflicts of interest do not

require subclassification . . . or disapproval of the settlement" and finding no actual

conflict); *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 346 (3d Cir. 2010) (noting

"varied relief among class members with differing claims . . . is not unusual" and such

differences "do not, without more, demonstrate conflicting or antagonistic interests

within the class"); *Uhl*, 309 F.3d at 986 (fact class members receive different

compensation under class settlement "does not make it novel or unfair") (citing *Petrovic*,

200 F.3d at 1147); *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 272-73 (3d Cir.

2009) (noting plan of allocation "was carefully devised to ensure a fair distribution of the

settlement fund" and "merely created a structure for ensuring that reimbursement [was]

tied to the extent of damages incurred").

Olson's assertion that the Class Representatives were inadequate because the

settlement releases claims of Class Members who did not suffer monetary losses without

compensation is wrong. Whether viewed through a lens of adequacy of representation

23

under Rule 23(a)(4) or of the fairness of the settlement under Rule 23(e), the Target

settlement's allocation of the $10 million Settlement Fund to Class Members who, unlike

Olson and Sciaroni, suffered monetary damages and identified losses is proper and

provides no basis for disturbing the parties' agreement.

In *Marshall v. Nat'l Football League*, 787 F.3d 502 (8th Cir. 2015), objectors

argued that the settlement provided no benefit to the class because it did not provide for

direct payments to class members. *Id.* at 505-06, 509. The Eighth Circuit disagreed,

pointing out that "[p]lainly, this is not true and the argument is wholly without merit":

> Appellants also argue the settlement fails because of the financial payment
> for the class is made through a third-party organization and not directly to
> each class member. But we have never required that a settlement agreement
> specifically provide for a direct financial payment to each class member,
> and the mere fact that some members of a class may not receive a direct
> payment is not dispositive. *See In re Wireless*, 396 F.3d at 934; *see also
> Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1146 (8th Cir. 1999) ("It seems
> to us that almost every settlement will involve different awards for various
> class members.").

*Id.* at 509. As in *Marshall*, the Target settlement benefits all Class Members by providing

direct payments to claimants filing documented claims, providing direct payments to

claimants filing undocumented claims, and benefiting all class members, including those

who did not suffer monetary damages or identified losses, such as Olson and Sciaroni,

through significant non-monetary relief.

Allocation of the Settlement Fund to Class Members who submitted timely

documented or undocumented claims for monetary damages or identified losses is proper

and appropriate under the facts and law. In *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct.

1036 (2016), a class action alleging failure to pay overtime compensation required under

the Fair Labor Standards Act of 1938, the Supreme Court upheld certification of the

class. Defendant argued plaintiffs were required to demonstrate uninjured class members

would not recover damages awarded by the jury. *Id.* at 1049. The Supreme Court decided

the issue was not properly before it, because the damages awarded by the jury had not yet

been allocated. In concurring, Chief Justice Roberts clarified that the damages award

could only be distributed to injured class members:

> Article III does not give federal courts the power to order relief
> to any uninjured plaintiff, class action or not. The Judiciary's role is
> limited "to provid[ing] relief to claimants, in individual or class actions,
> who have suffered, or will imminently suffer, actual harm.' Therefore, if
> there is no way to ensure that the jury's damages award goes only to
> injured class members, that award cannot stand.

*Id.* at 1053 (Roberts, C.J., concurring) (internal citation omitted). On remand, the district

court allocated the jury's damages award in a manner the court determined "satisfies the

Supreme Court case by ensuring no uninjured class members receive damages."

*Bouaphakeo v. Tyson Foods, Inc.*, No. 5:07-cv-04009-JAJ, 2016 WL 5868081, at *4

(N.D. Iowa Oct. 6, 2016). The allocation method approved by the district court in *Tyson

Foods* "ensure[d] uninjured individuals do not receive any of the jury's aggregate award"

by eliminating those individuals who were not injured (who could not have worked

uncompensated overtime) and by eliminating those who were injured but suffered

damages of less than $50. *Id.*

    *Tyson Foods* is instructive here. Any class member who suffered any loss as a

result of the Target breach could submit a claim to the Settlement Administrator. The

settlement does not establish any minimum amount of losses that will be compensated

(while providing a $10,000 per claim maximum). The Claim Form is straightforward, written in plain language and could be submitted online or via U.S. mail. The settlement logically allocates the Settlement Fund of $10 million to claimants who incurred losses and who submitted a timely documented or undocumented claim to the Settlement Administrator. Distribution of the Settlement Fund to claimants suffering monetary damages and identified losses is entirely appropriate.

