# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

_____

In re: Target Corporation Customer
Data Security Breach Litigation

This Document Relates to:

All Consumer Cases

_____

LEIF OLSON,

                Objector.

MDL No. 14-2522 (PAM/JJK)

## OBJECTOR OLSON'S RESPONSE TO
## CONSUMER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................... ii

TABLE OF AUTHORITIES ............................................................................. iv

INTRODUCTION ............................................................................................. 1

ARGUMENT ..................................................................................................... 3

I.  Class certification must be denied because the settlement class fails to satisfy Rule 23(a)(4) adequacy of representation. ........................................... 3

    A.  The interests of class members who can submit claims for compensation conflict with class members that are part of an unrepresented, uncertified "subclass" who receive nothing. .............. 5

        1.  Class members' interests conflict with the zero-recovery subclass members that have only future-damages claims............. 6

        2.  Class members have conflicting interests regarding statutory-damages claims. ................................................................................ 10

    B.  Plaintiffs' arguments defending the intraclass conflicts are unavailing. ................................................................................................ 15

        1.  Plaintiffs confuse 23(e) adequacy of relief with 23(a)(4) adequacy of representation: the injunctive relief cannot cure the intraclass conflicts............................................................... 15

        2.  Class members' shared interest in seeking damages and injunctive relief does not eliminate the intraclass conflicts. ........ 19

        3.  Class members' ability to opt out does not cure the intraclass conflicts.......................................................................... 20

        4.  Class representatives' failure to file a claim does not cure the intraclass conflicts: separate certified subclasses with separate counsel are required. ........................................................ 22

        5.  The other cases cited by plaintiffs are inapposite or distinguishable. ................................................................................ 25

II.  Certification is also inappropriate under Rule 23(b)(3) because common questions of fact and law do not predominate and the claims process is not a superior method of adjudication. ........................................................30

  A.  Rule 23(b)(3) predominance cannot be satisfied. ....................................31

  B.  Rule 23(b)(3) superiority is not satisfied. ...................................................36

III.  The Settlement includes warning signs of self-dealing including disproportionate fee, clear-sailing and kicker provisions. ...........................40

# TABLE OF AUTHORITIES

## Cases

*Allen v. Similasan Corp.*, 318 F.R.D. 423 (S.D. Cal. 2016) ........................................ 18, 39

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ............................................... passim

*Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023 (8th Cir. 2010) ........................................ 30

*Berger v. Compaq Computer Corp.*, 257 F.3d 475 (5th Cir. 2001) ................................... 23

*Bishop v. Comm. on Prof'l Ethics and Conduct of Iowa State Bar Ass'n*, 686 F.2d 1278
  (8th Cir. 1982) ......................................................................................................... 3

*Bouaphakeo v. Tyson Foods, Inc.*, No. 5:07-cv-04009-JAJ, 2016 WL 5868081 (N.D.
  Iowa Oct. 6, 2016) ................................................................................................. 30

*Brown v. Wells Fargo & Co.*, No. 11-1362 (JRT/JJG), 2013 U.S. Dist. LEXIS 181262 (D.
  Minn. Dec. 30, 2013) ............................................................................................. 39

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) ........................................................ 32

*Daniels v. Aeropostale West*, No. C 12-05755 WHA, 2014 U.S. Dist. LEXIS 74081
  (N.D. Cal. May 29, 2014) ....................................................................................... 39

*DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171 (8th Cir. 1995) ........................................... 25

*Dewey v. Volkswagen AG*, 681 F.3d 170 (3d Cir. 2012) ............................................. passim

*Epstein v. MCA, Inc.*, 50 F.3d 644 (9th Cir. 1995), *rev'd on other grounds sub nom.*
  *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367 (1996) ....................................... 20

*Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014) ...................................................... 23

*Halvorson v. Auto-Owners Insurance Co.*, 718 F.3d 773 (8th Cir. 2013) ....................... 36

*Hans v. Tharaldson*, No. 3:05-cv-115, 2010 U.S. Dist. LEXIS 45927 (D.N.D. May 7,
  2010) ...................................................................................................................... 5

*Huyer v. Buckley*, 849 F.3d 395 (8th Cir. 2017) ............................................................. 40

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ........................ 41

*In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012 (7th Cir. 2002) .............................. 14, 34

*In re Community Bank of N. Va.*, 622 F.3d 275 (3d Cir. 2010) ......................................... 5

*In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013) .................................... 23, 42

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) 9, 20

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013) ................................................................................................................. 33

*In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241 (3d Cir. 2009) .................................. 29

*In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 847 F.3d 619 (8th Cir. 2017) ........................................................................................................... 40

*In re Literary Works*, 654 F.3d 242 (2d Cir. 2011) ....................................................passim

*In re NCAA Student-Athlete Concussion Injury Litig.*, No. 13 C 9116, 2014 U.S. Dist. LEXIS 174334 (N.D. Ill. Dec. 17, 2014) ........................................................................ 38

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223 (2d Cir. 2016) ......................................................................................................... 5, 19

*In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333 (3d Cir. 2010) ...................................... 29

*In re St. Jude Medical, Inc.*, 425 F.3d 1116 (8th Cir. 2005) ............................................. 34

*In re Uponor, Inc.*, 716 F.3d 1057 (8th Cir. 2013) ........................................................... 21

*Koby v. ARS Nat'l Servs.*, 846 F.3d 1071 (9th Cir. 2017) ................................................ 18

*Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963 (7th Cir. 2016) ........................ 30

*Marshall v. National Football League*, 787 F.3d 502 (8th Cir. 2015) .............................. 16

*Martin v. Reid*, 818 F.2d 302 (7th Cir. 2016) ............................................................ 17, 42

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) ....................................... 35

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ........................................................passim

*Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014) ................................................ 41, 42

*Perras v. H&R Block*, 789 F.3d 914 (8th Cir. 2015).........................................................35

*Peterson v. Aaron's, Inc.*, No. 1:14-CV-1919-TWT, 2017 U.S. Dist. LEXIS 10117 (N.D. Ga. Jan. 24, 2017) ......................................................................................................35

*Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) .............................. 27, 28, 29

*Phillips v. Klassen*, 502 F.2d 362 (D.C. Cir. 1974).........................................................20

*Piambino v. Bailey*, 757 F.2d 1112 (11th Cir. 1985) ..........................................................4

*Professional Firefighters Ass'n of Omaha, Local 385 v. Zalewski*, 678 F.3d 640 (8th Cir. 2012)............................................................................................................... 25, 26, 29

*Rapp v. Green Tree Servicing, LLC*, 302 F.R.D. 505 (D. Minn. 2014) ...........................36

*Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014)......................................23, 40

*Reid v. Unilever United States, Inc.*, No. 12 C 6058, 2015 U.S. Dist. LEXIS 75383 (N.D. Ill. June 10, 2015)...............................................................................................42

*Reynolds v. Nat'l Football League*, 584 F.2d 280 (8th Cir. 1978) ..............................25, 26

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ..................................26, 27

*Sonmore v. CheckRite Recovery Servs.*, 206 F.R.D. 257 (D. Minn. 2001)......................39

*Sullivan v. DB Investments, Inc.*, 667 F.3d 273 (3d Cir. 2011).......................................16

*Tyler v. Alltel Corp.*, 265 F.R.D. 415 (E.D. Ark. 2010) ...................................................35

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016), *on remand Bouaphakeo v. Tyson Foods, Inc.*, No. 5:07-cv-04009-JAJ, 2016 WL 5868081. ..................................30

*Uhl v. Thoroughbred Tech. & Telecomm., Inc.*, 309 F.3d 978 (7th Cir. 2002)...........28, 29

*Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181 (11th Cir. 2003)...............26, 27

*Vervaecke v. Chiles, Heider & Co.*, 578 F.2d 713 (8th Cir. 1978) ...................................... 4

*Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164 (4th Cir. 2010)...................................... 26

**Statutes and Rules**

15 U.S.C. § 1643 ............................................................................................... 38

Cal. Civ. Code § 1798.84(c) ...................................................................... 11, 13

Fed. R. Civ. P. 23(a)(4) ....................................................................................... 3

Fed. R. Civ. P. 23(b)(3)............................................................................... 31, 36

R.I. Gen. Laws § 6-13.1-5.2(a) ...................................................................... 11

**Other Authorities**

5 J. Moore, T. Chorvat, D. Feinberg, R. Marmer, & J. Solovy, Moore's Federal
    Practice § 23.25 (3d ed. 1998).............................................................. 23, 24

6 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 3:26 (4th ed.
    2002)...................................................................................................... 14

7A Charles Alan Wright *et al.*, FEDERAL PRACTICE & PROCEDURE § 1780.1 (3d ed.
    2014)...................................................................................................... 35

C. Wright & A. Miller, Federal Practice and Procedure § 1765 (1972) ...................... 4

# INTRODUCTION

As Olson pointed out two years ago, this single global settlement class has a fatal flaw: there are dozens of different types of causes of actions, many of which have already survived a motion to dismiss, but only one type of class member does not waive all of their rights in this settlement in exchange for nothing more than an opt-out would receive. Class members with potential future claims and class members with statutory claims did not have the separate legal representation that Rule 23(a)(4) and the Constitution require. Plaintiffs, who previously induced this Court to commit multiple reversible errors, once again disserve this Court by failing to provide any analysis of the intraclass conflicts, much less the rigorous analysis the Eighth Circuit requires. Rather than analyzing the various legal claims at issue and the varying interests of the class members, plaintiffs simply repeat again and again their conclusion that there was no conflict. This *ipse dixit* was insufficient when they failed to meet their burden at the preliminary approval stage, and plaintiffs' conclusory legal arguments are the same ones already rejected by the Eighth Circuit.