## II.     CLASS PLAINTIFFS SATISFY ALL ADDITIONAL PREREQUISITES OF RULE 23(a) AND 23(b)(3).

Although the Eighth Circuit directed a limited remand focused only on Olson's objection to Rule 23(a)(4)'s requirement of adequacy of representation, Plaintiffs satisfy all applicable requirements for certification of the Settlement Class under Fed. R. Civ. P. 23(a) and 23(b)(3).

**Numerosity**. Considering the large size of the class, consisting of at least 97 million members, the small size of individual claims, the tremendous burden that would be placed on the Court and the parties from trying millions of individual suits, and the fact that Class Members are widely distributed across the United States (*see* Lake Supplemental Declaration ¶ 4, stating claims were submitted from individuals in all 50 states), it is clear that the class is so numerous that joinder of all parties is impracticable and the numerosity requirement of Rule 23(a)(1) is met. *See*, *e.g.*, *Paxton v. Union Nat'l Bank*, 688 F.2d at 559 (stating that district courts consider a number of factors in determining whether the numerosity requirement is satisfied, the "most obvious of which is, of course, the number of persons in the proposed class"); *Boyd v. Ozark Air Lines,*

*Inc.*, 568 F.2d 50, 54 (8th Cir. 1977) ("No arbitrary rules on the size of classes have been established by the courts and the question of what constitutes impracticability depends upon the facts of each case.") (citation omitted).

**Commonality**. The commonality requirement under Rule 23(a)(2) (that there exist "questions of law or fact common to the class") "does not require that every question of law or fact be common to every member of the class." *Paxton*, 688 F.2d at 561 (citations omitted); *see also In re Lutheran Bhd. Variable Ins. Prods. Co. Sales Practices Litig.*, No. 99-MDL-1309 PAM/JCL, 2004 WL 2931352, at *7 (D. Minn. Dec. 16, 2004) (noting that "[t]he commonality requirement . . . generally is satisfied when members of the proposed Class share at least one common factual or legal issue"). Commonality is satisfied as long as the plaintiffs' claims depend upon a "common contention . . . [that] must be of such a nature that is capable of classwide resolution—which means that determination of its truth or falsity would resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Plaintiffs' operative Complaint identifies numerous common issues, including whether Target owed a duty to Plaintiffs and the Class to adequately protect their sensitive data and provide timely notice of the Target data breach, whether Target breached its duties, and whether Target failed to inform Plaintiffs and Class Members that its security practices were allegedly inadequate. Compl. ¶ 248, ECF No. 258. Common issues, including the adequacy of Target's computer system and whether they reasonably safeguarded customers' sensitive data, underlie Plaintiffs' and each Class Member's claims. The commonality requirement is met.

27

**Typicality**. So too is the typicality requirement under Rule 23(a)(3) (requiring that "the claims or defenses of the representative parties are typical of the claims or defenses of the class"). Plaintiffs' claims and the claims of the Class arise from the same course of conduct by Target and the same event (the data breach). Plaintiffs would use the same evidence in establishing their individual claims as would be used to prove Class Members' claims. Absent Class Members have the same or similar grievances as Plaintiffs. Plaintiffs and Class Members seek damages and equitable relief based on the same event and based on the same legal or remedial theories. Typicality is satisfied. *See Paxton*, 668 F.2d at 561-62 (noting that the typicality requirement "is generally considered to be satisfied 'if the claims or defenses of the representatives and members of the class stem from a single event or are based on the same legal or remedial theory'") (citation omitted).