Nor can plaintiffs possibly have met their burden. Plaintiffs **admitted** their fatal conflict of interest at the November 2015 fairness hearing when they told the Court that they deliberately structured the settlement to favor one set of claimants over another—a fact that they ignored in the Eighth Circuit and again in their papers. The only new evidence plaintiffs propound, the second-hand evidence of the Lake Declaration, does not change this, but also fails to help their case. That some named plaintiffs did not file a claim does not solve the conflict of interest caused the lack of separate legal representation for the zeroed-out

subclass that comprises over 99% of the class. Indeed, it does not even show what plaintiffs claim: at least twenty-three of the class representatives who did not submit claims alleged specific damages and losses for which a claim could have been submitted. The Lake Declaration hardly shows that the class representatives protected the rights of absent class members; rather, it shows that these class representatives *did not even protect their own rights*. The only proper inference is that the class representatives utterly abdicated their role in the case. *See* Section I.B.4 below. But, again, the dispute is beside the point: the certification fails because of the lack of separate representation for this unsubclassed set of class members.

Section I reiterates that class certification is impossible because of the fatal conflicts of interest precluding satisfaction of Rule 23(a)(4)'s requirements. Plaintiffs' arguments defending the intraclass conflicts are unavailing. Among other problems, they hang up on the word "adequacy," but cases discussing the adequacy requirement of Rule 23(e) have nothing to do with the adjudication of conflicts of interest under Rule 23(a)(4). Any common interest in injunctive relief does not eliminate the other intraclass conflicts; nor should this court accept the facially bogus argument that Rule 23(b)(3) opt-out rights make conflicts of interest irrelevant. The other cases cited by plaintiffs are inapposite or distinguishable.

The questions the Eighth Circuit posed have three indisputable answers. An intraclass conflict exists because class members who cannot claim money from a settlement fund are represented by attorneys furthering only the interests of class members who can. This conflict prevents the class representatives and

class counsel from fairly and adequately protecting the interests of all the class members. The conflict is fundamental and requires certification of one or more subclasses with independent representation. This settlement class cannot be certified.

Plaintiffs ask this Court to make findings that go beyond the scope of the remand. Sections II and III show why this settlement class also fails the Rule 23(b)(3) predominance requirement and why the clear-sailing and kicker clauses that demonstrate further impermissible self-dealing by class counsel.

Olson also incorporates all arguments set forth in his objection. *See* Objection, Dkt. 513.

## ARGUMENT

### I.     Class certification must be denied because the settlement class fails to satisfy Rule 23(a)(4) adequacy of representation.

A class action cannot be certified unless the court determines that the class representatives "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "It is fundamental in order to meet the Rule 23(a)(4) adequate representation prerequisite that at the time the class is certified 'a class representative must be a part of the class and `possess the same interest and suffer the same injury' as the class members." *Bishop v. Comm. on Prof'l Ethics and Conduct of Iowa State Bar Ass'n*, 686 F.2d 1278, 1289 (8th Cir. 1982). "[T]he adequacy of the representation issue is now of critical importance in all class actions and the court is under an obligation to pay careful attention to the Rule 23(a)(4) prerequisite in every case." *Vervaecke v. Chiles, Heider & Co.*, 578 F.2d

713, 719 (8th Cir. 1978) (quoting C. Wright & A. Miller, Federal Practice and Procedure § 1765, at 616-17 (1972)). The Rule 23(a)(4) adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

Here, Rule 23(a)(4) adequacy fails because there are intraclass conflicts between class members who were eligible for compensation and class members who were part of an unrepresented, uncertified subclass that receive nothing. Nor can belated and incomplete evidence of representatives who did not **submit** claims thrown into the mix of over a hundred class representatives solve the conflict. Aside from the fact that there is no evidence that any of these 27 representatives were similarly situated (nearly all of them allege present damages in the complaint), and the fact that there is no evidence that any of these representatives did anything to promote the interests of the absent class members, there is still a single settlement class represented by a single class counsel whose "conflicting interests" preclude certification without separate counsel representing the disfavored class members. *Id.* at 627. It is the separate counsel that is the critical missing component in this case: adding a 114th class representative to a single class could not possible solve the problem.

Class members are entitled to both unconflicted named representatives and unconflicted class attorneys. "Only the creation of subclasses, *and the advocacy of an attorney representing each subclass*, can ensure that the interests of that particular subgroup are in fact adequately represented." *In re Literary Works*, 654 F.3d 242, 252 (2d Cir. 2011) (emphasis added); *see also Piambino v. Bailey*, 757 F.2d 1112, 1145 n.88 (11th Cir. 1985) (ordering designation of a separate subclass

"with the right to have separate counsel unbeholden to Lead Counsel."); *Hans v. Tharaldson*, No. 3:05-cv-115, 2010 U.S. Dist. LEXIS 45927, at *25 (D.N.D. May 7, 2010) ("The only way to ensure that each group of [plaintiffs] is adequately represented is to create two subclasses with separate counsel appointed to represent the interests of each class; otherwise, the factors of typicality and representativeness under Rule 23(a) will not be satisfied."). "Divergent interests require separate counsel when it impacts the essential allocation decisions of plaintiffs' compensation and defendants' liability." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 233-234 (2d Cir. 2016) ("*Payment Card*") (cleaned up).

A.     **The interests of class members who can submit claims for compensation conflict with class members that are part of an unrepresented, uncertified "subclass" who receive nothing.**

Rule 23(a)(4) is vital to ensure that absent class members can "fairly be bound by the decisions of the class representatives" including the release and settlement of their claims. *Amchem*, 521 U.S. at 621. Class representatives must have "the ability and the incentive to represent the claims of the class vigorously." *In re Community Bank of N. Va.*, 622 F.3d 275, 291 (3d Cir. 2010) (internal quotations omitted). "This inquiry is vital, as class members with divergent or conflicting interests from the named plaintiffs and class counsel cannot be adequately represented." *Id.* (internal quotations omitted).

The Settlement here includes a single class: all persons whose personal or financial information was compromised during the Target data breach. *See* Settlement, Dkt. 358-1 at 8. But only class members with one of the specified injuries on the claim form may submit a claim for compensation. *Id.* at 38. There

is an uncertified "subclass" of class members with statutory-damages claims and future claims (known or unknown) who are not eligible for compensation. These fundamental conflicts between class members and this zero-recovery subclass require separate subclasses and separate legal counsel.

>    **1.    Class members' interests conflict with the zero-recovery subclass members that have only future-damages claims.**

Class members with present claims will not (and did not) vigorously represent the zero-recovery subclass members who hold only future-damages claims. In *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), the Supreme Court reversed the Fifth Circuit's approval of a class settlement that failed to satisfy Rule 23(a)(4). The Court held that "it is **obvious** after *Amchem* that a class divided between holders of present and future claims (some of the latter involving no physical injury and attributable to claimants not yet born) requires division into homogeneous subclasses under [what is now Rule 23(c)(5)], with separate representation to eliminate conflicting interests of counsel." *Id*. at 856 (emphasis added) (citing, *inter alia*, *Amchem*, 521 U.S. at 627). As the Supreme Court explained, class members with present claims want "generous immediate payments" for those present injuries compared to class members with future claims that want funds for potential future injuries. *Id*.

As in *Ortiz* and *Amchem*, this case also involves an "obvious" conflict between class members with present claims who want to prioritize compensation for their present data breach injuries over "subclass" members with future claims. The conflict in this case is not merely hypothetical. The class members with present claims failed to vigorously prosecute the subclass members' future

claims but instead, froze out those class members from any recovery. Indeed, the "conflicting interests of counsel" identified by the Supreme Court, *Amchem*, 521 U.S. at 627, became readily apparent in this case at the fairness hearing when class counsel confirmed that in structuring the settlement, they were "not going to hold up recovery for clients who have suffered actual damages" for those in the zero-recovery subclass. *See* Transcript of Fairness Hearing dated Nov. 24, 2015, Dkt. 649 at 46.

Class counsel's conflicting interest is further demonstrated by plaintiffs' recent Motion for Class Certification where class counsel argues that because the Target Data Breach happened several years ago, the zero-recovery subclass members like Olson cannot "credibly maintain" a claim of future economic loss. *See* Motion for Class Certification ("Renewed Motion"), Dkt. 780 at 21. Future harm is a significant part of *all* class members' claims and mentioned over 60 times in the Complaint describing the class representatives' claims. *See* First Amended Consolidated Complaint ("Complaint"), Dkt. 258 at 12-53. Indeed, the Complaint argues that "fraudulent use of the stolen data may continue for years" and that "[t]he United States government and privacy experts acknowledge that it may take years for identity theft to come to light and be detected." *Id*. ¶¶ 183, 221.[1] More importantly, class counsel should be championing the claims of *all*

---

[1] The U.S. Government Accountability Office reports that fraudulent use of information stolen from data breaches "may continue for years." *See* GAO, Report to Congressional Requesters, at p.33 (June 2007), *available at* http://www.gao.gov/new.items/d07737.pdf. If consumer is a victim of fraud, federal law permits consumer to request credit bureau to place seven-year

class members, including those class members with only future claims. The fact that class counsel is now dismissing the viability of those future claims to fight for those class members with present claims evidences an intraclass conflict requiring separate representation.