**Adequacy of Representation**. For the above reasons, Rule 23(a)(4)'s adequacy requirement is satisfied.

**Predominance**. Rule 23(b)(3) allows class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members." The predominance inquiry tests whether the proposed class is sufficiently cohesive to warrant class adjudication. *Amchem*, 521 U.S. at 623. Predominance analysis focuses on whether evidence is available to prove plaintiffs' claims on a common basis predominates over evidence particular to individual class members. *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005). Here, Plaintiffs would rely upon evidence common to the Class to prove their claims. The same proof

28

would be relied upon by Class Plaintiffs and each Class Member in providing their claims. Predominating, common questions—including whether Target failed to take adequate measures to reasonably safeguard its data systems, whether Target failed to disclose to Plaintiffs and members of the Class that its computer systems and security practices were allegedly inadequate to reasonably safeguard customers' sensitive data, and whether Target failed to promptly notify customers of the data breach—represent a significant aspect of this case and may be resolved for all Class Members in a single judgment. Under these circumstances, the questions of law or fact common to the Settlement Class predominate over any questions affecting only individual members.

**Superiority**. Rule 23(b)(3) allows certification of a class if the court finds that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Here, certification will "'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated.'" *Amchem*, 521 U.S. at 615 (citation omitted). Certification will avoid millions of individual adjudications that would otherwise place an enormous strain on judicial resources and those of the parties. Because of the small amounts at stake in the individual claims of Plaintiffs and Class Members, a class action provides the only practical available means of pursuing their claims. *See Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) (noting that "[t]he *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.00"). Class certification here will further an essential purpose of class actions. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (noting that "[c]lass actions

29

also may permit the plaintiffs to pool claims which would be uneconomical to litigate individually" and that "most of the plaintiffs would have no realistic day in court if a class action were not available"). A class action is superior to other available methods for fairly and efficiently adjudicating this litigation. The superiority requirement is satisfied.

## CONCLUSION

Beyond the objectors' unsupported, meritless arguments lies an issue of justice. The Settlement Administrator has received 225,793 timely claims. Lake Suppl. Decl. ¶ 4. None of these claims can be paid under the settlement, and its significant benefits cannot be distributed to any Class Member, including claimants who suffered monetary damages or identified losses as a result of the Target data breach, until objections are resolved—specifically, until the objections of two objectors (out of a class of at least 97 million) who suffered no monetary damages or identified losses and whose objections lack merit are resolved. *See Marshall*, 787 F.3d at 513 (noting that "[i]t is obvious that in approving the settlement, the district court overwhelmingly believed the settlement was fair, reasonable, and adequate for the majority of the class, which happened to be the quiet, absent majority" and that refusal "to give credence to the vocal minority" and focus on the vast majority of class members "was in accord with the district court's 'duty to the silent majority as well as the vocal minority'") (citing *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 933 (8th Cir. 2005)).

For the above reasons, Plaintiffs respectfully ask that the Court grant Plaintiffs' Motion, certify the Settlement Class and certify to the Eighth Circuit the Court's findings and conclusions.

Date: March 27, 2017

Respectfully submitted,

s/ *Vincent J. Esades*
Vincent J. Esades (249361)
David Woodward (018844X)
HEINS MILLS & OLSON, P.L.C.
310 Clifton Avenue
Minneapolis, MN 55403
Tel.: (612) 338-4605
Fax: (612) 338-4692
vesades@heinsmills.com
dwoodward@heinsmills.com

**Lead Counsel Consumer Cases**

E. Michelle Drake (0387366)
BERGER & MONTAGUE, P.C.
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Tel.: (612) 594-5999
emdrake@bm.net

**Liaison Counsel Consumer Cases**

John A. Yanchunis
MORGAN & MORGAN COMPLEX
LITIGATION GROUP, PA
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
Fax: (813) 223-5402
jyanchunis@forthepeople.com

**Executive Committee - Coordinating
Lead and Liaison Counsel**

Daniel C. Girard
Jordan Elias
GIRARD GIBBS LLP
601 California Street, 14th Floor
San Francisco, CA 94108
Tel.: (415) 981-4800
Fax: (415) 981-4846

DCG@girardgibbs.com
JE@girardgibbs.com

Ariana J. Tadler
MILBERG LLP
One Pennsylvania Plaza, 49th Floor
New York, NY 10119
Tel.: (212) 594-5300
Fax: (212) 868-1229
atadler@milberg.com

Norman E. Siegel
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Tel.: (816) 714-7100
Fax: (816) 714-7101
siegel@stuevesiegel.com

**Steering Committee Consumer Cases**