Plaintiffs argue that *Amchem* and *Ortiz* do not apply because they involved asbestos-related injuries with "multifarious and physical harm." *See* Renewed Motion, Dkt. 780 at 18-19. Rule 23(a)(4) applies to more than just personal injury cases. When the Supreme Court held that "a class divided between holders of present and future claims" requires subclassification, *Ortiz*, 527 U.S. at 856, it did not limit its holding to asbestos cases. *See Literary Works*, 654 F.3d 242 (copyright); *Payment Card*, 827 F.3d 223 (antitrust); *Dewey v. Volkswagen AG*, 681 F.3d 170 (3d Cir. 2012) (products liability). Further, plaintiffs' argument that this case is distinguishable from *Amchem* and *Ortiz* because this case involves "harms that have largely been ascertained," *see* Renewed Motion, Dkt. 780 at 19, contradicts plaintiffs' own allegations in the Complaint. The Complaint argues that class members risk "future additional harm from the increased threat of identity theft and fraud due to her financial and personal information being sold on the Internet black market and/or misused by criminals." *See, e.g.,* Complaint, Dkt. 258 at 12-53. As the Complaint explains, because the stolen data may be held for an uncertain time before being used, possible future harm lasts years. *Id.* ¶ 183.

Plaintiffs' assertion that *Amchem* and *Ortiz* apply only to cases of "physical harm" is belied by the number of appellate cases applying that standard to

---

extended fraud alert, 15 U.S.C. 1681c-1, reflecting a legislative finding that these types of harms are long-lasting.

economic injury classes with conflicts of interest far less compelling than the one in this settlement class.

For example, the Third Circuit was presented with a similar situation where an uncertified subclass was frozen out of recovery in *Dewey*. There, the class representatives of a single settlement class negotiated reimbursement for one set of car owners, but the remaining car-owner class members could only make "goodwill" claims on the residual amount of the settlement fund, if any. 681 F.3d at 173. The class could not be certified because "reimbursement" class members had an interest in excluding "residual" class members, which the Third Circuit found to be "precisely the type of allocative conflict of interest that exacerbated the misalignment of interests in *Amchem*." *Id*. at 188.

Plaintiffs argue that *Dewey* is distinguishable because that settlement created two groups of class members, but the settlement here created only a single class. Renewed Motion, Dkt. 780 at 19. But *Dewey* also had a single settlement class. 681 F.3d at 173. And even if the *Dewey* settlement created subgroups, it is irrelevant whether a settlement expressly labels two groups or, like here, the settlement's structure creates the subgroups. *E.g., In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig*., 55 F.3d 768, 800-801 (3d Cir. 1995) (finding "conspicuous evidence of [] an intra-class conflict in the very terms of th[e] settlement" based on "substantial impediments to fleet owners" using settlement coupons though settlement did not create a "fleet owner" subcategory). While plaintiffs challenge *Dewey's* application in this case, they also attempt to rely on *dicta* from *Dewey* discussing whether the representative plaintiffs had sufficient interest in pursuing future damages. *See* Renewed Motion, Dkt. 780 at 20. The

Third Circuit found that the objector's future-damages argument was not about "alignment of these interests" and was "unduly speculative" based on the "record" and "facts" of the case. *Dewey*, 681 F.3d at 186; *contrast* Dkt. 649 at 46 (class counsel expressing favoritism for class members with current damages). Whether a settlement specifically contemplates subcategories of class members (*Dewey*) or whether groups are created by virtue of the settlement structure (*GMC*, *Ortiz* and this case), Rule 23(a)(4) requires separate representation when, as here, those groups have fundamental conflicting interests.

> **2.    Class members have conflicting interests regarding statutory-damages claims.**

There are intraclass conflicts regarding statutory-damages claims. The Second Circuit's decision in *In re Literary Works* is directly on point. 654 F.3d 242. In that case, class counsel attempted to negotiate compensation from Google for three separate "categories" of class members (labeled A, B, and C) in a single settlement class. *Id.* at 246. Each category had a different statutory claim and each received a different damages formula. *Id.* There was no dispute that each category had differently valued claims, nor that the compensation for the categories was unfair. Instead, the problem was that the class representatives were generally representing *all* subgroups—class representatives had claims in categories A, B, and C—but were incentivized to favor their more lucrative category A and B claims. *Id.* at 251, 252 (citing *Amchem*, 521 U.S. at 627). The Second Circuit explained:

> We agree with objectors that the interests of class members who hold only Category C claims **fundamentally conflict** with those of class members who hold Category A and B

> claims. Although all class members share an interest in
> maximizing the collective recovery, their interests diverge as
> to the distribution of that recovery because each category of
> claim is of different strength and therefore commands a
> different settlement value.

*Id*. at 254 (emphasis added). The Second Circuit struck the settlement on Rule 23(a)(4) grounds: the class representatives "cannot have had an interest in maximizing compensation for *every* category." *Id*. at 252 (emphasis in original); *see generally Ortiz*, 527 U.S. 815.

This case is *worse* than *Literary Works.* This Court found that plaintiffs could proceed with data breach claims from 25 states and the District of Columbia and consumer-protection statutes from 39 states and the District of Columbia. Dkt. 281 at 10, 13, 45.[2] Rather than just three competing statutes like *Literary Works*, this case involves dozens of competing statutes and differing litigation values. For example, California Civil Code § 1798.83(a), *et seq*. (alleged at Complaint ¶ 286), provides statutory damages of $500 and up to $3,000. *See* Cal. Civ. Code § 1798.84(c). Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1(6)(v), (vii), (xii), (xiii) and (xiv), *et seq*. (alleged at Complaint ¶ 263), provides actual damages or statutory damages of $200, whichever is greater, *see* R.I. Gen. Laws § 6-13.1-5.2(a).[3] Like *Literary Works,* there are

---

[2] Adequacy further fails because none of the 113 representatives are from Rhode Island and D.C.

[3] Plaintiffs argue that because Olson is a resident of Texas, he has "no basis for asserting any claim for statutory damages under California, the District of Columbia or Rhode Island statutes." Renewed Motion, Dkt. 780 at 8. Olson does not argue that he would be part of the California, District of Columbia or Rhode

fundamental conflicts between these different claims with their differing-settlement values, which require "structural assurance of fair and adequate representation" including separate certification and legal counsel. *See Literary Works*, 654 F.3d at 256-57.

Class counsel here argue that there is no conflict because "all Class Members brought the same or similar claims." *See* Renewed Motion, Dkt. 780 at 2. This oversimplification demonstrates class counsel's conflicting interest. Separate legal counsel is necessary to protect class members with higher-value claims, e.g., California statutory damages, to ensure that they are not shortchanged by being lumped together with class members with lower-value claims, e.g., Rhode Island statutory damages.

Their oversimplification extends to their description of the settlement. Class counsel argues that "the *Literary Works* settlement disfavored one category of claims by placing all of the risk that claims might exceed the overall settlement amount on a single category of claims." Renewed Motion, Dkt. 780 at 22. The *Literary Works* settlement was structured so that if the claims exceeded $18 million, Category C claims were decreased *pro rata*. 654 F.3d at 246. This

---

Island statutory-damages "subclasses" but rather he argues that Rule 23(a)(4) cannot be satisfied unless these other subclasses are separately certified with separate legal counsel. Olson may object to the intraclass conflicts regarding class members with statutory-damages claims because Olson's Rule 23(a)(4) adequacy arguments relate to the entire settlement. *Cf. Rutter v. Shell Oil*, 314 F.3d 1180, 1183 n.1 (10th Cir. 2002) (denying motion to partially dismiss objector's appeal where objector was not member of one of the classes because "Objectors' objections were directed at the entire settlement").

settlement's structure, however, is much worse. While *Literary Works'* Category C claims bore some risk of decreased compensation, the subgroups here have *no possibility* of compensation.

Further, separate representation is required for class members with *only* statutory damages. For example, while the Complaint includes several California class representatives, *see* Complaint ¶¶ 18-23, those representatives each had actual-damages claims for which they could submit a claim for compensation, *see id.* (damages including unauthorized charges, credit monitoring, etc.). Although those California representatives would also have statutory-damages claims, they cannot—and did not—fight for "*every* category" of claim. *See Literary Works*, 654 F.3d at 252. The class representatives had no incentive to fight for those absent class members with only statutory-damages claims because the class representatives would be better off channeling as much money as possible to the actual damages fund so it would be divided among fewer claimants. *Plus,* they each received incentive payments of $500 or $1,000 that were not available to any other class member. Final Approval Order, Dkt. 645 at 7. There was no one to fight for the millions of California class members who released their valuable statutory-damages claims ($500 to $3,000, *see* Cal. Civ. Code § 1798.84(c)) for *no compensation*. The class representatives got theirs, and had no interest in protecting the interests of the class members frozen out by the settlement with statutory claims in California (and the other jurisdictions). Separate, certified subclasses with separate legal counsel is required here to protect those class members with only statutory-damages claims.

Rule 23(a)(4) adequacy requirements cannot be ignored even if the necessary dozens of subclasses would prove to be unworkable. This Court noted that "the fact that the laws of many different states may apply to class members' claims would make class certification unlikely." Order, Dkt. 645 at 7. The requirements of Rule 23(a), however, are not relaxed in the settlement context. The Supreme Court held that the Rule 23(a) requirements "demand undiluted, even heightened, attention in the settlement context." *Amchem*, 521 U.S. at 620. The Supreme Court explained:

> Subdivisions (a) and (b) [of Rule 23] focus court attention on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives. That dominant concern persists when settlement, rather than trial, is proposed.
>
> The safeguards provided by the Rule 23(a) and (b) class qualifying criteria, we emphasize, are not impractical impediments—checks shorn of utility—in the settlement-class context.

*Id.* at 621. Rule 23 and the principles of federalism cannot be sacrificed for efficiency sake. *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002) (Easterbrook, J.) (reversing certification of single nationwide class: "[b]ecause these claims must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable.").

* * *

In short, the conflicts of interest here are fundamental requiring separate subclasses and separate legal counsel. "A conflict concerning the allocation of remedies amongst class members with competing interests can be fundamental

and can thus render a representative plaintiff inadequate." *Dewey*, 681 F.3d at 184 (citing *Ortiz*, 527 U.S. at 857; *Amchem*, 521 U.S. at 626-27); *id.* (citing 6 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 3:26 (4th ed. 2002) (conflict is fundamental where it touches "the specific issues in controversy"). This case is worse than the fundamental conflicts identified in *Literary Works* and *Dewey* because while those competing subgroups had an opportunity to recover *some* compensation, this case involves an unrepresented, uncertified *de facto* subclass that receives nothing.

**B.   Plaintiffs' arguments defending the intraclass conflicts are unavailing.**

Plaintiffs repeat the same legal arguments that the Eighth Circuit has already rejected.

**1.   Plaintiffs confuse 23(e) adequacy of relief with 23(a)(4) adequacy of representation: the injunctive relief cannot cure the intraclass conflicts.**

Plaintiffs argue that adequacy is satisfied because the settlement provides sufficient benefits to all class members. *See* Renewed Motion, Dkt. 780 at 2, 7. Plaintiffs are confusing Rule 23(e) adequacy of the settlement *relief* with Rule 23(a)(4) adequacy of *representation*. Rule 23(e) adequacy refers to whether the settlement relief is "adequate" relative to the value of the claims released by the class. Rule 23(a)(4) adequacy, on the other hand, is a pre-requisite to any class proceeding and requires class representatives to be free from conflicts of interest or any incentive to favor class members similar to themselves at the expense of class members with different claims.

The Supreme Court forbids plaintiffs' approach of skipping over 23(a)(4) adequacy and looking to the adequacy of the relief: "Federal courts, in any case, lack authority to substitute for Rule 23's certification criteria a standard never adopted—that if a settlement is 'fair,' then certification is proper." *Amchem*, 521 U.S. at 622; *Ortiz*, 527 U.S. at 858-59 ("Here, just as in [*Amchem*], the proponents of the settlement are trying to rewrite Rule 23; each ignores the fact that Rule 23 requires protections under subdivisions (a) and (b) against inequity and potential inequity at the precertification stage, quite independently of the required determination at postcertification fairness review under subdivision (e) that any settlement is fair in an overriding sense."); *Literary Works*, 654 F.3d at 254 ("Even if we were to conclude that, as a matter of deferential review, the Settlement fairly compensates Category C claims, we cannot rely on that fact to affirm class certification, because doing so would conflate Rule 23(a)(4)'s adequacy of representation analysis with Rule 23(e)(2)'s fairness, adequacy, and reasonableness analysis."); *cf. Dewey*, 681 F.3d at 189 n.19 (finding that where a class fails on a structural level, it must be vacated without regard to whether "the class members' interests were not actually damaged.").

Plaintiffs wrongly rely on cases, *see* Renewed Motion, Dkt. 780 at 7, 16, 23-24, involving Rule 23(e) challenges where **Rule 23(a)(4) adequacy was not at issue**: *Sullivan v. DB Investments, Inc.*, 667 F.3d 273 (3d Cir. 2011) (addressing commonality and fairness of *de minimis* thresholds); *cf. id.* at 342 n.4 (Jordan, J. dissenting) (noting parties failed to "press the [23(a)(4)] issue in their briefs"); *Marshall v. National Football League*, 787 F.3d 502, 508 (8th Cir. 2015) (objectors' challenge that class members did not receive enough without challenging class

certification); *Martin v. Reid*, 818 F.2d 302, 307 (7th Cir. 2016) (appellant's "main argument" was that "settlement value was too low" without challenging class certification). These cases have no application here because even if Rule 23(e) adequacy of *relief* was satisfied, that could not resolve the intraclass conflicts.

Moreover, the zero-recovery subclass receives *no* consideration for release of their claims under the settlement. Plaintiffs' argue that all class members benefit from the payment of administration costs, attorneys' fees and the equitable relief. *See* Renewed Motion, Dkt. 780 at 7. *First*, the idea that the zero-recovery subclass benefitted from the payment of administration costs and attorneys' fees defies logic. How could the zero-recovery subclass members benefit from paying administration fees used to distribute funds that those subclass members were frozen out of? And the zero-recovery subclass did not benefit from paying attorneys' fees to conflicted class counsel who did not represent the subclass members' interests. By this argument, *no* settlement could ever fail adequacy, so long as the defendant pays class counsel and for the settlement administrator. Plaintiffs' argument is not just silly on its face, it proves too much.

*Second*, the injunctive relief provides no consideration for the release of the zero-recovery subclass's claims. The injunctive relief is aimed at the world at large: class members, non-class members, and even opt-outs equally benefit without waiver of their claims. Because the injunctive relief is available to anyone—whether or not they participate in the settlement—the injunctive relief provides no marginal benefit to a class member waiving a claim, and, as a matter of black-letter contract law, cannot be consideration for a release of claims. *Cf.*

*Allen v. Similasan Corp.*, 318 F.R.D. 423, 428 (S.D. Cal. 2016) (noting that if class members "knew and understood the terms of the Settlement Agreement, they would know that they would be better off opting out, since they would receive the same benefits of the injunctive relief in the Settlement Agreement but would not be giving up their right to sue"); *Koby v. ARS Nat'l Servs.*, 846 F.3d 1071, 1079 (9th Cir. 2017) (finding that "plaintiffs bore the burden of demonstrating that class members would benefit from the settlement's injunctive relief").[4]

Further, the leading circuit decisions demonstrate that the availability of injunctive relief does not eliminate the intraclass conflicts. In *Dewey*, the settlement included injunctive relief—"[e]ducational preventative maintenance information" to instruct class member car owners in avoiding leakage in their sunroofs—that was available to "all class members." 681 F.3d at 175. The district court rejected an objection asserting the injunction was worthless and concluded

---

[4] Injunctive relief included business changes by Target: designation of a chief information security officer; maintaining a written information security program; maintaining a process to monitor for information security risks; and providing security training to "relevant" Target employees. Settlement, Dkt. 358-1 at 17. But Target had hired its chief information security officer in June 2014, nine months before the Settlement was reached, and six months before the Complaint. *See* Target Press Release dated June 10, 2014, *available at* https://corporate.target.com/article/2014/06/target-names-brad-maiorino-senior-vice-president-c. The injunctive relief does not constitute relief under 23(e) because Target "took that step for its own business reasons (presumably to avoid further litigation risk), not because of any court-or-settlement-imposed obligation." *Koby*, 846 F.3d at 1080 (citing *Crawford v. Equifax Payment Services, Inc.*, 201 F.3d 877, 882 (7th Cir. 2000)).

that "[a]ll class members, even those in the subclass [sic] that receives only preventative care information, receive something of value." *Id*. at 179. The availability of the injunctive relief, however, did not affect the Third Circuit's finding of a fundamental conflict requiring separate representation with separate counsel. *Id*. at 188.

In *Payment Card*, the Second Circuit reversed approval of settlement class certification, finding that the "conflict is clear between merchants of the (b)(3) class, which are pursuing solely monetary relief, and merchants in the (b)(2) class, defined as those seeking only injunctive relief." 827 F.3d at 233. The Second Circuit held that "such divergent interests require separate counsel when it impacts the 'essential allocation decisions' of plaintiffs' compensation and defendants' liability.'" *Id*. at 233-34 (quoting *Amchem*, 521 U.S. at 627). This was so even though the injunctive relief benefited all class members. Like *Dewey* and *Payment Card*, the availability of injunctive relief (Target's business practice changes) does not eliminate the allocative conflict between class members eligible to file a claim (who had an interest in excluding the zero-recovery subclass from the $10 million settlement fund to maximize their own recovery) and the zero-recovery subclass (who had an interest in receiving compensation for their future and statutory damages from the settlement fund).

**2.    Class members' shared interest in seeking damages and injunctive relief does not eliminate the intraclass conflicts.**

Plaintiffs argue that all class members had aligned interests in "pursuing damages and equitable relief under the same legal theories." Renewed Motion, Dkt. 780 at 5. *Amchem* explained that even if the class and subclass had a mutual

interest in maximizing *total* recovery, those interests diverge when they fight for their share of that recovery. *See* 521 U.S. at 627 (observing that even if the class representatives "thought that the Settlement serves the aggregate interests of the entire class[,] . . . the adversity among subgroups requires that the members of each subgroup cannot be bound to a settlement except by consents given by those who understand that their role is to represent solely the members of their respective subgroups") (internal quotations omitted); *accord Literary Works*, 654 F.3d at 252; *see also Ortiz*, 527 U.S. at 857-58.

### 3.   Class members' ability to opt out does not cure the intraclass conflicts.

Plaintiffs argue that "Olson could have opted out of the settlement." *See* Renewed Motion, Dkt. 780 at 7. Numerous circuit authorities have held that the availability of opt-out does not eliminate an intraclass conflict. *See Epstein v. MCA, Inc.*, 50 F.3d 644, 667 (9th Cir. 1995), *rev'd on other grounds sub nom. Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367 (1996) ("Regardless of whether class members are given opt-out rights, the court is still required to ensure that representation is adequate and that the settlement is fair to class members."); *In re GMC Pickup Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 809 (3d Cir. 1995) ("[T]he right of parties to opt out does not relieve the court of its duty to safeguard the interests of the class and to withhold approval from any settlement that creates conflicts among the class."); *Phillips v. Klassen*, 502 F.2d 362, 367 (D.C. Cir. 1974) (holding that conflicting interests of class members "cannot be avoided merely by saying that it is always open to members of a class to 'opt out' of any relief to which they are held entitled"). If opt-out could eliminate an intraclass

conflict, *Amchem* and *Dewey* and *Literary Works* (each certified under Rule 23(b)(3)), would have reached a different result. Again, plaintiffs' argument proves too much: even a Rule 23(b)(3) settlement must satisfy Rule 23(a)(4).

In *In re Uponor, Inc.*, the Eighth Circuit affirmed approval of a class action involving defective brass plumbing fittings. 716 F.3d 1057, 1064 (8th Cir. 2013). The district court had certified two subclasses: (1) "soggy class" with present-damages claims (those who had already experienced a leak) and (2) "cloggy class" with future-damages claims (those who had not yet experienced a leak). *Id.* at 1061. The objector argued that the class representatives' claims were not "typical" (Rule 23(a)(3)) because they should have alleged a claim under a California statute. *Id.* at 1064. The Court suggested that if the objector really wanted to pursue that California claim, he could opt out and pursue the California claim. *Id.* But this is dicta. The basis of *Uponor*'s holding was that the objectors "failed to demonstrate that a legal remedy would be available under the California statute which is not afforded by the settlement terms." *Id.* This is not so here: the settlement entirely waives without compensation statutory damages claims that survived a motion to dismiss. So while *Uponor* class representatives and counsel shared "common objectives" with the objectors, we know from the settlement itself and class counsel's own statements at the fairness hearing that the class counsel and class representatives in this case had differing objectives from the unrepresented subclasses. Meanwhile, *Uponor* (like *Amchem* and *Ortiz*) demonstrates that class counsel in class actions like these are supposed to create subclasses for present- and future-damages claims.

> **4.    Class representatives' failure to file a claim does not cure the intraclass conflicts: separate certified subclasses with separate counsel are required.**

Plaintiffs argue that there was no conflict because many of the class representatives did not file a claim for compensation. *See* Renewed Motion, Dkt. 780 at 4-5. (This new theory completely contradicts class counsel's previous argument at the fairness hearing that they were only seeking relief for those who suffered losses and could file a claim. *See* Dkt. 649 at 46.) Plaintiffs include a declaration from the claims administrator listing the class representatives who filed and who did not file a claim. *Id*. (citing Lake Decl.) What the claims administrator does not state, however, is *why* those class representatives did not file a claim. Those 27 class representatives that did not file a claim may have simply been apathetic or class counsel may have failed to instruct them to file a claim. And more importantly, the claims administrator does not state that those 27 class representatives *were not able* to file a claim.

In fact, 23 of those class representatives that failed to submit a claim alleged specific damages and losses for which a claim could have been submitted. *Compare* Ex. A to Lake Decl., Dkt. 783-1 *with* Complaint, Dkt. 258 ¶¶ 1(f), 8, 11, 12, 16, 17, 20, 22, 29, 31, 39, 46, 50, 52, 58, 59, 76, 87, 92, 95, 96, 108, 112. Many of them alleged significant damages. *See, e.g.,* Complaint, Dkt. 258 ¶ 1(f) (alleging $378 in unauthorized charges, loss of access to funds, purchase of extensive credit monitoring, late fees, replacement card fees); ¶ 11 (alleging over $1200 in unauthorized charges and time completing police report and resetting automatic payments); ¶ 76 (alleging $1800 unauthorized charge and loss of access to credit). The *only* thing that can be gleaned from the class

representatives' failure to submit a claim is that they failed to protect their *own* rights, demonstrating that they were wholly inadequate to protect the rights of other class members. *See Berger v. Compaq Computer Corp.*, 257 F.3d 475, 482-483 (5th Cir. 2001).

And as a practical matter, because all class representatives were awarded $500 or $1,000, *see* Final Approval Order, Dkt. 645 at 7, they had no incentive to fight for the other class members. *See In re Dry Max Pampers Litig.*, 724 F.3d 713, 722 (6th Cir. 2013) (incentive payments can give class representatives "no reason to care whether the mechanisms available to unnamed class members can provide adequate relief"). *Cf. Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014) ("But often (though we were told at argument not in this case) the named plaintiff is the nominee of class counsel, and in any event he is dependent on class counsel's good will to receive the modest compensation ($5,000 in this case) that named plaintiffs typically receive."); *Eubank v. Pella Corp.*, 753 F.3d 718, 719-720 (7th Cir. 2014) ("Class actions are the brainchildren of the lawyers who specialize in prosecuting such actions, and in picking class representatives they have no incentive to select persons capable or desirous of monitoring the lawyers' conduct of the litigation.").

Even if there had been a class representative with only future-damages claims, the settlement would still fail Rule 23(a)(4) adequacy because there was no separate subclass certification or separate legal counsel. The Supreme Court "recognize[s] that the adequacy of representation enquiry is also concerned with the 'competency and conflicts of class counsel.'" *Ortiz*, 527 U.S. at 856 n. 31 (quoting *Amchem*, 521 U.S. at 626 n.20; citing 5 Moore's Federal Practice §

23.25[3][a] (adequacy of representation concerns named plaintiff and class counsel)). Resolving the intraclass conflict "requires division into **homogeneous subclasses** under Rule 23(c)(4)(B), **with separate representation** to eliminate conflicting interests of counsel." *Ortiz*, 527 U.S. at 856 (emphasis added) (citing 5 J. Moore, T. Chorvat, D. Feinberg, R. Marmer, & J. Solovy, Moore's Federal Practice § 23.25[5][e], p. 23-149 (3d ed. 1998) (an attorney who represents another class against the same defendant may not serve as class counsel)).

In *Literary* Works, the Second Circuit explained why separate legal counsel is necessary to resolve an intraclass conflict:

> The Supreme Court counseled in *Ortiz* that subclasses may be necessary when categories of claims have different settlement values. The rationale is simple: **how can the value of any subgroup of claims be properly assessed without independent counsel pressing its most compelling case?** It is for this reason that the participation of impartial mediators and institutional plaintiffs does not compensate for the absence of independent representation. Although the mediators safeguarded the negotiation process, and the institutional plaintiffs watched out for the interests of the class as a whole, no one advanced the strongest arguments in favor of Category C's recovery.

654 F.3d at 253 (emphasis added). The same is true here. Independent representation is necessary to present the most compelling case for the various claims with their varying settlement values. Indeed, separate counsel is particularly necessary here given class counsel's declaration at the fairness hearing that they were only pursuing relief for those class members who had

suffered a loss, and not class members like the zero-recovery subclass with future- and statutory-damages claims. *See* Dkt. 649 at 46.

     **5.    The other cases cited by plaintiffs are inapposite or distinguishable.**

Plaintiffs throw a variety of precedents at the wall in the apparent hopes one will stick, but none are remotely applicable. Plaintiffs rely on *Reynolds v. Nat'l Football League*, 584 F.2d 280, 284, 286 (8th Cir. 1978), *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171 (8th Cir. 1995) and *Professional Firefighters Ass'n of Omaha, Local 385 v. Zalewski*, 678 F.3d 640 (8th Cir. 2012) to argue that Olson has presented no evidence of an actual conflict. *See* Renewed Motion, Dkt. 780 at 6, 10. None of these cases support plaintiffs' argument.

In *Reynolds* (decided before *Amchem* and *Ortiz*), the Eighth Circuit found that the alleged conflict—negotiation of future player movement rules—was theoretical because those rules were a "subject for collective bargaining." 584 F.2d at 286. Here, by contrast, the potential conflicts between those with present-damages claims and those with future- or statutory-damages claims was more than theoretical but *actually* realized: class members with only future- or statutory-damages claims were frozen out of recovery.

*DeBoer* involved mortgage servicing claims where the settlement provided refunds of excess escrow funds and rebates for past charges. 64 F.3d at 1173-74. The objector argued that counsel was inadequate based on the terms of the settlement and because the case should have been brought in another circuit. *Id*. at 1177-78. The objectors in *DeBoer* never argued a conflict between any

subgroups or class members, and *DeBoer* has nothing to do with conflicts of interest.

And in *Professional Firefighters*, the Eighth Circuit affirmed class certification because of the unique circumstances of that case where the district court had recognized a potential conflict and implemented numerous assurances of adequate representation including separate legal counsel of intervening retired employees during negotiation, actual certification of the subclass, and the subclass's right to seek arbitration of any unfairness in future negotiations. 678 F.3d at 647-48. It goes without saying that none of these protections are present here.

Plaintiffs argue that there is no fundamental conflict requiring subclassification, citing *Reynolds*, 584 F.2d at 286 (*see supra*), *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010), *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 959 (9th Cir. 2009), and *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1194 (11th Cir. 2003). *See* Renewed Motion, Dkt. 780 at 9. Again, these cases are not helpful to plaintiffs' position.

In *Ward*, the Fourth Circuit found that the potential conflict—increased insurance premiums for some of the class members—was not a fundamental conflict because it was too speculative. 595 F.3d at 180. Here, by contrast, the conflict between those with actual-damages claims and those with future- or statutory-damages claims is not theoretical but an actual conflict where the zero-recovery subclass was actually frozen out of recovery. No speculation is necessary: the conflict is spelled out in the settlement.

*Rodriguez* found that five of the seven class representatives were inadequate based on incentive agreements between class representatives and class counsel where class counsel agreed to seek incentive awards tied to settlement recovery, confirming that conflicts arise when class representatives' interests differ from the class's interests. 563 F.3d at 960-61. The Ninth Circuit affirmed certification because the other two class representatives had adequately represented the class. *Id*. at 961. The conflict was not fundamental requiring subclassification because the conflict was between those *five* class representatives (who executed the incentive agreements) and the class. That case did not involve a conflict between competing groups of class members with different legal claims, and the objectors were not seeking subclasses.

*Valley Drug* endorses Olson's arguments. There, the Eleventh Circuit decertified a class where class member wholesalers had different antitrust legal arguments available to them: "Rule 23(a)(4) [] preclude[s] class certification where the economic interests and objectives of the named representatives differ significantly from the economic interests and objectives of unnamed class members." 350 F.3d at 1190. As explained above, class members with present damages want to prioritize compensation over "subclass" members with future-damages or statutory-damages claims, and the settlement accomplished that competing objective.

Plaintiffs rely on *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140 (8th Cir. 1999). *See* Renewed Motion, Dkt. 780 at 18-19. *Petrovic* involved a single class where all class members had the same claim. 200 F.3d at 1145. The Eighth Circuit rejected the idea that subclassing was needed for different amounts of recovery for the

*same* claim. *Id*. at 1146. Olson is not arguing that a single class cannot recover different damages on the same claim without separate representation (e.g., a consumer-fraud settlement where one class member submits a claim for purchasing three boxes of product and another for one box). Instead, Olson is arguing that Rule 23(a)(4) requires class members with *different* causes of action to be subclassed with separate representation so that one subclass's claims are not favored at the expense of another's. Unlike this case, *Petrovic* did not face the issue of class members with *different* legal claims. The Eighth Circuit found that "objectors do not clearly explain why the remedial interests of the class members are in conflict," and that objectors' arguments were really directed to whether "the settlement was not fair, adequate, and reasonable" (Rule 23(e) challenge). *Id.* Olson is not challenging Rule 23(e) adequacy of this settlement (though *cf.* Section III below, noting problems with Rule 23(e) fairness), but that a subclass of members with *different* claims (and *differing* settlement values) required separate representation and separate counsel.

Plaintiffs argue that the class representatives "had a 'real stake' in both the equitable relief and the damages relief, and they had every incentive to maximize both types of relief," citing *Uhl v. Thoroughbred Tech. & Telecomm., Inc.*, 309 F.3d 978, 985-86 (7th Cir. 2002). In *Uhl*, the objector argued that there should have been two subclasses of landowners: one group where fiber optic cable would be laid and one group where it was not. *Id.* at 986. But it was impossible to know *ex ante* which landowners were in which subgroup. *Id*. Because the landowners could not know which group they were in, a named representative would fight equally for both groups and subclassification was unnecessary. *Id*. In this case,

however, the subclass members knew *ex ante* whether they had only future-damages claims or only statutory-damages claims; they would be incentivized to fight for their respective subclass.

Plaintiffs argue that "[n]o conflict of interest arises from the fact that a settlement provides for different recoveries from various class members," citing *Petrovic* (*see supra*), *Professional Firefighters* (*see supra*), *Uhl* (*see supra*), *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 346 (3d Cir. 2010), and *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 272-73 (3d Cir. 2009). *See* Renewed Motion, Dkt. 780 at 22. Again, plaintiffs confuse the question of "different claims" with "different recoveries." These cases support the premise that Olson does not challenge: a single class with a common claim that provides different *recoveries* does not necessarily require separate representation. *See In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 344 (3d Cir. 2010) (finding no conflict because all of the class members had economic-damages claims, all of which were "present claims"); *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 272-73 (3d Cir. 2009) (finding no conflicting interests "simply because the relief varied").[5] What these cases do not address is whether a single class with *different* claims of *differing* settlement values requires separate representation. Here, because the conflict is not just different recoveries but different claims (future-damages claims and statutory-damages claims), separate subclasses and separate counsel is required to satisfy Rule 23(a)(4).

---

[5] As *Dewey* points out, "*Insurance Brokerage* did not cite Rule 23(a)(4) and cited neither *Amchem* nor *Ortiz* in its discussion of whether subclasses were necessary. It did not discuss the interests or incentives of the named plaintiffs in the suit." 681 F.3d at 188.

Plaintiffs cite to *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016), *on remand Bouaphakeo v. Tyson Foods, Inc.*, No. 5:07-cv-04009-JAJ, 2016 WL 5868081. *See* Renewed Motion, Dkt. 780 at 24-26. Plaintiffs argue that in *Bouaphakeo*, the district court "ensur[ed] no uninjured class members receive damages." Renewed Motion, Dkt. 780 at 25 (citing *Bouaphakeo v. Tyson Foods, Inc.*, No. 5:07-cv-04009-JAJ, 2016 WL 5868081 (N.D. Iowa Oct. 6, 2016) at *4). *Bouaphakeo* did not involve a 23(a)(4) challenge. Further, plaintiffs confuse "injury" with "damages." While the class and subclass members may have different *damages* and may recover differently for their different legal claims (e.g., future-damages or statutory-damages claims), the subclass members suffered the same *injury* as the rest of the class (compromise of their personal and financial information), *see* Settlement Dkt. 385-1 at § 3.1 (defining class)). *Cf. Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 965 (7th Cir. 2016) (reversing finding that consumer did not suffer injury from increased risk of fraudulent charges and identity theft based on theft of credit card and debit card data); *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1034 (8th Cir. 2010) ("[A] class cannot be certified if it contains members who lack standing.").

## II.     Certification is also inappropriate under Rule 23(b)(3) because common questions of fact and law do not predominate and the claims process is not a superior method of adjudication.

The Eighth Circuit did not resolve the Rule 23(b)(3) predominance issue, but it did not remand it either. Nevertheless, plaintiffs relitigate it. Olson maintains that the settlement fails to satisfy Rule 23(b)(3)'s prerequisites for

certification.[6] *Ortiz*, 527 U.S. at 858-59 ("Here, just as in [*Amchem*], the proponents of the settlement are trying to rewrite Rule 23; each ignores the fact that Rule 23 requires protections under subdivisions (a) and (b) against inequity and potential inequity at the precertification stage, quite independently of the required determination at postcertification fairness review under subdivision (e) that any settlement is fair in an overriding sense."). While evaluation of Rule 23's predominance requirement on a settlement motion does not require an analysis of potential trial management problems, "other specifications of the Rule—those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention in the settlement context." *Amchem*, 521 U.S. at 620. Rule 23(b)(3) has two requirements: predominance and superiority. Neither is satisfied.

### A.       Rule 23(b)(3) predominance cannot be satisfied.

To meet the predominance requirement, the settling parties must show that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). As the Supreme Court explained, "Rule 23(b)(3)'s predominance criterion is even more

---

[6] The limited remand opinion requires "a rigorous analysis of Rule 23(a)'s certification prerequisites as applied to this case," which was the primary subject of Olson's appeal, but remand is not *limited* to this subject. The panel found that this court "failed to articulate its analysis of the numerous disputed issues of law and fact regarding the propriety of class certification." 847 F.3d at 615. Among these issues was predominance and superiority under Rule 23(b)(3). *Compare* Olson Objection, Dkt. 513 at 13-16, *with* Memorandum and Order, Dkt. 645 (no reference to Rule 23(b)(3)).

demanding than Rule 23(a)." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). It requires the district court "to take a 'close look' at whether common questions predominate over individual ones." *Id*. Plaintiffs' argue that predominance is satisfied because common questions regarding Target's actions "represent a significant aspect of this case." Renewed Motion, Dkt. 780 at 29. While there may be some common questions regarding Target's actions relating to the data breach, there are overwhelming individual questions relating to causation and damages that preclude Rule 23(b)(3) predominance.

In *Comcast*, the Supreme Court held that the appeals court wrongly affirmed certification because the damages model used for certification did not measure damages attributable to plaintiffs' theory. *Id*. at 1433. The Court found that respondents could not "show Rule 23(b)(3) predominance: **Questions of individual damage calculations** will inevitably overwhelm questions common to the class." *Id*. (emphasis added). Similarly, the individual damage calculations in this case overwhelm common questions because the settlement administrator must evaluate each claimant's claim and determine if there is "reasonable documentation that the claimed losses were actually incurred and **more likely than not arose from the Intrusion**." *See* Distribution Plan, Dkt. 358-1 at 35 (emphasis added). The claims process demonstrates that like *Comcast*, individual causation and damages calculations inevitably overwhelm questions common to the class. For each class member, it must be determined that a particular credit card charge was actually unauthorized *and* that such charges were actually a result of the Target data breach (and not some other breach), *and* the calculation

of any resulting damages or losses. Such inquiries cannot be done on a class-wide basis.

This was the conclusion reached in a similar data breach case. *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21, 33 (D. Me. 2013). *Hannaford* involved a data breach where Hannaford customers' debit and credit card data was stolen. *Id.* at 23. Plaintiffs moved for certification of a 23(b)(3) class and the district court denied certification for failure to satisfy predominance. *Id.* The district court found some common questions, i.e., "whether Hannaford breached a duty to securely maintain its customers' credit and debit card information and whether that breach caused the intrusion, affected the plaintiffs' electronic data and reasonably led them to take protective measures that cost money." *Id.* at 27. The district court also found individual questions, i.e., "actual impact on particular cardholders (for example, whether their particular accounts suffered fraudulent charges or not) and the actual mitigating steps they took and the costs they incurred." *Id.* at 30. The district court concluded that plaintiffs had failed to meet their burden because the individuation regarding damages was fatal to predominance including "individual issues for each class member as to what happened to his/her data and account, what he/she did about it, and why." *Id.* at 33. The same individual questions are required here and plaintiffs have failed to satisfy their burden regarding predominance.

Specifically, plaintiffs argue "Predominating, common questions—including whether Target failed to take adequate measures to reasonably safeguard its data systems, whether Target failed to disclose to Plaintiffs and

members of the Class that its computer systems and security practices were allegedly inadequate to reasonably safeguard customers' sensitive data, and whether Target failed to promptly notify customers of the data breach— represent a significant aspect of this case and may be resolved for all Class Members in a single judgment." Renewed Motion, Dkt. 780 at 29. Plaintiffs focus on *Target's* actions but fail to show how common questions regarding how those actions harmed class members, i.e., what happened to the class members' data, what they did about it and why. Plaintiffs' Renewed Motion repeats verbatim their predominance arguments from their preliminary approval papers, Dkt. 357 at 21. Plaintiffs failed to meet their initial burden at preliminary approval and they again have failed to meet their burden in their Renewed Motion because the individual questions for each class member—"what happened to his/her data and account, what he/she did about it, and why"—are fatal to predominance.

While the *Hannaford* claims were governed only by Maine law, 293 F.R.D. at 30 n.12, the claims here are governed by 50 states and the District of Columbia. The predominance requirement also cannot be satisfied because of the outcome-determinative differences in consumer protection laws and unjust enrichment laws. This Court found that plaintiffs could proceed with data breach claims from 25 states and the District of Columbia and consumer-protection statutes from 39 states and the District of Columbia. Dkt. 281 at 10, 13, 45. *First*, "[s]tate consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's law to sales in other states with different rules." *In re St. Jude Medical, Inc.*, 425 F.3d 1116, 1120 (8th Cir. 2005) (quoting *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002)). The Eighth Circuit

confirmed that the differences in state consumer-protection laws would prevent certification.

In *Perras v. H&R Block*, 789 F.3d 914, 918 (8th Cir. 2015), the Eighth Circuit held that "[t]he law applicable to each class member would be the consumer-protection statute of that member's state. Thus, questions of law common to the class members do not predominate over any individual questions of law." *Id.*; *see also* 7A Charles Alan Wright *et al.*, FEDERAL PRACTICE & PROCEDURE § 1780.1 (3d ed. 2014) ("As a matter of general principle, the predominance requirement of Rule 23(b)(3) will not be satisfied if the trial court determines that the class claims must be decided on the basis of the laws of multiple states" because "the legal issues no longer pose a common question"). Common questions of law do not predominate regarding consumer-protection laws from more than three dozen states. *See Peterson v. Aaron's, Inc.*, No. 1:14-CV-1919-TWT, 2017 U.S. Dist. LEXIS 10117, at *18 (N.D. Ga. Jan. 24, 2017) (denying certification in data privacy action where plaintiffs "failed to articulate adequately how these variations in [seven states'] law would not preclude predominance in this case"); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012) (decertifying class of Honda purchasers where "variances in state law overwhelm common issues and preclude predominance for a single nationwide class").

In addition to the consumer-protection laws, the individual questions involved in unjust enrichment claims also prevent certification. *Tyler v. Alltel Corp.*, 265 F.R.D. 415, 429 (E.D. Ark. 2010) (predominance and commonality could not be satisfied because it required application of unjust enrichment and consumer protection laws from 25 states). "As countless courts have found, the

states' different approaches to, or elements of, unjust enrichment are significant." *Rapp v. Green Tree Servicing, LLC*, 302 F.R.D. 505, 513-514 (D. Minn. 2014) (citations omitted) (collecting cases). In *Rapp,* the court found that individual factual questions would predominate regarding the unjust enrichment claims because the laws of the 50 states differ including how "unjust" the retention of the benefit was and the court would have to determine how much the defendant was enriched for each particular transaction. *Id.* at 519. The same is true here. This Court dismissed one of plaintiffs' theories regarding unjust enrichment and the only remaining theory is that plaintiffs "would not have shopped" at Target after the breach if they had they known about the breach. Order, Dkt. 281 at 44. This would require individual inquiries as to (1) whether that individual would have shopped again after the breach if it had been disclosed and (2) how much Target was unjustly enriched, i.e., each class member's transaction after the breach. These individual questions predominate.

### B.      Rule 23(b)(3) superiority is not satisfied.

The superiority requirement involves showing "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In *Halvorson v. Auto-Owners Insurance Co.*, the Eighth Circuit held that predominance was not satisfied because the action required "individual fact inquiries for each member of the class." 718 F.3d 773, 780 (8th Cir. 2013). The Eighth Circuit concluded that a "class action w[ould] not be a **superior method** of adjudicating this case because the reasonableness of any claim payment may have to be individually analyzed." *Id.* (emphasis added).

As in *Halvorson*, the individual fact inquiries required for the "reasonableness of any claim payment" demonstrates that a class action is not the superior method for adjudication. In this case, class members may submit a Claim Form that identifies eight types of injuries a class member may have suffered and a ninth "catch all" for any other types of expenses or costs. *See* Claim Form, Dkt. 358-1 at 38. To recover those losses, the claimant must submit documentation for each of those different "loss type[s]." *Id*. at 39. One by one, the settlement administrator will evaluate each claimant's claim and determine if there is "reasonable documentation that the claimed losses were actually incurred and **more likely than not arose from the Intrusion**." *See* Distribution Plan, Dkt. 358-1 at 35 (emphasis added).

Further, certification is not a superior method for adjudication because the claims process here substitutes a real judicial forum (if class members had brought their own claims) with an artificial judicial forum (created under the Settlement's Distribution Plan). This artificial judicial forum created by the Settlement includes its own judge, rules, and procedures:

| Artificial Judicial Forum Under the Settlement | |
|---|---|
| Judge | "Settlement Administrator, in its sole discretion . . . ." Distribution Plan, Dkt. 358-1 at 36. |
| Evidentiary Standards | "Reasonable documentation of losses is objective proof of losses . . . ." Distribution Plan, Dkt. 358-1 at 35. |
| Burden of Proof | "…that the claimed losses were actually incurred and **more likely than not arose from the Intrusion**." Distribution Plan, Dkt 358-1 at 35 (emphasis added). |
| Appeals Process | "After receipt of the claimant's rejection of the final determination, the Settlement Administrator will provide Plaintiffs' Lead Counsel and Target's Counsel (together 'Counsel') with a copy of the Claim Form and |

|  | documentation submitted by the claimant, and the communications between the Settlement Administrator and the claimant (the 'Claim File'). . . . If Counsel agree that the claimant is entitled to the amount of Substantiated Losses requested on the Claim Form, **their determination will be final.**" Distribution Plan, Dkt 358-1 at 36-37 (emphasis added). |
|---|---|

It cannot be superior for class members to submit analysis of their individual claims to an artificial judicial forum (run by the consulting group hired by the defendant) with absolute discretion over claims instead of a court of law that offers the protections of procedural rules and the Constitution. Indeed, the methodology used by the administrator is too vague to apprise the class members of what would be sufficient to convince the administrator that the losses "more likely than not" arose from the intrusion. This has a direct effect on the value and fairness of the Settlement. *See In re NCAA Student-Athlete Concussion Injury Litig.,* No. 13 C 9116, 2014 U.S. Dist. LEXIS 174334, at *33 (N.D. Ill. Dec. 17, 2014) (denying preliminary approval because "the review criteria [for claims] bear directly on the settlement's anticipated benefits to the class as well as the sufficiency of the proposed Fund").

One of the largest problems with this artificial judicial forum is how the settlement administrator is going to effectively deal with class members who submit fraudulent claims: How will the administrator determine if the charges on a credit card statement were actually unauthorized? How will the administrator determine whether those unauthorized charges were actually later reimbursed? (Federal law limits a credit-card holder's liability for unauthorized uses. *See, e.g.,* 15 U.S.C. § 1643.) For each different "loss type" included in the Claim Form, there is great potential for submission of fraudulent claims,

particularly when claimants can receive up to $10,000 in recovery. The possibility that some class members will be paid for losses that they never incurred while other class members will receive no compensation highlights why this class action is an inferior method of adjudication in fairness or efficiency.

Finally, the zero-recovery subclass provides an additional reason why a class action is not a superior method of adjudication in this case. Superiority must be contemplated from the perspective of absent putative class members. What is best for them? Even if the possibility of attaining damages by that subclass is small, that possibility is superior to releasing those claims for no compensation. *See Brown v. Wells Fargo & Co.*, No. 11-1362 (JRT/JJG), 2013 U.S. Dist. LEXIS 181262, at *16-17 (D. Minn. Dec. 30, 2013) (concluding that superiority was not satisfied where individuals would be "entitled to between $100 and $1,000 dollars in statutory damages" in successful individual litigation, but only $55 as a class member); *Sonmore v. CheckRite Recovery Servs.*, 206 F.R.D. 257, 265-66 (D. Minn. 2001) (same); *cf. Allen v. Similasan Corp.*, 318 F.R.D. 423, 428 (S.D. Cal. 2016) (if class members "knew and understood the terms of the Settlement Agreement, they would know that they would be better off opting out, since they would receive the same benefits of the injunctive relief in the Settlement Agreement but would not be giving up their right to sue"); *Daniels v. Aeropostale West*, No. C 12-05755 WHA, 2014 U.S. Dist. LEXIS 74081, at *8 (N.D. Cal. May 29, 2014) ("No one should have to give a release and covenant not to sue in exchange for zero (or virtually zero) dollars…."). Under this settlement, millions of class members release their rights in exchange for no consideration.

From the perspective of a class member, that cannot be a superior method of adjudicating this controversy.

### III.   The Settlement includes warning signs of self-dealing including disproportionate fee, clear-sailing and kicker provisions.

Olson's Objection argued that the Settlement included the warning signs of self-dealing including disproportionate fee, clear-sailing and kicker provisions. *See* Objection, Dkt. 513 at 26.

*First*, plaintiffs' attorneys' fee award of 40.3% of the percentage of the fund is excessive. *See id.* at 20 (class counsel's fee of $6.75 million equals 40.3% of $16.75 million total relief ($6.75 million fees + $10 million settlement fund for class recovery). Plaintiffs argue that their request is only 28.9% because notice and administration fees should be included in calculating fees. *See* Renewed Motion, Dkt. 780 at 14. Plaintiffs rely on *In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 847 F.3d 619, 623 (8th Cir. 2017), and *Huyer v. Buckley*, 849 F.3d 395, 398 (8th Cir. 2017) which gives district courts the discretion to include administrative costs in calculating fees. But this Court should exercise its discretion to exclude those costs here because class counsel created a complex claims process costing $6.57 million to administer that resulted in a higher fee for class counsel and meant that class members had to pay $13.3 million ($6.57 million administration + $6.75 million fees) to get $10 million in relief. *Cf. Redman*, 768 F.3d at 630 (holding that administration "costs are part of the settlement but not part of the value received from the settlement by the members of the class").

*Second*, the Settlement's clear sailing and kicker arrangements reflect self-dealing. As explained in Olson's objection, "[t]he clear sailing provision reveals the defendant's willingness to pay, but the kicker deprives the class of that full potential benefit if class counsel negotiates too much for its fees." Objection, Dkt. 513 at 25 (quoting *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 949 (9th Cir. 2011)). While a court may return excessive fees to the class members in a typical common-fund settlement, when fees are segregated in a constructive common fund like this case, the Court cannot return the excessive fees to the class members. Objection, Dkt. 513 at 25 (citing *Pearson v. NBTY, Inc.*, 772 F.3d 778, 786 (7th Cir. 2014)).

Plaintiffs deny the existence of these offending arrangements. Renewed Motion, Dkt. 780 at 15, 16. But the Settlement demonstrates the existence of these provisions. Target waived the right to appeal any attorneys' fee award up to $6.75 million. Settlement, Dkt. 358-1 at 21. Plaintiffs argue that there was no clear sailing because Target could challenge the fees in district court. Renewed Motion, Dkt. 780 at 15. But Target *did* not challenge those fees in district court. While Target, as an economically rational defendant, had every incentive to limit its liability, the Settlement's clear-sailing provision eliminated Target's incentive to challenge the fees.

And while the Settlement may not have labeled a specific provision "kicker," it was the Settlement's *structure* that created the kicker arrangement. The Settlement provided for segregated fees, which meant that any reduction in the $6.75 million fee request would "kick back" to Target, not to the class members. *See* Objection, Dkt. 513 at 25 (citing Settlement, Dkt. 358-1 at 21 which

provides that fees were separate and apart from class relief). The Seventh Circuit has held that there is a "strong presumption of [] invalidity" for these type of arrangements. *Pearson*, 772 F.3d at 787. Plaintiffs' argue that a segregated fee structure "benefits" the class, citing *Martin v. Reid*, 818 F.3d 302, 309 (7th Cir. 2016). *See* Renewed Motion, Dkt. 780 at 16. Plaintiffs' quotation is taken out of context. *Id.* (citing *Martin*, 818 F.3d at 309). The Settlement provision that *Martin* "encouraged" was deferral of the final fee award, *see Martin*, 818 F.3d at 309, not a segregated fee structure that the Seventh Circuit has held to be presumptively invalid, *Pearson*, 772 F.3d at 787. More importantly, the fees in *Martin* were actually contested by the defendant. *Reid v. Unilever United States*, Inc., No. 12 C 6058, 2015 U.S. Dist. LEXIS 75383 (N.D. Ill. June 10, 2015). Therefore, the *Martin* fee request could not possibly have signified tacit collusion. *See id.* at *82 (awarding only $1.5 million out of $3.4 million fee request).

Finally, plaintiffs argue that there is nothing in the record of collusion or self-dealing. *See* Renewed Motion, Dkt. 780 at 16-17. Olson is not arguing collusion. The Settlement may have very well been negotiated at arms-length, but it's the *terms* of the Settlement that reflect the self-dealing. The terms of the Settlement demonstrate that class counsel structured the Settlement to provide preferential treatment to class counsel at the expense of the class. *See* Objection, Dkt. 513 (citing *In re Dry Max Pampers Litig.*, 724 F.3d 713, 718-21 (6th Cir. 2013)).

## CONCLUSION

Class counsel complains about delay, but the delay is entirely their doing in failing to adhere to the requirements of Rule 23(a)(4), and then delaying the resolution of the appeal by seeking an illegal appeal bond. Even after the Eighth

Circuit has rejected their arguments and remanded because of Olson's meritorious objections, they insult Olson as having brought objections without merit.

An intraclass conflict exists when class members who cannot claim money from a settlement fund are represented solely by class members who can, whether or not they chose to do so. The conflict prevented the class representatives and the class counsel from fairly and adequately protecting the interests of all class members; indeed class counsel already admitted that they favored some class members over others. This conflict is fundamental and requires certification of multiple subclasses with independent representation and legal counsel.

For these reasons, this Court should deny the consumer plaintiffs' request for class certification.

Dated: April 17, 2017.          /s/ Melissa A. Holyoak
                                Melissa A. Holyoak, (DC Bar No. 487759)
                                COMPETITIVE ENTERPRISE INSTITUTE,
                                CENTER FOR CLASS ACTION FAIRNESS
                                1310 L Street, NW, 7th Floor
                                Washington, DC 20005
                                Phone: (573) 823-5377
                                Email: melissaholyoak@gmail.com

                                *Attorneys for Objector Leif Olson*

## CERTIFICATE OF SERVICE

The undersigned certifies she electronically filed the foregoing Response via the ECF system for the District of Minnesota, thus effecting service on all attorneys registered for electronic filing. Additionally she caused to be served via First-Class mail a copy of this Response upon the following:

| | |
|---|---|
| David Marciniszyn<br>633 Willow Street<br>Waterbury, CT 06710<br><br>John L Fink<br>1 Canal St.<br>Suit 201<br>Lawrence, MA 01840<br><br>Joshuaua Marciniszyn<br>633 Willow Street<br>Waterbury, CT 06710 | Lindsay Gibson<br># 917<br>2215 Cedar Springs Road<br>Dallas, TX 75201<br><br>Sam Miorelli<br>764 Ellwood Ave<br>Orlando, FL 32804 |

Dated: April 17, 2017.                    /s/ Melissa A. Holyoak